MALANI L. KOTCHKA
Nevada Bar No. 283
mlk@hmlawlv.com
HEJMANOWSKI & McCREA LLC
520 South Fourth Street, Suite 320
Las Vegas, NV 89101
Telephone: (702) 834-8777
Facsimile: (702) 834-5262

*Attorneys for Defendants Wellfleet*
*Communications, LLC, and Allen Roach*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| R. ALEXANDER ACOSTA, Secretary of Labor, United States Department of Labor,　　　　) | **Case No.:  2:16-CV-02353-GMN-GWF** |
| Plaintiff,　　) | |
| v.　　) | |
| WELLFLEET COMMUNICATIONS, LLC, a Nevada Limited Liability Company; NEW CHOICE COMMUNICATIONS, INC., a Nevada corporation, LIGHTHOUSE COMMUNICATIONS, LLC, a Nevada Limited Liability Company; ALLEN ROACH, an individual, and RYAN ROACH, aka RYAN LORE, an individual,　　) | **DEFENDANTS WELLFLEET COMMUNICATIONS, LLC AND ALLEN ROACH'S MOTION TO DISMISS OR ALTERNATIVELY FOR SUMMARY JUDGMENT** |
| Defendants.　　) | |

Pursuant to FRCP 12(b)(1) and (6) or alternatively 56(c), defendants Wellfleet Communications, LLC and Allen Roach (collectively referred to as "WFC") move for summary dismissal of the claims asserted by plaintiff U.S. Department of Labor ("DOL") in its First Amended Complaint, ECF No. 44.

/ / /

/ / /

/ / /

HEJMANOWSKI &
McCREA LLC
ATTORNEYS AT LAW
520 SOUTH FOURTH ST.
SUITE 320
LAS VEGAS, NEVADA 89101
T: 702.834.8777 | F: 702.834.5262
WWW.HMLAWLV.COM

1

1    This motion is made and based on all papers and pleadings on file herein, the following

2    Memorandum of Points and Authorities, all exhibits and all attachments to the Exhibits.

3                                    Respectfully submitted,

4                                    HEJMANOWSKI & McCREA LLC

5

6

7    By:   /s/ Malani L. Kotchka
           Malani L. Kotchka, NSB #283
8          520 South Fourth Street, Suite 320
           Las Vegas, NV  89101

9          *Attorneys for Defendants Wellfleet*
10         *Communications, LLC, and Allen Roach*

11

12              **MEMORANDUM OF POINTS AND AUTHORITIES**

13                       **A.      Undisputed Facts**

14
15    Pursuant to LR II 56-1, the following facts are not genuinely in dispute.  Allen Roach's

16    brother passed away suddenly in 2009.  The brother had a telemarketing business in which the

17    Direct Sellers placed calls to residential customers to sell them long distance services from one

18    of the carriers the business represented.  Roach was told that his brother had gone to a lawyer to

19    have an "Independent Contractor Agreement for Direct Seller" drafted so that he could operate

20    the business legally pursuant to 26 U.S.C. §3508.[1]  Exhibit A.  Prior to the DOL's investigation,

21    the telemarketing business had been audited by the State of Nevada and the "Independent

22    Contractor Agreement for Direct Seller" was approved by the State of Nevada as a legal

23    operating document.  Exhibit A.  DOL does not dispute these facts.
24

25

26    [1] This evidence is not being offered for the truth of the matter asserted.  It is being offered
      to show what Roach understood at the time he took over the telemarketing business.   The
27    evidence is relevant because it goes to his intent and motivation when continuing the use of the
      Independent Contractor Agreement for Direct Seller.

28

HEJMANOWSKI &
McCREA LLC
ATTORNEYS AT LAW
520 SOUTH FOURTH ST.
SUITE 320
LAS VEGAS, NEVADA 89101
T: 702.834.8777 | F: 702.834.5262
WWW.HMLAWLV.COM

WFC operated the same way as other telemarketers in the State of Nevada. No one told Roach that WFC's independent contractors were viewed by the DOL as employees until DOL walked in the door in October 2015 and commenced an investigation. When DOL told Roach that it viewed the independent contractors as employees and that WFC must begin keeping time records, treat the Direct Sellers as employees and pay them minimum wage, WFC complied on February 2, 2016. Exhibit A. DOL does not dispute these facts. As of February 1, 2017, Roach terminated his ownership interest and his General Manager role in the telemarketing business. Exhibit B.

This lawsuit is not about compliance with the FLSA. It is about WFC's attempt to negotiate a resolution of backpay and liquidated damages for the Direct Sellers during the two-year statute of limitations when WFC did not keep records of hours for the Direct Sellers because it believed in good faith that the Direct Sellers were independent contractors pursuant to 26 U.S.C. §3508. WFC was an **extremely small business**. Its annual dollar volume for 2012 was $3,812,053, for 2013 was $3,829,707, and for 2014 was $2,479,190. ECF No. 7-2. DOL filed this lawsuit when WFC would **not** enter into an agreement to toll the statute of limitations. Exhibit D. Nothing in the law required WFC to agree to such a toll. In fact, on March 2, 2016, DOL said in writing, "Our investigation is limited to the past two years; . . . ." Exhibit E.

DOL relies **solely** on the existence of the Independent Contractor Agreement for Direct Seller to argue that WFC willfully violated the FLSA. WFC's effort to legally comply with 26 U.S.C. §3508 cannot as a matter of law be deemed a willful attempt to violate the FLSA. DOL stands the law on its head and WFC's Motion to Dismiss or Alternatively for Summary Judgment should be granted.

As evidenced by Exhibit A to the DOL's First Amended Complaint, WFC experienced a very high turnover of Direct Sellers. Exhibit A, ¶¶ 1, 3, 4, 5. It is significant to the Court's

HEJMANOWSKI &
McCREA LLC
ATTORNEYS AT LAW
520 SOUTH FOURTH ST.
SUITE 320
LAS VEGAS, NEVADA 89101
T: 702.834.8777 | F: 702.834.5262
WWW.HMLAWLV.COM

inquiry that WFC's relationship with the Direct Sellers was not created or maintained haphazardly and without due regard for compliance with relevant state and federal laws. Instead, WFC consulted with Nevada counsel to create and maintain independent contractor relationships in conformity with applicable laws, specifically section 530 of the Internal Revenue Code. Exhibit A, ¶ 1. Thus, WFC and each of its Direct Sellers entered into a written "Independent Contractor Agreement for Direct Seller," true and correct copies of which are attached hereto as Exhibits A-1 – A-1444 (the "Agreement"). The Agreement plainly and repeatedly defines the intended independent contractor relationship, with compensation explicitly limited to and based upon completed sales, stating:

