# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

R. ALEXANDER ACOSTA Secretary of Labor,
United States Department of Labor,

        Plaintiff,

vs.

WELLFLEET COMMUNICATIONS, LLC, *et al.,*

        Defendants.

Case No.: 2:16-cv-02353-GMN-GWF

**ORDER**

This matter is before the Court on Defendants' Emergency Motion to Quash Plaintiff's Subpoena Duces Tecum on JPMorgan Chase Bank, N.A., Wells Fargo, N.A., and G&S Tax and Accounting Services, Inc. (ECF No. 39); and Motion for Protective Order (ECF No. 41), filed on September 11, 2017. Plaintiff filed his Opposition (ECF No. 46) on September 19, 2017. The Court conducted a hearing in this matter on September 21, 2017. Defendants filed a Reply (ECF No. 54) on September 27, 2017.

## BACKGROUND

### 1.   Nature of Claims and Defenses.

Plaintiff has brought this action "to secure unpaid wages and damages for employees who worked daily shifts at a Las Vegas calling center, working the phones for a group of interrelated Las Vegas telemarketing companies, but who were not paid minimum wage for the hours they worked." *First Amended Complaint* (ECF No. 44), pg. 2:4–6. Plaintiff alleges that Defendants operated telemarketing companies that sold long distance telephone products for telephone companies such as AT&T, Verizon and Birch Communications. *Id.* at pg. 3, ¶ 4. Defendants engaged individuals to sell their long distance telephone products. Defendants called these individuals "Direct Sellers" and

1  classified them as independent contractors.  Defendants and the workers entered into written contracts,

2  entitled "Independent Contractor Agreement for Direct Seller," which stated that the workers were

3  independent contractors, not employees, and that Defendants would not withhold any federal, state, or

4  other taxes, including income tax, social security tax, FICA, Medicaid and unemployment tax, and that

5  the workers would not be eligible for unemployment benefits.  *See Defendants' Motion to Dismiss or*

6  *Alternatively Motion for Summary Judgment* (ECF No. 64), pgs 4–6.[1]

7       Defendants argue that their treatment of the workers as independent contractors complied with 26

8  U.S.C. § 3508(a) which states that "[f]or purposes of this title, in the case of services performed as a

9  qualified real estate agent or as a direct seller – (1) the individual performing such services shall not be

10 treated as an employee, and (2) the person for whom such services are performed shall not be treated as

11 an employer."  The statute defines a "direct seller" as a person who is engaged in the trade or business of

12 selling (or soliciting the sale of ) consumer products in the home or otherwise than in a permanent retail

13 establishment; substantially all of the remuneration for the performance of the services is directly related

14 to sales or other output, rather than the number of hours worked; and the services are performed pursuant

15 to a written contract between such person and the person for whom the services are performed, and

16 which provides that the person will not be treated as an employee with respect to such services for

17 Federal tax purposes. § 3508 (b)(2)(A), (B) and (C).

18      Defendants assert that prior to the Department of Labor's investigation, their telemarketing

19 business was audited by the State of Nevada which approved the "Independent Contractor Agreement

20 for Direct Seller" as a legal operating document.  *Id.* at pg. 2.  Pursuant to the agreements, Defendants

21 paid each worker commissions based on the sales actually completed.  *Id.* at pg. 6.  They did not pay the

22 workers based on the number of hours worked, and consequently did not maintain records regarding the

23 actual hours worked by the workers.  Defendants state that after Plaintiff commenced its investigation,

24 they complied with its demand to treat their telephone sales workers as employees.  Defendants

25

26      [1] Plaintiff's first amended complaint was filed on September 18, 2017.  Defendants' motion to dismiss or
for summary judgment regarding the first amended complaint is substantially the same as its motion to dismiss or

27 for summary judgment in regard to the original complaint.  *See First Motion to Dismiss/Summary Judgment*
(ECF No. 5), filed on January 3, 2017.  Plaintiff filed its response to the first motion on January 24, 2017.  *See*

28 *Response* (ECF No. 7).

thereupon began keeping records regarding the employees' work hours and paid them minimum wages and overtime in compliance with the FLSA.  They assert that the only remaining issues in this case are the amounts, if any, owed to employees who were not paid minimum wages or overtime prior to Defendants complying with Plaintiff's demand.