> NOW THEREFORE, for good and valuable consideration, the parties hereto agree to the terms and conditions as set forth herein below.
> 1. PURPOSE OF ENGAGEMENT:  WFC shall provide to independent contractors/direct seller and Independent Contractor/Direct Seller desires to be engaged by WFC to provide his/her experience, knowledge and skills in furtherance of sales and marketing on behalf of WFC.
> 2. COMPENSATION COMMISSION: WFC shall provide to Independent Contractor/Direct Seller as and for full and complete compensation for the services of Independent Contractor/Direct Seller provided herein a commission based upon the amount of sales per week by contractor, based upon the dollar amount per sale in accordance with the following commission scale....
> 3. INDEPENDENT CONTRACTOR/DIRECT SELLERS DUTIES TO PAY TAXES:
> *Independent Contractor hereby acknowledges and agrees that WFC is not responsible for any withholding of any state, federal or any other governmental agency tax on the commissions earned* by the independent contractor/direct seller and paid by WFC, and that Independent Contractor/Direct Seller shall be *liable and responsible for reporting on such commissions and the payment of all taxes and fees imposed by any state, federal or other governmental agency, including but not limited to social security tax, FICA, Medicaid, and unemployment tax*.
> 4. NO UNEMPLOYMENT BENEFITS:  Independent Contractor/Direct Seller acknowledges, confirms and agrees that independent contractor/direct seller *is not eligible for any unemployment benefits to Independent Contractor/Direct Seller under this agreement*.
> 5. LICENSING:   Independent Contractor/Direct Seller hereby acknowledges and agrees that should any governmental agency require independent contractor/direct seller to obtain a business license or any permit to conduct and provide the services contemplated hereunder, that Independent

HEJMANOWSKI &
McCREA LLC
ATTORNEYS AT LAW
520 SOUTH FOURTH ST.
SUITE 320
LAS VEGAS, NEVADA 89101
T: 702.834.8777 | F: 702.834.5262
WWW.HMLAWLV.COM

Contractor/Direct Seller shall obtain such license or permit from such governmental agency as may be necessary.

6.  NO AGENCY OR EMPLOYMENT RELATION:  ***The parties hereto acknowledge and agree that the services contemplated to be provided by Independent Contractor/Direct Seller to WFC under this agreement does not constitute nor create an employer/employee, master/servant or agency relationship between the parties***.  Independent Contractor/Direct Seller hereby acknowledges and agrees that he/she is and be deemed for all purposes an Independent Direct Sales Contractor.

7.  ENTIRE AGREEMENT:  ***This agreement supersedes any and all other agreements, either oral or written***, between the parties hereto and contains all of the covenants and agreements between the parties.

Exhibits A-1 – A-1444.  (Emphasis supplied.)

Next, after addressing venue for disputes (Clark County, Nevada); severability (where possible, each provision shall be interpreted so as to be valid under applicable law); attorney's fees and costs (to be awarded to the prevailing party in any lawsuit brought under the Agreement); and binding effect (applying to heirs, assigns and legal representatives), and above the parties' respective signatures, the Independent Contractor Agreement again describes the Direct Seller relationship created by the document:

Independent Contractor/Direct Seller acknowledges that Wellfleet Communications **shall NOT provide, pay** or **be obligated to Independent Contractor/Direct Seller for any hourly wage rate** and that the commission referenced herein shall be the sole and absolute compensation provided to Independent Contractor/Direct Seller for his/her services.

The commissions to Independent Contractor/Direct Seller shall be provided and paid to independent contractor/direct seller by Wellfleet Communications not less than weekly based upon prior weekly sales of Independent Contractor/Direct Seller.

Whereas, Independent Contractor/Direct Seller desires the relationship created hereunder will be that of a corporation and an Independent Contractor/Direct Seller.  The conduct and control of the services, and the manner and method of performance thereof, are exclusively under the control of the Independent Contractor/Direct Seller is not entitled to receive any of the benefits or privileges which the corporation may otherwise provide the regular employees of the corporations.  Independent Contractor/Direct Seller understands and expressly waives any requirements of **requests for minimum wage provided by the Nevada revised statutes of the Fair Labor Standards Act**.  It is the desire [o]f Independent Contractor/Direct Seller, after having the opportunity of seeking legal advice of counsel, that the relationship as an Independent Contractor/Direct

HEJMANOWSKI &
McCREA LLC
ATTORNEYS AT LAW
520 SOUTH FOURTH ST.
SUITE 320
LAS VEGAS, NEVADA 89101
T: 702.834.8777 | F: 702.834.5262
WWW.HMLAWLV.COM

Seller is more desirous to the Independent Contractor/Direct Seller than that of an employee. Independent Contractor/Direct Seller acknowledges the freedom and discretion it possesses and use of its special skill services and knowledge and therefore desires to maintain that relationship.

Independent Contractor/Direct Seller hereby acknowledges and agrees that the corporation is not responsible for the withholding of **any state, federal, or any governmental tax on the commissions earned by Independent Contractor/Direct Seller for work done in their capacity as Independent Contractor/Direct Selle**r....

The parties further acknowledges [sic] that the treatment of Independent Contractor/Direct Seller is **an industry wide treatment in the direct sales marketing for telecommunications services** and therefore entitles t[he] corporation to the benefits under section 530 of the Internal Revenue Code otherwise known as the **Safe Harbor Provision**.

A-1 – A-1444. (Emphasis supplied.)

Pursuant to the Agreements, WFC paid each Direct Seller strictly on a *commission* basis for the *sales actually completed* and *not based on the number of hours worked*. Exhibit A, ¶¶ 2, 3. WFC's Agreements did not prohibit its Direct Sellers from performing exactly the same direct sales work for others, either simultaneously or immediately upon leaving WFC, including for WFC's competitors or competitors of WFC's customers. Because the relationship between WFC and its Direct Sellers was non-exclusive and part-time and paid strictly by commission on completed sales, WFC experienced a very high turnover of Direct Sellers as demonstrated by Exhibit A to DOL's First Amended Complaint (which except for the addition of 121 individuals is identical to Exhibit A to the Complaint, *see* ECF No. 33, pp. 5-6). Exhibit A, ¶ 4.

It is *not illegal* under the FLSA for a business to create and maintain Direct Seller relationships. WFC did not misclassify WFC's Direct Sellers under the FLSA. WFC is entitled to summary dismissal of each of the DOL's claims as the requirements of the FLSA are inapplicable as a matter of law to WFC's Direct Sellers.