One of the principal issues in this case is the applicable statute of limitations period.  29 U.S.C. § 255(a) provides that an action for unpaid minimum wages or overtime compensation must be commenced within two years after the cause of action accrues, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrues.  Plaintiff's complaint against Defendants Wellfleet Communications and Allen Roach was filed on October 7, 2016. Defendants argue that they had a good faith belief that their call center workers qualified as independent contractors and, therefore, they can only be liable for unpaid minimum wages or overtime that accrued within two years before the filing of the complaint.

Plaintiff responds by noting that the FLSA contains the broadest definition of "employee" under the law.  *See United States v. Rosenwasser*, 323 U.S. 360, 362, 65 S.Ct. 295, 296 (1945).  Courts have adopted an expansive interpretation of the definitions of "employer" and "employee" under the FLSA in order to effectuate its broad remedial purposes.  *Real v. Driscoll Strawberry Associates, Inc.*, 603 F.2d 748, 754 (9th Cir. 1979).  Courts apply the economic reality test which considers a number of factors to distinguish employees from independent contractors.  These factors include:  (1) the degree of the alleged employer's right to control the manner in which the work is to be performed; (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; (3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; (4) whether the service rendered requires a special skill; (5) the degree of permanence of the working relationship; and (6) whether the service rendered is an integral part of the alleged employer's business. The presence of any individual factor is not dispositive.  Rather the determination of employee or independent contractor status depends upon the circumstances of the whole activity.  *Id.*

Plaintiff argues that the Internal Revenue Code provision regarding direct sellers does not apply to the determination of whether an individual is an employee or independent contractor under the FLSA. In *Esquivel v. Hillcoat Properties, Inc.*, 484 F.Supp.2d 582, 584 (W.D.Tex. 2007), the district court

rejected the application of 26 U.S.C. § 3508 in an FLSA action, stating as follows:

> By its terms, § 3508 applies only to Title 26, the Internal Revenue Code. Defendants have cited no authority whatsoever for the proposition that a classification for income tax purposes has any application to the determination of employee status under the FLSA. Even if this were a factor to be considered, it would not supplant the five-factor fact-intensive test used to determine whether, as a matter of economic reality, the individuals in question are economically dependent upon the business to which they render their services.

*See also Heidingfelder v. Burk Brokerage, LLC*, 2010 WL 4364599, at *4 (E.D.La. Oct. 25, 2010) (relying on *Esquivel* to reject application of § 3508 to determine employee status under the FLSA); and *Serino v. Payday California, Inc.*, 2010 WL 1678302 (9th Cir. April 27, 2010) (unpublished) (stating generally that the provisions of the Internal Revenue Code and court opinions interpreting those provisions do not bear on the definition of "employer" under the FLSA).

In support of his argument that Defendants' call center workers were employees and not independent contractors under the economic reality test, Plaintiff makes the following factual allegations: The call center workers used computers, software and other equipment provided by Defendants to make calls. Defendants gave the workers a script that they were trained on and required to follow, which included information on the products Defendants were selling and their prices. Defendants determined the price of the products and services sold. Defendants' managers monitored the workers' calls to ensure that they stayed within the parameters of the script. Defendants required the workers to make calls from the call center and they were not allowed to make calls from home. Defendants gave the workers only a brief training before they began working. Defendants determined the rates they would pay the workers, which they listed on a pay scale attached to the form contracts the workers were required to sign. Defendants did not deduct anything from sales commissions. Defendants' payment records showed that some workers were only paid $3 during a week and there were 5,788 instances in which a call center worker received less than $100 during a week. The call center was open from 7:00 a.m. to 7:00 p.m. and Defendants established a morning shift and afternoon shift. Workers worked regular shifts of five days-a-week, Monday through Friday, and had the option to work on Saturday. Some workers regularly worked 10–12 hours a day and Saturdays to make more sales. *Plaintiff's Response to First Motion to Dismiss/Summary Judgment* (ECF No. 7), pgs 10–1l.