## B.    Direct Sellers

Congress created the FLSA in 1938 with the goal of "protect[ing] all *covered workers*

HEJMANOWSKI &
McCREA LLC
ATTORNEYS AT LAW
520 SOUTH FOURTH ST.
SUITE 320
LAS VEGAS, NEVADA 89101
T: 702.834.8777 | F: 702.834.5262
WWW.HMLAWLV.COM

from substandard wages and oppressive working hours." [Emphasis added.] *Christopher v. Smithkline Beecham Corp.*, 132 S.Ct. 2156, 2162, (2012), *quoting Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 739 (1981). The FLSA does not "cover" every person who works for another. Independent contractors are not covered as "employees" under the FLSA.

26 U.S.C. §3508, added in July 1982, nearly half a century after enactment of the FLSA, acknowledges the continuing existence of independent contractors, specifically excluding direct sellers (and real estate agents) from treatment as employees, stating in pertinent part:

> (a) **General Rule**: For purposes of this title, in the case of services performed...
> as a direct seller—
>     (1) the individual performing such services shall not be treated as an employee, and
>     (2) the person for whom such services are performed shall not be treated as an employer.

Thus, the Director Sellers shall not be treated as employees and WFC shall not be treated as an employer. 26 U.S.C. §3508 defines Direct Sellers as follows:

> * * *
>
> (2) **Direct Seller**. The term "direct seller" means any person if—
>     (A) such person —
> * * *
>         (ii) is engaged in the trade or business of selling (or soliciting the sale of) consumer products in the home or otherwise than in a permanent retail establishment or....
>     (B) substantially all the remuneration (whether or not paid in cash) for the performance of the services described in subparagraph (A) is directly related to sales or other output (including the performance of services) **rather than to the number of hours worked**, and
>     (C) the services performed by the person are performed pursuant to a **written contract** between such person and the person for whom the services are performed and such contract provides that the person will not be treated as an employee with respect to such services for Federal tax purposes.

(Emphasis added.) Here, the Direct Sellers meet all of the criteria of 26 U.S.C. § 3508. They were engaged in the business of selling consumer products. Substantially all their remuneration

HEJMANOWSKI &
McCREA LLC
ATTORNEYS AT LAW
520 SOUTH FOURTH ST.
SUITE 320
LAS VEGAS, NEVADA 89101
T: 702.834.8777 | F: 702.834.5282
WWW.HNLAWLV.COM

was directly related to sales, not hours, and the services performed were pursuant to a written contract.

The Agreement provides that the treatment of the Direct Seller is "an industry wide treatment in the direct sales marketing for telecommunication services." The Agreement therefore entitles WFC to the benefits under Section 530 of the Internal Revenue Code, otherwise known as the Safe Harbor Provision.

In *Smoky Mountain Secrets, Inc. v. U.S.*, 910 F. Supp. 1316, 1317-18 (E.D. Tenn. 1995), the Internal Revenue Service assessed nearly four million dollars in taxes against Smoky Mountain Secrets, Inc. ("SMS"). SMS solicited sales orders for gourmet foods through telephone calls to consumers made by its telemarketers. The product sales were delivered to the customers' homes by delivery persons. The telemarketers and delivery persons were characterized by SMS as direct sellers and independent contractors. SMS also employed workers who included home office staff, warehouse workers, office managers, regional managers and the officers of the corporation as employees. *Id.* at 1318. Sales were only made through telephone solicitation and delivery of the package. For each package sold, the telemarketer received a specific commission. Before going to work for SMS, each telemarketer and delivery person was required to sign a written contract. *Id.* at 1319.

The federal district court found that the contracts clearly set forth that each telemarketer or delivery person would be paid on a commission basis, would not be treated as an employee for federal tax purposes and that no federal, state or local income or payroll taxes would be withheld. *Id.* The court concluded that SMS's telemarketers and delivery persons met the term "direct seller" as defined in 26 U.S.C. § 3508. *Id.* at 1521-22. Here, WFC's Direct Sellers were similarly engaged in the trade or business of selling or soliciting the sale of consumer products, all the remuneration paid was directly related to sales rather than the number of hours worked

HEJMANOWSKI &
McCREA LLC
ATTORNEYS AT LAW
520 SOUTH FOURTH ST.
SUITE 320
LAS VEGAS, NEVADA 89101
T: 702.834.8777 | F: 702.834.5262
WWW.HMLAWLV.COM

and the services performed were pursuant to a written contract providing that the seller would not be treated as an employee.

The *Smoky Mountain* court found that **Congress intended that Section 530 would serve as a shelter for taxpayers who have acted in good faith from the potentially harsh retroactive tax liabilities resulting from IRS reclassification of independent contractors to employees.** *Id.* at 1323. The court concluded that SMS had demonstrated that it was entitled to relief under Section 530. *Id.* Here too, WFC has acted in good faith and is entitled to relief under Section 530.

In *Cleveland Institute of Electronics, Inc. v. U.S.*, 787 F. Supp. 741, 743 (N.D. Ohio 1992), the government claimed that the Cleveland Institute of Electronics sales persons were employees from whom the Institute must withhold federal income taxes. The Institute countered that its sales persons were independent contractors. *Id.* at 742. The court found that the purpose of 26 U.S.C. § 3508 was to create a shelter for taxpayers who met certain criteria. By meeting the statutory requirements, an individual was automatically given the status of an independent contractor and, therefore, was not an employee for employment tax purposes. *Id.* at 743. The court found that Congress created a shelter exclusively for certain direct sellers and real estate sales persons because it believed that it was these workers who were most in need of an immediate solution to the problem of proper employment tax status. *Id.* at 744.

The government argued that the Institute's sales people did not sell consumer products because the educational courses which the sales people were selling were not products. *Id.* at 745. The court found that the number of controversies regarding employment tax status would be decreased by allowing direct sellers of goods and services who met the other statutory requirements to be considered independent contractors. *Id.* at 749. The court also found that the other purpose behind the statute was to improve the tax compliance of independent contractors.

HEJMANOWSKI &
McCREA LLC
ATTORNEYS AT LAW
520 SOUTH FOURTH ST.
SUITE 320
LAS VEGAS, NEVADA 89101
T: 702.834.8777 | F: 702.834.5282
WWW.HMLAWLV.COM

The court concluded that the underlying purposes of 26 U.S.C. § 3508 were best served by interpreting the term consumer products as used in that statute to include both tangible consumer goods and intangible consumer services. Therefore, the Institute's sales persons were "statutory nonemployees." *Id.* Here, WFC's Direct Sellers were similarly "statutory nonemployees."

The FLSA's and IRC's acknowledgement of independent contractors is consistent with Nevada law. Thus, NRS 612.144 specifically defines "employment" as excluding direct sellers, such as WFC's:

> 1.    'Employment' does not include services performed by a person who:
>  (a) Directly sells or solicits the sale of products, in person or by telephone:
>   (1) On the basis of a deposit, commission, purchase for resale or similar arrangement specified by the Administrator by regulation, if the products are to be resold to another person in his or her home or place other than a retail store; or
>   (2) To another person from his or her home or place other than a retail store;
>  (b) Receives compensation based on his or her sales or the services the person performs for customers rather than for the number of hours that the person works; and
>  (c) Performs pursuant to a written agreement with the person for whom the services are performed which provides that the person who performs the services is not an employee for the purposes of this chapter.
> 2.    As used in this section, 'product' means a tangible good or an intangible service, or both.