4

1    Plaintiff argues that Defendants' violations of the FLSA were willful and, therefore the three-

2    year statute of limitations applies.  Under *McLaughlin v. Richland Shoe Co.*, 486 U.S. 127, 133, 108

3    S.Ct. 1677, 1681 (1988), "[a] violation of the FLSA is willful if the employer 'either knew or showed a

4    reckless disregard for the matter of whether its conduct was prohibited by the [FLSA].'"  Plaintiff argues

5    that Defendants' own evidence, namely their independent contractor agreements, demonstrate that they

6    deliberately attempted to evade their obligations under the FLSA.  Plaintiff argues that Defendants failed

7    to submit admissible evidence showing that they consulted with a lawyer about the legality of treating

8    the workers as independent contractors.  *Plaintiff's Response* (ECF No. 7), at pg. 24.  Plaintiff also

9    argues that the statute of limitations should be equitably tolled because Defendants' wrongful conduct

10   prevented the employees from asserting their claims for payment of minimum wages and overtime.

11   Defendants did this by having the workers sign the independent contractors agreements which deceived

12   them about their employment status.  *Id.* at pg. 25 (citing *Stoll v. Runyon*, 165 F.3d 1238, 1242 (9th Cir.

13   1999) and *Henchy v. City of Absecon*, 148 F.Supp.2d 435, 438-39 (D.N.J. 2001)).  Plaintiff alleges that

14   Defendants have repeatedly and willfully violated the FLSA since at least October 15, 2012 and that the

15   employees are entitled to recover unpaid minimum wages and overtime pay since that date.  *First*

16   *Amended Complaint* (ECF no. 44), at ¶¶ 32–34.

17          **2.    Discovery Requests at Issue.**

18          On or about August 24, 2017, Plaintiff served subpoenas duces tecum on JPMorgan Chase Bank,

19   N.A. ("JPMorgan Chase") and Wells Fargo Bank, N.A. ("Wells Fargo") which called for the banks to

20   produce complete account files, including signature cards or equivalent; statements; check copies (front

21   and back); and wire and electronic transfer records for any accounts held in the name of or associated

22   with Wellfleet Communications, LLC, Lighthouse Communications, LLC, New Choice

23   Communications, LLC, Advanced Integrated Communications, LLC, JR Communications, LLC and JR

24   Marketing, LLC.  The subpoenas also seek the same documents for accounts held in the name of any

25   corporation or LLC for which any of the following individuals is an agent or authorized user: Allen

26   Roach, Dawn Piazza, Ryan Roach, Ryan Lore, John Martino, Mij Courtney, Stephanie Sulusi, or

27   Stephanie Muasau.  The subpoenas also seek the same documents for accounts held in the name of any

28   corporation or LLC which was or is associated with five specified street addresses.  The subpoena to

1   Wells Fargo also lists specific account numbers as to which account documents were requested.  In

2   addition to the foregoing account documents, the subpoenas request any and all documents reflecting

3   communications made to the banks from January 1, 2009 to the present relating to any of the accounts

4   for which records are requested.  *Motion to Quash* (ECF No. 41), *Exhibits A-1* and *A-2*.  Otherwise, the

5   subpoenas seek records for the "relevant time period," which the subpoenas define as the time period

6   from October 15, 2012 to the date of production.  *Id.*

7        Plaintiff also served a subpoena duces tecum on G&S Tax & Accounting Services, Inc. ("G&S

8   Tax").   The subpoena requested all documents: (1) showing any time worked by call center workers

9   during the subject time period, (2) reflecting ownership interests in any of the call center employers, (3)

10  showing any transactions, transfers of assets, agreements or contracts among call center employers and

11  members of the Roach family relating to any call center employer, (4) income tax returns for all call

12  center employers for the years 2012–2016, (5) state or local tax filings for all call center employers for

13  the years 2012–2016, (6) financial records for all call center employers covering the subject time period,