According to the Nevada Supreme Court, "The legislative history indicates that NRS 612.144 was enacted in order to conform Nevada's unemployment compensation law with existing federal law." *Advanced Sports Information, Inc. v. Novotnak*, 114 Nev. 336, 340, 956 P.2d 806, 809 (1998) ("In its purpose and policy, NRS 612.144 is derived from 26 U.S.C. §3508, which excepts direct sellers of 'consumer products' from the status of employee. The only substantive difference between Nevada's statute and its federal counterpart is the reference to consumer products instead of, simply, products. However, we view this semantic difference as insignificant....").

HEJMANOWSKI &
McCREA LLC
ATTORNEYS AT LAW
520 SOUTH FOURTH ST.
SUITE 320
LAS VEGAS, NEVADA 89101
T: 702.834.8777 | F: 702.834.5262
WWW.HMLAWLV.COM

Nevada law also specifically excludes independent contractors from operation of the state minimum wage laws.  NRS 608.255(3) provides:

> For the purposes of this chapter ["Compensation, Wages and Hours"] and any other statutory or constitutional provision governing the minimum wage paid to an employee, the following relationships do not constitute employment relationships and are therefore not subject to those provisions:
>
> * * *
>
> 3.      The relationship between a principal and an independent contractor.

Agencies such as DOL exercise whatever powers they possess because and only because such powers have been delegated to them by Congress.  It is the declared policy of the FLSA to **not** substantially curtail "earning power."  29 U.S.C. §202(b).  Neither Direct Sellers nor independent contractors are defined in the FLSA.  29 U.S.C. § 203.  The definition of an "employee" is a tautological one:  "any individual employed by an employer."  29 U.S.C. § 203(e)(1); *Berger v. National Collegiate Athletic Association*, 843 F.3d 285, 290 (7th Cir. 2016).  The statutory requirements for minimum wage and overtime apply only to "employees".  29 U.S.C. §§ 206, 207.  The Agreement states, and the Direct Sellers agreed, that the Direct Sellers were not employees.  Exhibit A-1 – A-1444.

In *Christensen v. Harris County*, 529 U.S. 576, 588 (2000), the United States Supreme Court held that unless the FLSA prohibited respondents from adopting its policy, petitioners could not show that Harris County had violated the FLSA.  The Court held that because the FLSA was **silent on the issue** and there was no on point DOL regulation, the FLSA allowed the policy.  *Id.* at 585-88.  The same situation exists here.  When the FLSA was enacted in 1938, telemarketers did not exist.  The FLSA is silent on the issue of whether Direct Sellers are subject to the FLSA.  DOL has never enacted a regulation which addresses Direct Sellers.  The only existing federal law which does so is 26 U.S.C. § 3508, with which WFC complied.  There is nothing contrary to 26 U.S.C. § 3508 in the FLSA.

HEJMANOWSKI &
McCREA LLC
ATTORNEYS AT LAW
520 SOUTH FOURTH ST.
SUITE 320
LAS VEGAS, NEVADA 89101
T: 702.834.8777 | F: 702.834.5262
WWW.HMLAWLV.COM

11

### C      Statute of Limitations

When Congress enacted the Portal-To-Portal Pay Act, it said:

(a)      The Congress finds that the Fair Labor Standards Act of 1938, as amended [29 U.S.C.A. § 201 et seq.], has been interpreted judicially in disregard of **long-established customs, practices, and contracts between employers and employees, thereby creating wholly unexpected liabilities, immense in amount and retroactive in operation, upon employers** with the results that, if said Act as so interpreted or claims arising under such interpretations were permitted to stand, (1) the payment of such liabilities would bring about financial ruin of many employers and seriously impair the capital resources of many others, thereby resulting in the reduction of industrial operations, halting of expansion and development, curtailing employment, and **the earning power of employees**; (2) the credit of many employers would be seriously impaired; (3) there would be created both an extended and continuous uncertainty on the part of industry, both employer and employee, as to the financial condition of productive establishments and a gross inequality of competitive conditions between employers and between industries; (4) employees would receive windfall payments, including liquidated damages, of sums for activities performed by them without any expectation of reward beyond that included in their agreed rates of pay; (5) there would occur the promotion of increasing demands for payment to employees for engaging in activities no compensation for which had been contemplated by either the employer or employee at the time they were engaged in; (6) voluntary collective bargaining would be interfered with and industrial disputes between employees and employers and between employees and employees would be created; (7) the courts of the country would be burdened with excessive and needless litigation and champertous practices would be encouraged; (8) the Public Treasury would be deprived of large sums of revenues and public finances would be seriously deranged by claims against the Public Treasury for refunds of taxes already paid; (9) the cost to the Government of goods and services heretofore and hereafter purchased by its various departments and agencies would be unreasonably increased and the Public Treasury would be seriously affected by consequent increased cost of war contracts; and (10) serious and adverse effects upon the revenues of Federal, State, and local governments would occur.

29 U.S.C. §251(a) (emphasis added).  After stating this, Congress said:

Any action commenced on or after May 14, 1947, to enforce any cause of action for unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938, as amended [29 U.S.C.A. §201 et seq.], the Walsh-Healey Act, or the Bacon-Davis Act—

(a)      if the cause of action accrues on or after May 14, 1947—may be commenced within two years after the cause of action accrued, and every such action shall be **forever barred** unless commenced within two years after the cause of action accrued, . . . .

HEJMANOWSKI &
McCREA LLC
ATTORNEYS AT LAW
520 SOUTH FOURTH ST.
SUITE 320
LAS VEGAS, NEVADA 89101
T: 702.834.8777 | F: 702.834.5262
WWW.HMLAWLV.COM

29 U.S.C. §255(a) (emphasis added).  Here, DOL's cause of action is barred prior to October 7, 2014.

DOL is litigating this case as though WFC agreed to the tolling agreement, which it did not.  *See* Exhibit D.  DOL's position is not substantially justified.  DOL knows the law and would not have asked WFC to sign the tolling agreement if it believed the statute of limitations would be tolled simply upon its request.