14  (7) identifying bank accounts of all call center employers, and (8) relating to communications between

15  G&S Tax and the call center employers during the relevant time period, October 15, 2012 to the date of

16  production.  *Exhibit A-3.*

17       Defendants object to all three subpoenas on the grounds that they are impermissibly overbroad

18  and unduly burdensome.  Defendants also argue that their financial records are irrelevant.  They

19  implicitly argue that they have privacy interests in their financial information.  Defendants also argue

20  that the records subpoenaed from G&S Tax are protected from disclosure by Nevada's accountant-client

21  privilege.  Finally, Defendants argue that the subpoenas are technically invalid because Plaintiff failed to

22  give notice to Defendants[2] of the subpoenas duces tecum before they were served on JPMorgan Chase,

23  Wells Fargo, and G&S Tax as required by Fed. R. Civ. Pro. 45(a)(4).  Plaintiff responds that Defendants

24  do not have standing to move to quash subpoenas served on non-parties on the grounds that the

---

26      [2]At the time the subpoenas were served, only Wellfleet Communications and Allen Roach were

27  defendants in this action because Plaintiff's motion to amend its complaint adding New Choice Communications, Inc., Lighthouse Communications, LLC, and Ryan Roach had not yet been granted.  The motion to amend has

28  since been granted and the additional defendants have entered their appearances.

1  subpoenas are unduly burdensome, overbroad or irrelevant.  Plaintiff also argues that the Nevada's

2  accountant-client privilege is inapplicable, and that the relevance of the information sought outweighs

3  any privacy interest that Defendants may have in their financial records, including tax returns.  Finally,

4  Plaintiff argues that notice of the subpoenas was sent to Defendants before the subpoenas were served,

5  and, in any event, the alleged failure to provide such notice was harmless because Defendants have had

6  sufficient opportunity to object, move to quash and seek a protective order against the subpoenas.

7  **DISCUSSION**

8        Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that "[p]arties may obtain

9  discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and

10  proportional to the needs of the case, considering the importance of the issues at stake in the action, the

11  amount in controversy, the parties' relative access to relevant information, the parties' resources, and the

12  importance of the discovery in resolving the issues, and whether the burden and expense of the proposed

13  discovery outweighs its likely benefit.  Information within the scope of discovery need not be admissible

14  in evidence to be discoverable."

15        The intent of the 2015 amendments to Rule 26(b) was to encourage trial courts to exercise their

16  broad discretion to limit and tailor discovery to avoid abuse and overuse, and to actively manage

17  discovery to accomplish the goal of Rule 1 "'to secure the just, speedy, and inexpensive determination of

18  every action and proceeding.'"  *Roberts v. Clark County School District*, 312 F.R.D. 594, 601–04 (D.

19  Nev. 2016).  The amendments "emphasize the need to impose 'reasonable limits on discovery through

20  increased reliance on the common-sense concept of proportionality.'  The fundamental principle of

21  amended Rule 26(b)(1) is 'that lawyers must size and shape their discovery requests to the requisites of a

22  case.'  The pretrial process must provide parties with efficient access to what is needed to prove a claim

23  or defense, but eliminate unnecessary and wasteful discovery.  This requires active involvement of

24  federal judges to make decisions regarding the scope of discovery."  *Id.* at 603 (quoting Chief Justice

25  Roberts' 2015 Year-End Report).  *See also Nationstar Mortgage v. Flamingo Trails No. 7*, 316 F.R.D.

26  327, 331 (D.Nev. 2016).

27  . . .

28  . . .