In *McLaughlin v. Richland Shoe Company*, 486 U.S. 128, 131 (1988), the Secretary of Labor asked the United States Supreme Court to define the meaning of the word "willful" in the statute.  The Court began by stating that Congress enacted the two-year statute to place a limit on employers' exposure to unanticipated contingent liabilities.  *Id.* at 132.  In 1966 Congress enacted the three-year exception for willful violations.  *Id.*  The Court found that because Congress had adopted a two-tiered statute of limitations, it was obvious that Congress intended to draw a significant distinction between ordinary violations and willful violations.  *Id.*  The Court concluded that willfulness does not refer to conduct that is merely negligent.  *Id.* at 133.  In order to meet the willfulness standard, the Court held that the Secretary of Labor must show that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.  *Id.* at 133-34.

Since *McLaughlin*, many federal courts have held that a conclusory assertion of willfulness does not entitle a plaintiff to the three-year statute of limitations.  *Preacely v. AAA Typing & Resume, Inc.*, 2015 WL 1266852, *2 (S.D.N.Y. Mar. 18, 2015.)  Here, WFC had been audited by the State of Nevada who found the independent contractor agreement to be sufficient for the Direct Sellers **not** to be classified as employees.  Exhibit A, ¶ 9.

The plaintiff bears the burden of demonstrating willfulness.  *Roseman v. Bloomberg L.P.*,

HEJMANOWSKI &
McCREA LLC
ATTORNEYS AT LAW
520 SOUTH FOURTH ST.
SUITE 320
LAS VEGAS, NEVADA 89101
T: 702.834.8777 | F: 702.834.5282
WWW.HMLAWLV.COM

2016 WL 3866375, *4 (S.D.N.Y. Jun. 17, 2016).  Mere knowledge of the FLSA and its potential applicability does not suffice nor does conduct that is merely negligent or even unreasonable. *Antiqi v. Acclaim Technical Services, Inc.*, 2016 WL 2621946, *10-12 (C.D. Cal. Feb. 11, 2016); *Zannikos v. Oil Inspections (USA), Inc.*, 605 Fed. Appx. 349, 360 (5th Cir. 2015); *Chesley v. Direct TV, Inc.,* 2015 WL 3549129, *7 (D.N.H. Jun. 8, 2015); *Regan v. City of Charleston*, 142 F. Supp. 3d 442, 463 (D.S.C. 2015); *Lugo v. Farmer's Pride, Inc.*, 802 F. Supp. 2d 598, 617-18 (E.D. Pa. 2011); *Lipnicki v. Meritage Homes Corp.*, 2014 WL 923524, *9-10 (S.D. Tex. Feb. 13, 2014); *Parada v. Banco Industrial De Venezuela, C.A.*, 753 F.3d 62, 70-71 (2d Cir. 2014); *Service Employees International Union, Local 102 v. County of San Diego*, 60 F.3d 1346, 1355-56 (9th Cir. 1995); *Hantz v. Prospect Mortgage, LLC*, 11 F. Supp. 3d 612, 616-18 (E.D. Va. 2014); *Chapman v. BOK Financial Corp.*, 2014 WL 3700870, *3-4 (N.D. Okla. Jul. 25, 2014); *McLean v. Garage Management Corp.*, 2012 WL 1358739, *7-8 (S.D.N.Y. Apr. 19, 2012); *Stokes v. BWXT Pantex, LLC*, 424 Fed. Appx. 324, *2-3 (5th Cir. 2011).  WFC did not ignore any warning that it was out of FLSA compliance and did not destroy records or block any investigation.  Thus, there is no willfulness as a matter of law to support a three-year statute of limitations.

In this Circuit, a district court's discretion to equitably toll §255(a)'s limitations is narrow. *Thermond v. Presidential Limousine*, 2015 WL 4937989, *3 (D. Nev. 2015), explains.

> The Ninth Circuit has recognized that a district court may equitably toll the §255(a)'s statute of limitations in narrow circumstances. *Partlow*, 645 F.2d at 760; *Kwai Fun Wong v. Beebe*, 732 F.3d 1030, 1039 (9th Cir. 2013) (acknowledging that §255(a) can be equitably tolled).  Nevertheless, equitable tolling 'only applies in rare situations.' *Cranney v. Carriage Servs., Inc.*, 559 F.Supp.2d 1106, 1108 (D. Nev. 2008) (citing *Alvarez-Machain v. United States*, 107 F.3d 696, 701 (9th Cir. 1996)).  The Ninth Circuit has allowed equitable tolling in two generally distinct situations: (1) when the plaintiffs are prevented from asserting their claims by some kind of wrongful conduct on the part of the defendant; or (2) when extraordinary circumstances beyond plaintiffs' control make it impossible to file the claims on time. *Alvarez Machain*, 107 F.3d at 701;

HEJMANOWSKI &
McCREA LLC
ATTORNEYS AT LAW
520 SOUTH FOURTH ST.
SUITE 320
LAS VEGAS, NEVADA 89101
T: 702.834.8777 | F: 702.834.5262
WWW.HMLAWLV.COM

1   *see also Lozano v. Montoya Alvarez*, 572 U.S. __, 134 S.Ct. 1224, 1231-32, 188
2   L.Ed.2d 200 (2014) ('As a general matter, equitable tolling pauses the running of,
3   or 'tolls,' a statute of limitations when a litigant has pursued his rights diligently
    but some extraordinary circumstance prevents him from bringing a timely
4   action.')

5   Tolling is typically "extended sparingly and only where claimants exercise diligence in

6   preserving their legal rights." *Woods v. Vector Marketing Corp.*, 2015 WL 1198593, *6 (N.D.

7   Cal. Mar. 16, 2015), *citing Irwin v. Dep't of Veteran Affairs*, 498 U.S. 89, 96 (1990), and

8   *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984).

9        Here, WFC refused to sign the tolling agreement.  DOL knows there is no basis for

10  tolling the statute of limitations.  Actions must be brought within two years after the cause of

11  action accrued except for causes of action arising out of willful violations.  The argument that

12  DOL needs additional time to bring an action would simply eviscerate the purpose of the statute

13  of limitations where there is no allegation that WFC engaged in any conduct preventing DOL

14  from bringing the claims earlier. *Cranney v. Carriage Services, Inc.*, 559 F.Supp.2d 1106, 1108-

15  09 (D. Nev. 2008) (employees were not entitled to equitable tolling in collective FLSA action as

16  plaintiffs did not "present the rare situation in which justice requires the court to equitably toll

17  the statute of limitations.").  In fact, WFC cooperated completely with DOL in its investigation.

18  Exhibit A, ¶¶ 13-19.  WFC had never been investigated by DOL previously.

19       The fact that the Secretary of Labor is bringing the action does not require a different

20  result by the court.  Thus, in *Chao v. Virginia Dept. of Transp.*, 291 F.3d 276, 283-84 (4th Cir.