A party generally has no standing to move to quash or modify a subpoena duces tecum issued to a third person unless the party claims some personal right or privilege with regard to the documents sought. *Hawaii Regional Council of Carpenters v. Yoshimura*, 2017 WL 738554, at *2 (D.Haw. Feb. 17, 2017) (quoting 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2459 (2d ed 2007) and *California Sportfishing Prot. All. v. Chico Scrap Metal, Inc.*, 299 F.R.D. 638, 643 (E.D.Cal. 2014)). A party has no standing to move to quash a subpoena on the ground that it is unduly burdensome when the non-party has not objected on that basis. *Id.* (citing *Chevron Corp. v. Donziger*, 2013 WL 4536808, at *4 (N.D.Cal. Aug. 22, 2013)). Plaintiff notes that JPMorgan Chase and Wells Fargo have not objected to the subpoenas, and that Wells Fargo has notified Plaintiff that it is ready to produce the subpoenaed records unless the Court orders otherwise. G&S Tax objected to the subpoena only on the basis of the accountant-client privilege. *Plaintiff's Opposition* (ECF No. 46), at pg. 3, n. 3.

Plaintiff disputes Defendants' assertion that the subpoenas were served on the non-parties before notice of the subpoenas were sent to Defendants' counsel as required by Rule 45(a)(4). The Court agrees with Plaintiff that Defendants have not been prejudiced by any failure to provide notice in compliance with Rule 45(a)(4). Defendants have had the full opportunity to contest the subpoenas and nothing would be served at this point by striking any of the subpoenas and requiring that they be reserved.

**1. Defendants' bank account records are not protected from disclosure to the Plaintiff.**

In *United States v. Miller*, 425 U.S. 435, 440, 96 S.Ct. 1619, 1623 (1976), the Supreme Court held that an individual has no reasonable expectation of privacy in his bank account records. In response to *Miller*, Congress enacted the Right to Financial Privacy Act, 12 U.S.C. § 3401, et seq. Section § 3403(a) of the Act states that "[n]o financial institution or officer, employee, or agent of a financial institution, may provide to any Government authority access to or copies of, or the information contained in, the financial records of any customer except in accordance with the provisions of this chapter." Section 3401 defines "customer" as "any person or authorized representative of that person who utilized or is utilizing any service of a financial institution . . . ." "Person" is defined as "an individual or partnership of five or fewer individuals." Thus, the statute does not protect from disclosure to the

8

Government, the bank account records of corporations or limited liability companies.

Furthermore, Section § 3413(e) states that "[n]othing in this chapter shall apply when financial records are sought by a Government authority under Federal Rules of Civil or Criminal Procedure or comparable rules of other courts in connection with litigation to which the Government authority and the customer are parties." Thus, the Act does not preclude disclosure of the bank account records of individuals who are parties to litigation with the Government. In *United States v. Cimino*, 219 F.R.D. 695, 696 (N.D.Fla. 2003), for example, the court held that the defendant's bank records were not protected from disclosure in a collection action brought by the government. The court further noted that there is no common law privilege that precludes discovery of bank records. *Id.* (citing *United States v. Bell*, 217 F.R.D. 335, 343 (M.D.Pa. 2003)). *See also United States v. Gordon*, 247 F.R.D. 509, 510 (E.D.N.C. 2007). In *Federal Trade Comm'n v. Trudeau*, 2012 WL 5463829, at *3 (N.D.Ohio Nov. 8, 2012), the government subpoenaed the bank account records of the judgment debtor and several corporate entities that he controlled. The court stated that "numerous courts, including the Sixth Circuit, have 'rejected the idea that there is a general constitutional right of nondisclosure of personal information.'" *Id.* (citing *Jenkins v. Rock Hill Local School Dist.*, 513 F.3d 580, 591 (6th Cir. 2008)). The court further noted that the Right to Privacy Act does not cover the financial records of corporations. *Id.* at *3, n. 2. In *Ojeda-Sanchez v. Bland Farms, LLC*, 2009 WL 10664436, at *3 (S.D.Ga. April 15, 2009), the court, quoting *United States v. Cimino,* rejected the FLSA defendants' assertion that their bank records were privileged or otherwise protected on privacy grounds.[3]