21  2002), the Fourth Circuit held:

22

23       '[A]ny invocation of equity to relieve the strict application of a statute of
         limitations must be guarded and infrequent, lest circumstances of individualized
24       hardship supplant the rules of clearly drafted statutes.' [Citation omitted.] ....
         The Secretary of Labor filed no pleading in this case, defective or
25  otherwise, during the limitations period.  Nor did VDOT contribute in any way to
    her delay in filing.  Consequently, the Secretary is entitled to equitable tolling
26  only if she acted diligently to protect her rights, but was prevented from filing a

27

28

HEJMANOWSKI &
McCREA LLC
ATTORNEYS AT LAW
520 SOUTH FOURTH ST.
SUITE 320
LAS VEGAS, NEVADA 89101
T: 702.834.8777 | F: 702.834.5262
WWW.HMLAWLV.COM

15

timely claim due to extraordinary circumstances beyond her control.

\* \* \*

'[I]n the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.' *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 152, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984). Accordingly, we find that the Secretary is not entitled to equitable tolling of the statute of limitations. The claims subject to the statute of limitations are therefore time-barred.

Here, there were no extraordinary circumstances beyond the Secretary's control. When DOL insisted that WFC change its Direct Seller relationship from independent contractor to employee, WFC complied. Exhibit A, ¶ 15. DOL said it would take WFC's good faith into consideration and then decided to sue WFC instead. The Secretary is not entitled to equitable tolling or a three-year statute of limitations.

In *Chao v. Self Pride, Inc.*, 2006 WL 469954, \*6 (D. Md. Jan. 17, 2006), the court held that "a good faith disagreement with the government regarding the FLSA cannot alone support a later finding by a court that a defendant acted willfully." Here, as a matter of law, WFC did not willfully violate the FLSA. The two-year statute of limitations is applicable.

DOL bears the burden of demonstrating willfulness. DOL has made no evidentiary showing that WFC ignored any warning that it was out of FLSA compliance or that it destroyed records or that it blocked any investigation. WFC furnished DOL with all requested documents and came into compliance pursuant to DOL's instructions. There can be no greater evidence of good faith and thus, there is no willfulness as a matter of law to support a three-year statute of limitations.

The United States Congress specifically authorized the Agreements to be entered into with the Direct Sellers and authorized the Direct Sellers to be treated as independent contractors. 26 U.S.C. §3508. *See* Internal Revenue Serv., Pub. 15-A (2014); section 1122 of the Small Business Job Protection Act of 1996. When DOL told WFC that it viewed these Agreements as

HEJMANOWSKI &
McCREA LLC
ATTORNEYS AT LAW
520 SOUTH FOURTH ST.
SUITE 320
LAS VEGAS, NEVADA 89101
T: 702.834.8777 | F: 702.834.5262
WWW.HMLAWLV.COM

illegal, WFC stopped entering into the agreements and changed its Direct Sellers to employees. That is **not** evidence of a willful violation of the FLSA.  DOL knows that WFC took affirmative action to comply with the FLSA and indeed instructed WFC on how to comply with the FLSA. Exhibit A.

Moreover, DOL's investigator, Alisa Ann, sent a form to WFC's office manager on March 2, 2016, **after** WFC had come into compliance, stating, "Our investigation is limited to the past two years; for this reason, your answers should refer only to the period or periods during which you worked for this firm within the past 2 years."  Exhibit E.  By March 2, 2016, DOL was aware of the Independent Contractor Agreement for Direct Seller.

In *Chesley v. DirectTV, Inc.*, 2015 WL 3549129, *7 (D.N.H. June 8, 2015), the defendants were aware of the FLSA and attempted to align their conduct in a manner that was cost-effective for them while not violating the FLSA.  Therefore, the defendants adopted a "fissured employment" scheme.  The plaintiffs acknowledged that a fissured employment scheme was not per se illegal under the FLSA.  The court found that such circumstances did not rise to the level of willfulness.  The same is true here.  Independent Contractor Direct Seller relationships pursuant to 26 U.S.C. §3508 are not per se illegal under the FLSA.  Mere compliance with §3508 does not show willfulness to evade the FLSA.  Therefore, the two-year statute of limitations applies.

In *Zannikos v. Oil Inspections (USA) Inc.*, 605 Fed.Appx. 349, 360 (5th Cir. 2015), the Fifth Circuit held it was the plaintiff's (DOL's here) burden to prove willfulness.  The plaintiffs argued that Oil Inspections knew of the FLSA's potential applicability as demonstrated by its employee handbook, failed adequately to research the statute's applicability and failed to consult with attorneys or the DOL on the matter.  The court found that these allegations did **not** suffice to demonstrate willfulness.  The court found that an employer who acted "without a reasonable

HEJMANOWSKI &
McCREA LLC
ATTORNEYS AT LAW
520 SOUTH FOURTH ST.
SUITE 320
LAS VEGAS, NEVADA 89101
T: 702.834.8777 | F: 702.834.5262
WWW.HMLAWLV.COM

basis for believing that it was complying with the FLSA" was merely negligent and so too was an employer who failed to seek legal advice regarding its payment practices. *Id.* The Fifth Circuit held that willfulness had been found only when evidence demonstrated that an employer actually knew its pay structure violated the FLSA. *Id.*

In *Hantz v. Prospect Mortgage, LLC*, 11 F.Supp. 3d 612, 617 (E.D. Va. 2014), the plaintiff argued that the employer willfully violated the FLSA by misclassifying him as an exempt employee. The court found:

> The record, however, is devoid of any factual support for this position. Courts have found employers willfully violated FLSA where they **ignored specific warnings that they were out of compliance**, destroyed or withheld records to block investigations into their employment practices, or split employees' hours between two companies' books to conceal their overtime work. . . . Plaintiff has set forth no facts rising to that level.

*Id.* (Emphasis added.) Similarly, here, during the DOL's investigation, WFC changed its business model and did not attempt to evade compliance with DOL's view of the law. It did not ignore specific warnings that it was out of compliance and **DOL has not offered any evidence that it did**. It did not destroy or withhold records to block investigations into its employment practices or split employees' hours between two companies' books to conceal overtime work. DOL has made no showing that WFC had any notice of its alleged obligations under the FLSA or engaged in such conduct.

The federal district court in *Hantz* found:

> Plaintiff's efforts to create a dispute of fact on the issue of willfulness by noting that Prospect did not track his working hours are insufficient. . . . The fact that neither Defendant nor Plaintiff kept contemporaneous records of his work activities does nothing to suggest that Prospect operated with an awareness or reckless disregard as to Plaintiff's professed non-exempt status. Indeed, it is undisputed that Prospect at all times classified Plaintiff and its other loan officers as exempt outside sales personnel. **It is only natural that an employer operating with this belief would decline to keep records that would only represent a pointless administrative burden**.