There is some authority, however, that a court may take an individual's privacy interests into consideration in determining whether a discovery request is oppressive or unreasonable. *United States v. Bell*, 217 F.R.D. at 343 (citing *Hecht v. Pro-Football, Inc.*, 46 F.R.D. 605, 607 (D.D.C. 1969)). In *Transcor, Inc. v. Furney Charters, Inc.*, 212 F.R.D. 588, 590–91 (D.Kan. 2003), the court held that a plaintiff had standing to challenge a subpoena duces tecum for its bank records, but did not address whether the plaintiff had any privacy right in the records. The court decided the motion on the basis of

---

[3] In actions between private parties, courts have also held that there is no privilege or privacy right with respect to bank account records. *See Clayton Brokerage Co., Inc. v. Clement* 87 F.R.D. 569, 570-71 (D.Md. 1980); *Sneirson v. Chemical Bank*, 108 F.R.D. 159, 161-62 (D.Del. 1985).

1    relevancy.

2         Although Defendants do not have a legally protected privacy interest in their bank account

3    records, the court may quash the subpoenas or issue a protective order against the production of the

4    records if Defendants demonstrate that the records are completely irrelevant, or are only relevant as to a

5    specific time period.  The party seeking a protective order has a heavy burden of showing why discovery

6    should be denied and must show a particular and specific need for the protective order.  *Blankenship v.*

7    *Hearst Corporation*, 519 F.2d 418, 429 (9th Cir. 1975); *Tradebay, LLC v. Ebay, Inc.*, 278 F.R.D. 597,

8    601–02 (D.Nev. 2011).  Here, the banks have not objected to the subpoenas and it may be less expensive

9    for them to simply produce the records, than to contest their relevancy on behalf of Defendants.  In *Moon*

10   *v. SCP Pool Corp.*, 232 F.R.D. 633 (C.D.Cal. 2005), the plaintiff served a subpoena duces tecum on a

11   non-party for business transaction records between the non-party and the defendant.  The non-party did

12   not object to the subpoena or move to quash it.  The defendant, however, did object and moved to quash

13   the subpoena on the grounds that records were irrelevant.  The court noted that although irrelevance is

14   not among the litany of enumerated reasons for quashing a subpoena found in Rule 45, courts have

15   incorporated relevance as a factor when determining motions to quash a subpoena.  *Id.* at 637 (citing

16   *Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicecenter*, 211 F.R.D. 658, 662 (D.Kan. 2003)).

17   The court stated that it may entertain such motions where unusual circumstances exist, such as where the

18   subpoena is overbroad on its face and exceeds the bounds of fair discovery.  *Moon*, 232 F.R.D. at 636.

19   *See also Miller v. Schmitz*, 2016 WL 6778944, at *2 (E.D.Ca. Nov. 15, 2016).  The courts in *Transcor,*

20   *Inc. v. Furney Charters, Inc.*, 212 F.R.D. at 590-91, and *Ojeda-Sanchez v. Bland Farms, LLC*, 2009 WL

21   10664436, at *3, also held that parties have standing to challenge subpoenas for their bank account

22   records on relevancy grounds.

23        Defendants argue that discovery should be limited to the period beginning two years prior to the

24   filing of the complaint because there is no factual basis to support a finding that they willfully violated

25   the FLSA, or that the statute of limitations should be equitably tolled.  Plaintiff, however, has made a

26   sufficiently credible claim for willful violation of the FLSA which supports discovery for a period of

27   three years prior to the filing of the complaint.  Although Plaintiff's claim for equitable tolling arguably

28   has less strength, it also is not so lacking in merit as to preclude discovery for an additional one year

period back to October 15, 2012.[4]  Plaintiff has not demonstrated, however, on what basis he should be permitted to obtain documents relating to Defendants' communications with the banks regarding the accounts beginning January 1, 2009.  The Court will therefore only authorize production of bank account records, including communications with the banks, from October 15, 2012 to the date of production.