HEJMANOWSKI &
McCREA LLC
ATTORNEYS AT LAW
520 SOUTH FOURTH ST.
SUITE 320
LAS VEGAS, NEVADA 89101
T: 702.834.8777 | F: 702.834.5262
WWW.HMLVLV.COM

*Id.* at 618 (emphasis added). The fact that WFC did not keep time records for the Direct Sellers was because to comply with §3508, the Direct Sellers had to be paid on the basis of commissions for sales and not on the basis of hours. Keeping records of hours would have been a pointless administrative burden.[2]

Prior to the DOL's investigation, WFC entered into an "Independent Contractor Agreement for Direct Sellers" with all of its Direct Sellers, **not** all of its workers as alleged by DOL. Exhibit A-1 – A-1444. It classified **all** of its Direct Sellers the same way. Like Prospect, it did not keep time records because it paid the Direct Sellers by commission only. §3508 required WFC to pay by commission only. Even a mistake in classification of an employee does not establish willfulness sufficient to extend the two-year statute of limitations to three years.

In *Parada v. Banco Industrial De Venezuela, C.A.*, 753 F.3d 62, 71 (2d Cir. 2014), the Second Circuit discerned no record evidence of BIV's willful violation of the FLSA when it mistakenly classified Parada as exempt from the FLSA's overtime requirements. Similarly, in *Lipnicki v. Meritage Homes Corp.*, 2014 WL 923524, *11 (S.D. Tex. Feb. 13, 2014), the court concluded that a misclassification of outside salespeople as exempt was not willful when the plaintiffs presented no evidence that they had told Meritage prior to the filing of the lawsuit that their sales activity on the lots was limited. DOL never told WFC that it was violating the FLSA prior to its investigation. There is no evidence of willfulness. In *SEIU, Local 102 v. County of San Diego*, 60 F.3d 1346, 1355-56 (9th Cir. 1994), the district court had imposed a three-year statute of limitations for a willful violation of the FLSA and awarded liquidated damages

---

[2] At DOL's request, WFC furnished DOL with its Noble dialer server. Unbeknownst to WFC, DOL transported the server somewhere else. DOL damaged the hardware in transit. Exhibit F.

HEJMANOWSKI &
McCREA LLC
ATTORNEYS AT LAW
520 SOUTH FOURTH ST.
SUITE 320
LAS VEGAS, NEVADA 89101
T: 702.834.8777 | F: 702.834.5262
WWW.HMLAWLV.COM

pursuant to 29 U.S.C. §216(b).  The Ninth Circuit held that both determinations were mistaken. The Ninth Circuit found that the DOL's position on the white-collar exemption was a **lack** of an interpretation of the relevant statutes rather than an informed position to which the court must defer. *Id.* at 1356-57, 1359.

Here, during the DOL investigation, WFC changed its business model, ceased using the Independent Contractor Direct Seller agreement, changed the Direct Sellers to employees, kept time records for them, paid them minimum wage and did not attempt to evade compliance with the law.  It turned over all requested business records in reliance on DOL's continued assurance that if WFC complied with their investigation requests and complied with changing the Direct Sellers from independent contractors to employees, it would take WFC's good faith into consideration on any backpay assessment.  Exhibit A, ¶¶ 13, 16, 17, 19.  As in *Lugo*, there is no binding Ninth Circuit precedent on whether compliance with 26 U.S.C. §3508 can even be an FLSA violation.

In *Chapman v. BOK Financial Corp.*, 2014 WL 3700870, *3 (N.D. Okla. 2014), the court held that plaintiffs bore the burden of proving that BOK acted willfully.  Like here, plaintiffs had no evidence that DOL had audited or investigated BOK for prior alleged FLSA violations.  *Id.* at *4.  The court held that in creating the two-tiered statute of limitations, Congress intended to draw a significant distinction between ordinary and willful violations.  The court concluded that, "The evidence the plaintiffs have presented – that BOK may have misclassified the plaintiffs – could support an ordinary FLSA violation only, not a willful violation." *Id.*  Here, like BOK, when DOL started its investigation of WFC, WFC came into compliance with DOL's interpretation of the law.  Thus, it demonstrated a good faith effort to ensure its classification of the Direct Sellers complied with the FLSA.  Like BOK, WFC is entitled to summary judgment on the two-year statute of limitations on DOL's misclassification claim.

HEJMANOWSKI &
McCREA LLC
ATTORNEYS AT LAW
520 SOUTH FOURTH ST.,
SUITE 320
LAS VEGAS, NEVADA 89101
T: 702.834.8777 | F: 702.834.5262
WWW.HMLAWLV.COM

In *McLean v. Garage Management Corp.*, 2012 WL 1358739, *7-8 (S.D.N.Y. Apr. 19, 2012), the court held that the plaintiffs had failed to demonstrate that GMC officers were subjectively aware of a substantial danger that their compensation system violated the FLSA but chose to stick with it nonetheless.   The court found that none of the four prior government investigations put GMC on notice that its compensation system violated federal or state labor laws.  *Id.*  Here, WFC had never had a prior government investigation by either the state or DOL that put it on notice that its compensation system violated federal or state labor laws.   The state had affirmatively approved the use of the Independent Contractor Direct Seller agreement and found it was legal.   Thus, DOL cannot meet its burden of proof that any FLSA violation was willful.

In *Stokes v. BWXT Pantex, LLC*, 424 Fed.Appx. 324, 326-27 (5th Cir. 2011), the Fifth Circuit held that **it was not the employer's burden to show that its actions were not willful**. In *Chao v. Virginia Department of Transportation*, 291 F.3d 276, 283 (4th Cir. 2002), the Fourth Circuit found that the Secretary of Labor filed no pleadings in that case, defective or otherwise, during the limitations period. **Nor did the defendant contribute in any way to her delay in filing**. The court found that the question was whether the delinquent plaintiff, DOL, had done everything she could to preserve her rights.  In that case, it was "beyond peradventure" that she did not.  *Id.*  Moreover, the court found that reasonableness was not the touchstone of equitable tolling.   The court concluded that in the long run experience taught that strict adherence to the procedural requirement specified by the legislature was the best guarantee of evenhanded administration of the law.  *Id.* at 284.