Defendants argue that the only reason given by Plaintiff for seeking their bank account records is that they may show whether the workers "invested" in the businesses.  Defendants do not claim that the workers invested in the business and they therefore argue that production of their bank records is unnecessary.  Plaintiff argues that the bank records are relevant for the following reasons:  They are relevant to show that Defendants exerted control over the meaningful aspects of the business by paying various business related expenses—premises rental payments, supplies, real and personal property taxes, advertising and utility bills.  The bank account signature cards and signatures on corporate accounts will also help establish the individual defendants' control over the corporations/businesses.  Complete bank records will show all payments made to workers, which is relevant to establishing whether the workers had a 'permanent' relationship with Defendants or whether there was substantial turn-over, as Defendants contend.  *Opposition* (ECF No. 46), at pg. 8.  The bank records will also show if checks to workers were cashed.  Plaintiff states that its investigator learned that Defendant Wellfleet had a practice of not providing the last check to workers after they quit or were terminated.  The bank records will also account for deductions made from worker's checks, since they will reveal the amounts paid to workers, not simply the amounts earned as stated by Defendant Wellfleet's spread sheets.  *Id.*  In *Ojeda-Sanchez v. Bland Farms, LLC*, 2009 WL 10664436, at *3, the court held that similar arguments supported the relevance of the plaintiff's subpoenas for the defendants' bank records.  Plaintiffs have stated sufficient relevant reasons to obtain the bank records.  Because there is no evidence that production of these records will be particularly burdensome for the banks, the subpoenas are also proportional to the needs of the case.

There is, however, one issue regarding the bank subpoenas.  The subpoenas request complete

---

[4] This Court, of course, expresses no view on the ultimate merits of Plaintiff's claims for willful violation of the FLSA or for tolling of the statute of limitations.

1   account files for accounts held in the names of any corporation or LLC for which a current or former

2   street address associated with the account is listed in the subpoenas.  *Motion* (ECF No. 39), *Exhibits A-1*

3   and *A-2*.  The court infers that the listed addresses are the same as those for the call centers operated by

4   Defendants.  Although it may be probable that any entity using these addresses during the relevant time

5   period is controlled or associated with the Defendants, it is also possible that persons not associated with

6   Defendants have conducted business at those addresses.  If the banks have account records for other

7   corporate entities that used the subject addresses during the period from October 2012 to the present,

8   then they should identify those entities to Plaintiff and Defendants.  If Defendants assert that the entities

9   are not connected or related to them, then Plaintiff must establish some connection or relationship before

10  the Court orders those bank records to be produced.

11        **2.**     **Nevada's accountant-client privilege does not apply in this action.**

12        Defendants have asserted Nevada's accountant-client privilege in opposition to Plaintiff's

13  subpoena to G&S Tax.  *See* Nevada Revised Statutes (NRS) §§ 49.125 to 49.205.  Plaintiff's claims

14  against Defendants, however, are based on violations of federal law—the FLSA.  In federal question

15  cases, evidentiary privileges are governed by federal common law.  *FDIC v. Lewis*, 2015 WL 4579323,

16  at *15 (D.Nev. July 29, 2015) (citing Fed.R.Evid. 501 and *Admiral Ins. Co. v. U.S. Dist. Court for Dist.*

17  *of Arizona*, 881 F.2d 1486, 1492 (9th Cir. 1989)).  There is no accountant-client privilege under federal

18  law.  *Couch v. United States*, 409 U.S. 322, 335, 93 S.Ct. 611, 619 (1973).  *See also Forsythe v. Brown*,

19  281 F.R.D. 577, 587 (D.Nev. 2012) (citing *Couch* and *United States v. Arthur Young & Co.*, 465 U.S.

20  805, 817, 104 S.Ct. 1495, 79 L.Ed.2d 826 (1984)).  Defendants, therefore, do not have grounds to object

21  to the G&S Tax subpoena on the basis of the accountant-client privilege.

22        Paragraphs 1, 2, 3, 6, 7, and 8 of the subpoena to G&S Tax request (1) all documents showing

23  any time worked by call center workers during the subject time period; (2) reflecting ownership interests

24  in any of the call center employers; (3) showing any transactions, transfers of assets, agreements or

25  contracts among call center employers and members of the Roach family relating to any call center

26  employer; (6) financial records for all call center employers covering the subject time period; (7)

27  identifying bank accounts of all call center employers; and (8) relating to communications between G&S

28  Tax and the call center employers during the relevant time period–October 15, 2012 to the date of

1  production. These records are relevant to the claims and defenses in this action, and the Court therefore

2  denies Defendant's motion to quash or for protective order regarding such records.