In *Chao v. SelfPride, Inc.*, 2006 WL 469954, *5 (D. Md., Jan. 17, 2006), the court found that manipulation of payroll records alone did not constitute willfulness.   The court found that DOL's prior investigation of SelfPride did not provide sufficient notice to establish that the

HEJMANOWSKI &
McCREA LLC
ATTORNEYS AT LAW
520 SOUTH FOURTH ST.
SUITE 320
LAS VEGAS, NEVADA 89101
T: 702.834.8777 | F: 702.834.5262
WWW.HMLAWLV.COM

21

defendants had actual notice of the requirements of the FLSA and notwithstanding such knowledge recklessly disregarded or willfully violated the FLSA's requirements. *Id.* at *6. The court said, "Furthermore, in most instances a good faith disagreement with the government regarding the FLSA cannot alone support a later finding by a court that a defendant acted willfully." *Id.,* at *6. The court concluded that only a two-year statute of limitations period applied. *Id.* Finally, in *Steele v. Leasing Enterprises, Ltd.*, 826 F.3d 237, 247-48 (5th Cir. 2016), the plaintiffs argued that the employer's continual violation following an interlocutory judgment issued by the district court was evidence of willfulness. The Fifth Circuit concluded however that an interlocutory order was not a final order and that the two-year statute of limitations applied. Since DOL has not proven willfulness, the two-year statute of limitations should be applied.[3]

### D.     121 Extra Individuals

The claims of the 121 extra individuals are barred by 29 U.S.C. §216(c). They were not named and added as party plaintiffs until September 18, 2017. There is no allegation in the First Amended Complaint that any of them have a claim as of September 18, 2015. Moreover, the 121 new names were given to DOL during the investigation. Exhibit C.

### E.     Conclusion

The telemarketing business is legal and 26 U.S.C. §3508 compliance entitled WFC to use Direct Seller Independent Contractors as long as it met the criteria in §3508. 26 U.S.C. §3508(a) states that the direct seller "shall not be treated as an employee" and the person for whom such services are performed "shall not be treated as an employer." The law does not get any clearer

---

[3] According to Exhibit A, ¶ 20, 345 Direct Sellers included in DOL's Complaint are outside even a 3-year statute of limitations. DOL ignores these Direct Sellers and its mistaken inclusion of a casino, a bank and the correctly classified W-2 employees in its list. *See* Exhibit A.

HEJMANOWSKI &
McCREA LLC
ATTORNEYS AT LAW
520 SOUTH FOURTH ST.,
SUITE 320
LAS VEGAS, NEVADA 89101
T: 702.834.8777 | F: 702.834.5262
WWW.HMLAWLV.COM

22

than that.   **WFC could not have complied with 26 U.S.C. §3508 and the FLSA simultaneously**.  It had to follow either the independent contractor requirements of §3508 to not be an employer or it had to treat its Direct Sellers as employees under the FLSA.

WFC relied on §3508 and filed 1099's for the Direct Sellers.  An employee business model requires the use of W-2's.  If compliance with §3508 is going to be deemed a misclassification by the DOL, WFC and the Direct Sellers were entitled to notice by the DOL through formal rule-making. WFC had no notice that DOL was going to take the position that §3508 is illegal and that businesses using Direct Sellers must comply with the FLSA rather than 26 U.S.C. §3508.

To comply with §3508, the Direct Sellers must enter into a written independent contractor agreement which provides "that the person will not be treated as an employee with respect to such services for Federal tax purposes."  26 U.S.C. §3508(2)(C).  Moreover, in order to comply with §3508, WFC had to pay the Direct Sellers remuneration directly related to sales rather than to the number of hours worked.  26 U.S.C. §3508(2)(B).  WFC could not comply with both 26 U.S.C. §3508 and the FLSA at the same time.

Here, DOL is arguing that the Independent Contractor Agreement for Direct Seller itself was a violation of the FLSA.  The DOL cites no authority for this proposition and indeed there is none.  Indeed, if WFC had not entered into the Independent Contractor Agreement for Direct Seller, it would not have come into compliance with 26 U.S.C. §3508, would not have been able to file 1099's for them and would not be able to have them be statutory non-employees. Statutory non-employees do not have FLSA rights.

None of the DOL's internal directives on misclassification of employees as independent contractors even addresses 26 U.S.C. §3508 or Direct Sellers.  DOL is treating this case as a generic misclassification case which does not involve another federal statute such as 26 U.S.C.

HEJMANOWSKI &
McCREA LLC
ATTORNEYS AT LAW
520 SOUTH FOURTH ST.
SUITE 320
LAS VEGAS, NEVADA 89101
T: 702.834.8777 | F: 702.834.5262
WWW.HMLAWLV.COM

23

§3508 which specifically authorizes the business model used by WFC. Here, DOL is trying to recover what it considers losses to the Treasury (ECF No. 44, pp. 2, 6, 7) and yet, the Treasury is specifically governed by 26 U.S.C. §3508. That law passed by Congress specifically allowed WFC to treat its Direct Sellers as independent contractors and to file 1099's for them. It specifically allowed WFC to **not** comply with Social Security, Medicare and the Unemployment Insurance Trust Fund. WFC respectfully requests that since there is no genuine issue of material fact, this Court grant it summary judgment as a matter of law and conclude that its Direct Sellers were not employees under the FLSA and that all of DOL's claims, with the exception of the 121 extra individuals, which arise prior to October 7, 2014, are barred by 29 U.S.C. §255(a). DOL's claims in regard to the 121 extra individuals which arise prior to September 18, 2015, are barred by U.S.C. §216(c) and §255(a).

Respectfully submitted,

HEJMANOWSKI & McCREA LLC


By:   /s/  Malani L. Kotchka
Malani L. Kotchka, NSB #283
520 South Fourth Street, Suite 320
Las Vegas, NV  89101

*Attorneys for Defendants Wellfleet*
*Communications, LLC, and Allen Roach*

HEJMANOWSKI &
McCREA LLC
ATTORNEYS AT LAW
520 SOUTH FOURTH ST.
SUITE 320
LAS VEGAS, NEVADA 89101
T: 702.834.8777 | F: 702.834.5282
WWW.HMLAWLV.COM

24

**INDEX OF DEFENDANT'S EXHIBITS TO DEFENDANTS WELLFLEET COMMUNICATIONS, LLC AND ALLEN ROACH'S MOTION TO DISMISS OR ALTERNATIVELY FOR SUMMARY JUDGMENT**
**Case No.:  2:16-cv-02353-GMN-GWF**

| | |
|---|---|
| Exhibit A | Declaration of Allen Roach |
| Exhibit A-1 | Independent Contractor Agreements for Direct Seller |
| Exhibit B | Declaration of Allen Roach |
| Exhibit C | Declaration of Allen Roach |
| Exhibit D | Communications with DOL Regarding Tolling Agreements |
| Exhibit E | DOL's Investigation Form |
| Exhibit F | September 27, 2017 DOL Letter Regarding Damaged Noble Dialer |

HEJMANOWSKI & McCREA LLC
ATTORNEYS AT LAW
520 SOUTH FOURTH ST.
SUITE 320
LAS VEGAS, NEVADA 89101
T: 702.834.8777 | F: 702.834.5262
WWW.HMLAWLV.COM