3           **3.     Defendants have a privacy interest in their federal income tax returns.**

4           Paragraphs 4 and 5 of the subpoena to G&S Tax also seek the federal income tax returns, and

5  state and local tax filing records, for all call center employers for the years 2012–2016.  There is no

6  privilege for federal income tax returns and they are subject to civil discovery in appropriate

7  circumstances.  *Fazli v. ConocoPhillips Co.*, 2008 WL 11343435, at *2 (C.D.Cal. Aug. 20, 2008) (citing

8  *Heathman v. United States District Court for Central District*, 503 F.2d 1032 (9th Cir. 1974).  Tax

9  returns, however, possess "a character of confidentiality."  *Id.*  Courts generally do not order production

10 of federal tax returns unless the requesting party shows that the returns contain relevant information

11 which is not readily obtainable from other sources.  *Id.  See also Eglin Federal Credit Union v. Cantor,*

12 *Etc.*, 91 F.R.D. 414, 416–17 (N.D.Ga. 1981); *Robinson v. Duncan*, 255 F.R.D. 300, 302 (D.D.C. 2009);

13 and *Fosbre v. Las Vegas Sands Corp.*, 2016 WL 54202, at *5 (D. Nev. Jan. 5, 2016).  Plaintiff argues

14 that Defendants have put their tax documents at issue by claiming that the call center workers were

15 independent contractors pursuant to the "direct seller" provision in 26 U.S.C. § 3508(a).  Although

16 Plaintiff argues that Section 3508(a) is irrelevant, he nevertheless argues that he is entitled to obtain tax

17 records relating to this issue to explore the defense based on this statute.  *Opposition* (ECF No. 46), at

18 pgs 9–11.  The Court agrees that if G&S Tax has tax records that classify or identify the call center

19 workers as "direct sellers," "independent contractors." or "employees," such records are discoverable.

20 Otherwise, Plaintiff has failed to demonstrate the Defendants' tax returns contain relevant information

21 that he is unable to obtain from other readily accessible sources.  Accordingly,

22         **IT IS HEREBY ORDERED** that Defendants' Emergency Motion to Quash Plaintiff's

23 Subpoena Duces Tecum on JPMorgan Chase Bank, N.A., Wells Fargo, N.A., and G&S Tax and

24 Accounting Services, Inc. (ECF No. 39); and Motion for Protective Order (ECF No. 41) is **granted**, in

25 part, and **denied**, in part as follows:

26         1.  Plaintiff is entitled to obtain the bank account records, including any and all documents

27 reflecting communications made to the banks from October 15, 2012 to the date of production as listed

28 in paragraphs 1, 2 and 4 of the subpoena served on JPMorgan Chase, and in paragraphs 1, 2, 3, and 5 of

the subpoena served on Wells Fargo.

2. JPMorgan Chase and Wells Fargo shall not produce bank account records or other documents regarding entities associated with the addresses listed in paragraphs 3 and 4, respectively, of the subpoenas until and unless it is confirmed that the account holders on those accounts are connected or related to the Defendants in this action.

3. G&S Tax & Accounting Services, Inc. shall produce the documents identified in paragraphs 1, 2, 3, 6, 7 and 8 of the subpoena to it, for the period October 15, 2012 to the date of production.

4. For the period October 15, 2012 to the date of production, G&S Tax & Accounting Services, Inc. shall also produce any tax records that identify or classify Defendants' call center workers as "direct sellers," "independent contractors," or "employees."  Otherwise, Defendants' motion is granted as to Defendants' federal, state or local tax returns or other tax documents.

**IT IS FURTHER ORDERED** that the parties shall, if necessary, submit a revised discovery plan and scheduling order in light of the time this matter has been under submission to the Court.

DATED this 8th day of November, 2017.

GEORGE FOLEY, JR.
United States Magistrate Judge

14