# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

R. ALEXANDER ACOSTA Secretary of Labor, )
United States Department of Labor, )
                                                             )
                       Plaintiff, )        Case No.: 2:16-cv-02353-GMN-GWF
                                                            )
vs. )        **ORDER**
                                                            )
                                                            )        **Re: Motion to Compel (ECF No. 85)**
WELLFLEET COMMUNICATIONS, LLC, *et al.,* )
                                                            )
                    Defendants. )

This matter is before the Court on Plaintiff's Motion to Compel (ECF No. 85), filed on December 14, 2017. Defendants filed a Motion to Strike (ECF No. 89) on December 21, 2017, and an Opposition to Plaintiff's Motion to Compel (ECF No.95) on December 28, 2017. Plaintiff filed its Opposition to Defendants' Motion to Strike (ECF No. 99) and his Reply in Support of the Motion to Compel (ECF No. 100) on January 4, 2018. The Court conducted a hearing in this matter on January 11, 2018.

## BACKGROUND

Plaintiff Secretary of Labor, Department of Labor, originally filed this action against Defendants Wellfleet Communications LLC and Allen Roach on October 7, 2016. *Complaint* (ECF No. 1). The filing of the complaint followed an investigation by the Department of Labor regarding whether Defendants had improperly characterized their call center workers[1] as independent contractors, rather than as employees, and failed to pay them minimum wages and overtime pay as required by federal law.

---

[1] Call center workers are also referred to as "sales representatives" in the documents and testimony. For uniformity, the Court uses the term call center workers.

Plaintiff alleges that Defendants operated telemarketing companies that sold long distance telephone products for telephone companies such as AT&T, Verizon and Birch Communications. The call center workers, whom Defendants designated "Direct Sellers," conducted telephone sales. Defendants and the call center workers executed written contracts, entitled "Independent Contractor Agreement for Direct Seller," which stated that the call center workers were independent contractors and that Defendants would not withhold any federal, state, or other taxes, including income tax, social security tax, FICA, Medicaid and unemployment tax, and that the workers would not be eligible for unemployment benefits. Defendants argue that treatment of the call center workers as independent contractors complied with the Internal Revenue Code, 26 U.S.C. § 3508(a), which states that "[f]or purposes of this title," individuals performing services as a "direct seller" shall not be treated as an employee, and the person for whom such services are performed shall not be treated as an employer. Defendants assert that this constitutes a defense to the Plaintiff's action under the FLSA. Defendants also argue that their business was audited by the State of Nevada which approved the "Independent Contractor Agreement for Direct Seller" as a legal operating document.

Prior to the filing of this lawsuit, Plaintiff's investigator, Alissa Ann, made an estimate of the number of hours worked by 1,444 call center workers during period from October 15, 2012 to October 16, 2015. This estimate was arrived at through interviews with the workers about their work hours, including time deducted for lunch and other scheduled breaks. The investigator determined that call center workers worked an average of 25.5 hours per week which multiplied by the $7.25 minimum hourly wage results in a weekly minimum wage of $184.88. Plaintiff's investigator requested that Defendants produce records that would show the actual hours worked by call center workers and the amounts paid to them. *Exhibit 1 to Motion to Strike* (ECF No. 89-1), at 255-260, *DOL Investigator's Narrative Report*. Defendants state that they did not maintain records regarding the hours worked by the call center workers prior to February 1, 2016 when they reclassified the call center workers as employees, began tracking their work hours, and paying at least the minimum wage for all hours worked. Defendants state that as a result of complying with Plaintiff's demand to treat the call center workers as employees, they were required to lay-off most of the workers and downsize their operations.

Plaintiff alleges that he is entitled to recover back wages and overtime pay on behalf of the call

center workers for the period from October 7, 2012 through February 1, 2016. The statute of limitations period under the FLSA is two years, unless the violation was willful, in which case the limitations period is three years. Plaintiff argues that Defendants' violations of the law were willful and that the three year statute of limitations should apply. Plaintiff also argues that the running of the statute of limitations should be equitably tolled for an additional year because the Defendants prevented the call center workers from asserting their rights to be paid minimum wages and overtime pay. This Court previously found that Plaintiff has sufficiently alleged a factual basis for its claims of willfulness and for equitable tolling to support discovery for the period from October 7, 2012 until February 1, 2016. *See Order* (ECF No. 75), at 3-5.

Plaintiff seeks to compel production of the following categories of documents from Defendants: (1) records showing the actual hours worked by call center workers during the subject period; (2) records that show the amounts paid to call center workers, including deductions from their pay; (3) records relating to the ownership and control of the Defendant entities; (4) communications between Defendants and others relating to their position that the call center workers were independent contractors, and not employees; and (4) records relating to the degree of control that Defendants exercised over the call center workers.

The following requests for production and responses are at issue in this matter:

> **REQUEST NO 4**: All DOCUMENTS, regardless of date created, RELATING TO the CALL CENTER WORKERS' job duties during the SUBJECT TIME PERIOD, including job advertisements, job descriptions, training materials, memoranda, and scripts used by the CALL CENTER WORKERS during calls.
>
> **RESPONSE:** Defendants believe they have furnished these documents and indeed, in the Secretary's Initial Disclosures, these documents are listed in B(f).
>
> **REQUEST NO. 5**: All DOCUMENTS, regardless of date created, RELATING TO any monitoring or supervision of the CALL CENTER WORKERS during the SUBJECT TIME PERIOD, including all DOCUMENTS RELATING TO any warning to, or discipline or termination of CALL CENTER WORKERS.
>
> **RESPONSE:** Defendants believe that if any of these existed, they were given to Plaintiff.
>
> **REQUEST NO. 6**: PERSONNEL FILES for all CALL CENTER WORKERS who worked for WELLFLEET during the SUBJECT TIME

PERIOD.

**RESPONSE:** Objection on the basis of relevance. Since Defendants only maintained personnel files for its W2 employees, this request is not proportional to the needs of the case, the importance of the issues in this case or the goals of FRCP 1.

**REQUEST NO. 7**: All DOCUMENTS showing any time worked by any CALL CENTER WORKER during the SUBJECT TIME PERIOD, including but not limited to any Agent Log-in Log-out Report, Talk Time Reports, Daily Hour Sheets, Time Cards, work schedules, sign-in/sign out sheets, time-off request forms, and DOCUMENTS generated by or reflecting data from dialer systems showing the log-in and log-off times of the CALL CENTER WORKERS.

**RESPONSE:** All documents responsive to this request have been given to Plaintiff. See Section B(i) of the Secretary's Initial Disclosures.

**REQUEST NO. 9**: All DOCUMENTS showing any payments made, and deductions from those payments (such as chargebacks or cancellations, etc.) to CALL CENTER WORKERS during the SUBJECT TIME PERIOD.

**RESPONSE:** All documents responsive to this request have been given to Plaintiff. See Section B(g), (h) and (j) of the Secretary's Initial Disclosures.

**REQUEST NO. 10**: All DOCUMENTS showing any loans made to CALL CENTER WORKERS during the SUBJECT TIME PERIOD and showing any payments made by CALL CENTER WORKERS on those loans.

**RESPONSE:** Objection on ground of relevance. This request is not proportional to the needs of the case, the importance of the issues in this case or the goals of FRCP 1.

**REQUEST NO. 11**: All COMMUNICATIONS to or from WELLFLEET or Allen Roach RELATING TO the CALL CENTER WORKERS' attendance or hours worked during the SUBJECT TIME PERIOD.

**RESPONSE:** Defendants have no documents responsive to this request for the relevant time period other than documents already furnished to Plaintiff. See Section B(i) of the Secretary's Initial Disclosures.

**REQUEST NO. 12**: All DOCUMENTS RELATING TO the scheduling of CALL CENTER WORKERS during the SUBJECT TIME PERIOD.

**RESPONSE:** Defendants have no documents responsive to this request for the relevant time period. New Hire Packets used since February 2016 have been produced.

**REQUEST NO. 13**: All COMMUNICATIONS sent or received by WELLFLEET or Allen Roach RELATING TO the CALL CENTER WORKERS' status as direct sellers, independent contractors or employees.

**RESPONSE:** Other than the Independent Contractor Agreements, 1099's, unemployment communications for the relevant time period and all documents furnished to Plaintiffs by Defendants and others, Defendants have no documents responsive to this request. See Section B(d) of the Secretary's Initial Disclosures.

**REQUEST NO. 20**: The operating agreement(s) and amendments thereto for WELLFLEET and any affiliates, including parent or subsidiary entities.

**RESPONSE:** There are none for Defendant Wellfleet.

**REQUEST NO. 21**: All DOCUMENTS reflecting the ownership of stock certificates, the ownership structure, or any OWNERSHIP INTEREST in WELLFLEET, including any change in OWNERSHIP INTEREST.

**RESPONSE:** There are no stock certificates. Wellfleet was owned by Allen Roach.

**REQUEST NO. 22**: All DOCUMENTS that show any transactions, transfers of assets, agreements or other contracts between WELLFLEET, NEW CHOICE LIGHTHOUSE, members of the ROACH FAMILY, or any other CALL CENTER EMPLOYER.

**RESPONSE:** Objection on ground of relevance. This request is not proportional to the needs of the case, the importance of the issues in this case or the goals of FRCP 1. The purchase agreement for sale of assets has been furnished to Plaintiff.

**REQUEST NO. 23**: All board and officer meetings for WELLFLEET and any affiliates, including parent or subsidiary entities.

**RESPONSE:** There are none.

**REQUEST NO. 30**: Any and all financial records for WELLFLEET covering the SUBJECT TIME PERIOD, including any General Ledger, Income Statements, and Profit and Loss Statements.

**RESPONSE:** Objection on ground of relevance. This request is not proportional to the needs of the case, the importance of the issues in this case or the goals of FRCP 1.

*Motion to Compel* (ECF No. 85), *Exhibits E* and *J*.

A. **Documents Showing Amounts Paid to and Hours Worked by Call Center Workers Prior to February 1, 2016.**

Defendants assert that they did not maintain records of the hours worked by call center workers prior to February 1, 2016. Call center workers were not required to use a time clock and Defendants allegedly did not use any other means to intentionally record or calculate their work time. Defendants did use a computer server, known as a Noble Dialer, to make telephone calls to potential customers.

Call center workers logged-in to the Noble Dialer system which would then automatically select and call telephone numbers. Once the call was answered, the call center worker would make his or her sales pitch. The Noble Dialer contained data regarding when call center workers logged-in and off the system. Defendants contend, however, that workers did not always log-off during the course of the day when they took breaks, or at the end of their work shifts, and, therefore, data on the Noble Dialer would not be an accurate indication of actual hours worked.

Defendants delivered the Noble Dialer computer server to Plaintiff for inspection in late July 2017. Plaintiff intended to retrieve data showing the dates and times that the call workers were logged-in to the system. Plaintiff was unable to "power-up" the Noble Dialer server, and therefore sent it to a forensic consultant, Deloitte, who was also unable to power-up the server. Deloitte did, however, make images of the server's hard drives. The Noble Dialer was shipped back to Plaintiff and was allegedly damaged during the return shipment. Deloitte advised Plaintiff of two options for possibly retrieving data from the hard drives. The first option would be to purchase a duplicate server and mount the hard drive images onto the duplicate server and attempt to start it. The second option would be to send the hard drive images to a third party vendor that specializes in data recovery. As of the January 11, 2018 hearing, neither option has been pursued.

Plaintiff contends that Defendant has or may have other records that show the hours worked by call center workers. After discovery began in this case, Plaintiff obtained documents from the Nevada Office of Labor Commissioner regarding Wellfleet's responses to complaints made by former call center workers for unpaid wages. In his response to those complaints, Wellfleet's owner, Allen Roach, attached log-in/log-out time sheets that showed the weekly hours worked by the call center workers. *Stearns Declaration* (ECF No. 85-1). Plaintiff attached one such log-in/log-out time sheet for a call center worker which showed the dates and times he worked from May 11 to May 29, 2015. *Id.*, *Exhibit D.* Mr. Roach testified at his October 25, 2017 deposition about a similar log-in/log-out time sheet for another call center worker. He stated that he probably asked Wellfleet's IT personnel "to print me out the log-in log-out, as it was a good estimate of time, in some cases." *Id.*, *Exhibit V, Roach Deposition*, at 123:15-22. The information in the log-in/log-out time sheet was obtained from the Noble Dialer. *Id.* at 132:11-15. The log-in/log-out time sheet was not a standard form that Wellfleet used, and was only

6

prepared in response to the specific complaints made to the State Labor Commissioner. *Id.* at 124:6-9. Mr. Roach testified that Defendants did not prepare similar log-in/log-out time sheets in response to the Plaintiff's investigator's request for records regarding the hours worked by call center workers "[b]ecause I would never consider these time sheets. There's too many variables that could change the outcome of the time at the end. . . . There was a lot of variations in the log-in time, so we never considered this a time clock." *Id.* at 124:18-20 to 125:1-3. With respect to the complaints to the State Labor Commissioner, he testified: "Now, for these situations, because I wanted to settle them, I sometimes would just grab the hours and if they looked close, I would say, Yeah, let's pay them for that, just to settle it out. Let's be done with it, because that's what I was told to do." *Id.* at 125:4-9.

       Wellfleet employee Stephanie Muasau testified at her October 24, 2017 deposition that "talk time reports could be obtained from the computer system which would show the time the call center workers were connected to the system, "whether it's talking to a customer, sitting on voice mail, sitting on answering machine or whatever." She testified that she could ask IT to prepare talk time reports and that she did so when a call center worker asked her for his or her talk time. *Stearns Declaration* (ECF No. 85-1), *Exhibit N*, *Muasau Deposition*, at 121:3-25. There was no indication in Ms. Muasau's testimony that Defendants preserved copies of the talk time reports requested by call center workers. Defendants' counsel represented to the Court on January 11, 2018 that the only other log-in/log-out time sheets prepared by Defendants were those that were provided to the State Labor Commissioner in response to the complaints from a relatively few call center workers.

       Plaintiff's counsel also "discovered a pay sheet for a single week in an unmarked spreadsheet tab among thousands of other documents." *Stearns Declaration* (ECF No. 85-1), at ¶ 33. This spreadsheet is titled "Birch Communications Payroll" and appears to list the number of hours worked by call center workers assigned to the Birch account for the week of October 15-21, 2012. It also lists the "lines payable" for each worker, and the amount of money owed to each worker. *Id.*, *Exhibit U*. Plaintiff states that Exhibit U is the only document of this nature that Defendants have produced. Stephanie Muasau testified that she routinely saw Birch Communications weekly payroll sheets similar to Exhibit U during the time she worked as a manager for Defendants. *Exhibit N*, at 169:9-25, 170:1. Another Wellfleet employee, Mij Courtney, testified that she managed the Verizon account for Wellfleet.

7

*Stearns Declaration* (ECF No. 85-1), *Exhibit EE, Courtney Deposition*, at 28:11-21. She prepared spreadsheets that showed the commissions owed to each call worker on a weekly basis. *Id.* at 100:7-13. Ms. Courtney was shown the Birch Communications payroll sheet and testified that she had seen spreadsheets similar to this document. *Id.* at 102:15-25; 103:1-5. It was not clear from Ms. Courtney's testimony, however, whether the spreadsheets she was familiar with listed the hours worked by the call center workers. Ms. Courtney also testified that call center workers were required to submit a form requesting time off which stated the date the worker was to be off and was signed by the worker and the manager. These records were turned into the administrative office. *Id.* at 145:21-25; 146:1-5.

Defendants' employee Dawn Piazza testified at her November 15, 2017 deposition that she paid payroll to call center workers through QuickBooks and that Defendants' QuickBooks records go back to the beginning of the company. *Stearns Declaration* (ECF No. 85-1), *Exhibit DD, Piazza Deposition*, at 65:4-15. She testified that Wellfleet still has access to its QuickBooks records. *Id.* at 66:1-6. Payroll was run once a week. *Id.* at 67:7-11. In order to run payroll, Ms. Piazza would receive a pay sheet prepared by the managers which showed the call center workers' names and how much to pay them. The spread sheet might show that a worker won a contest and how much was owed for that. *Id.* at 67:12-25; 68:1-5. Ms. Piazza testified that the pay sheets sometimes contained notes, "but a lot of times it was how much to pay them. The number of deals times that pay scale equals what I was supposed to pay them. They may have notes." *Id.* at 68:6-14. The spreadsheets did not list the hours worked by call center workers prior to when Defendants designated them as employees, but they may have sometimes included "talk time," the amount of time the worker was on the phone. *Id.* at 68:15-23. The pay sheet also contained information regarding deductions. Very rarely, it would include a deduction for a fine imposed on the worker, such as for using his or her cell phone during work. It might also include deductions for loan repayments or chargebacks when a deal didn't go through. *Id.* at 71:22-25; 72:1-23. Ms. Piazza indicated that information regarding such deductions would be in the Quickbooks program. *Id.* at 73:2-24. The pay sheets were paper documents which Ms. Piazza would put in the file once she paid the call center workers. *Id.* at 69:22-25; 70:1-7.

Plaintiff states that Defendants produced a set of loan spreadsheets for loans made to call center workers between October 2014 and September 2015, but has not produced loan document for the period

from October 2012 to October 2014, or the period from September 2015 to February 1, 2016. *Motion to Compel* (ECF No. 85) at 17; *Stearns Declaration* (ECF No. 85-1), ¶ 49. Plaintiff also states that the produced loan spreadsheets do not provide information regarding the loan fees that Defendants charged for the loans. Ms. Piazza testified that such information was recorded on a separate loan form which was maintained in the call center workers' individual files. *Motion to Compel* (ECF No. 85) at 17; *Piazza Deposition*, at 76:12-17; 105:17-25; 106:1-4; 111:24-25; 112:1-4. Plaintiff also requests that Defendants be ordered to produce their general ledger which should contain information relating to payments made or amounts owed to call center workers during the subject time period.

**B.  Documents Relating to Defendants' Control Over the Call Center Workers.**

Plaintiff requests the personnel files of call center workers maintained by Defendants for the subject period—October 2012 to February 1, 2016. Although Defendants stated in response to Request No. 6 that they did not maintain "personnel files" for the call center workers prior to February 1, 2016, Defendants' officer manager Dawn Piazza testified that prior to that date Defendants maintained a separate file for each call center worker which contained their new hire packets, guidelines and pay scales. *Piazza Deposition*, at 51:11-25; 52:1-5. She testified that office and personal conduct guidelines were added to the new hire packets in approximately 2010 or 2011. These guidelines included instructions on proper work apparel, use of cell phones, and information about work attendance. *Id.*, at 43:9-25; 44:1-9. Plaintiff asserts that Defendants did not produce any documents regarding new hire packets for call center workers for the period prior to February 1, 2016.

Defendants' employee Stephanie Muasau testified that she issued written warnings to call center workers for using their cellular telephones at work. She kept these warning notices in her own file. *Exhibit N, Muasau Deposition*, at 65:17-25; 68:1-18. Ms. Courtney also testified that managers kept records of written warnings issued to call center workers. *Exhibit EE, Courtney Deposition*, at 64:15-25; 65:1-9. Defendants also maintained "Training Packets" for call workers which contained "office and program rules." *Muasau Deposition*, at 85:20-25; 86:1-21.

**C.  Documents Relating to Ownership of the Defendant Corporate Entities.**

Plaintiff has requested documents relating to the ownership of Defendants corporate entities, including operating agreements and amendments thereto (Request No. 20), ownership of stock or stock

certificates (Request No. 21); documents showing any transactions, transfers of assets, or contracts between the corporate entities, the Roach Family, or other call center employers (Request No. 22) and minutes of all board and officer meetings (Request No. 23). Defendants responded to Requests Nos. 20, 21, and 23 by stating that no responsive documents exist. Defendants objected to Request No. 22 as irrelevant and not proportional to the needs of the case.

### **DISCUSSION**

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, and the importance of the discovery in resolving the issues, and whether the burden and expense of the proposed discovery outweighs its likely benefit. Information within the scope of discovery need not be admissible in evidence to be discoverable."

The intent of the 2015 amendments to Rule 26(b) was to encourage trial courts to exercise their broad discretion to limit and tailor discovery to avoid abuse and overuse, and to actively manage discovery to accomplish the goal of Rule 1 "'to secure the just, speedy, and inexpensive determination of every action and proceeding.'" *Roberts v. Clark County School District*, 312 F.R.D. 594, 601–04 (D. Nev. 2016). The amendments "emphasize the need to impose 'reasonable limits on discovery through increased reliance on the common-sense concept of proportionality.' The fundamental principle of amended Rule 26(b)(1) is 'that lawyers must size and shape their discovery requests to the requisites of a case.' The pretrial process must provide parties with efficient access to what is needed to prove a claim or defense, but eliminate unnecessary and wasteful discovery. This requires active involvement of federal judges to make decisions regarding the scope of discovery." *Id.* at 603 (quoting Chief Justice Roberts' 2015 Year-End Report); *see also Nationstar Mortgage v. Flamingo Trails No. 7*, 316 F.R.D. 327, 331 (D.Nev. 2016).

Plaintiff's requests for production are relevant within the liberal construction of that term under Rule 26(b)(1). Records showing the actual hours worked by the call center workers and the amounts they received in compensation for their services (including amounts deducted from their pay), are

10

relevant to proving the minimum wages or overtime pay allegedly owed by Defendants for the period from October 7, 2012 to February 1, 2016. Likewise, records showing the extent to which Defendant controlled the conditions of the work performed by call center workers such as establishing work schedules, instructing the workers how to perform their duties, providing equipment and other resources to perform the work, and imposing discipline on call-center workers are relevant in determining whether they were employees or independent contractors under the multi-factor test set forth in *Real v. Driscoll Strawberry Associates, Inc.*, 603 F.2d 748, 754 (9th Cir. 1979). The requests directed at establishing the ownership and control of Defendant corporations by other corporate and individual Defendants are also relevant. Although Plaintiff disputes Defendants' assertion that the Internal Revenue Code, 26 U.S.C. § 3508(a) provides a defense to claims under the FLSA, Plaintiff is entitled the obtain discovery relating to this defense, including communications, if any, that Defendants had with the IRS.[2]

Rule 34(a)(1) requires a responding party to produce or make available for inspection designated documents or electronically stored information in its possession, custody or control. Documents are deemed to be in a party's control, if he has the legal right to obtain the documents on demand. *A. Farber and Partners, Inc. v. Garber*, 234 F.R.D. 186, 189 (C.D.Cal. 2006). The responding party has an affirmative duty to seek information reasonably available to him from his employees, agents, or others subject to his control. *Id.* (citing *Gray v. Faulkner*, 148 F.R.d. 220, 223 (N.D.Ind. 1992). *See also Rogers v. Giurbino*, 288 F.R.D. 469, 485 (S.D.Cal. 2012); *Envtech, Inc. v. Suchard*, 2013 WL 4899085, at *5 (D.Nev. Sept. 11, 2013); and *Ueda v. Cavett and Fulton, PC*, 2015 WL 13661654, at *2 (D.Ariz. Sept. 16 2015). Rule 34, however, only requires a party to produce documents that are already in existence. It is not required to prepare new documents solely for their production. *Rogers v. Giurbino*, 288 F.R.D. at 485; *Alexander v. F.B.I.*, 194 F.R.D. 3015, 310 (D.D.C. 2000); *Clay v. Cytosport,* Inc., 2016 WL 6082314, at *7 (S.D.Cal. Oct. 18, 2016); and *Rodriguez v. Simmons*, 2011 WL 1322003, at *6 (E.D.Cal. Apr. 4, 2011). A party cannot be compelled to produce documents that it insists do not exist. *Acosta v. JY Harvesting, Inc.*, 2017 WL 3437654, at *3 (S.D.Cal. Aug. 10, 2017) (citing *Alexander v.*

---

[2] Defendants' counsel represented at the hearing that Defendants have not communicated with the IRS with respect to whether the call center workers qualified as "direct sellers" under § 3508(a).

11

*F.B.I.*, 194 F.R.D. at 310 and *Lamon v. Adams*, 2015 WL 1879606, at *3 (E.D.Cal. Apr. 22, 2015)).

If the party determines upon reasonable inquiry that responsive documents do not exist, "'it should so state with sufficient specificity to allow the Court to determine whether the party made a reasonable inquiry and exercised due diligence.'" *Rogers v. Giurbino*, 288 F.R.D. at 485 (quoting *Marti v. Baires*, 2012 WL 2029720, at *19–20, (E.D.Cal. June 5, 2012)). *See also Jackson v. Farmers Ins. Exch.*, 2014 WL 7150264, at *6 (E.D.Cal. Dec. 15, 2014). "When a party claims that the requested documents have already been produced, it must indicate that fact under oath in response to the request. . . . [I]f the party fails to make a clear and specific statement of such compliance under oath, the court may order it to produce the documents." *Napolito v. Synthes USA, LLC*, 297 F.R.D. 194, 200 (D.Conn. 2014) (citation and internal quotation marks omitted). *See also Rogers*, 288 F.R.D. at 485.

Plaintiff states in his motion that "Defendants produced pay and time records and workplace rules only from the time period *after* Defendants claim to have come into compliance with the FLSA (February 2016)." *Motion to Compel* (ECF No. 85), at 4-5. Defendants have not refuted this assertion. The deposition testimony of Defendants' employees, Mr. Roach, Ms. Muasau, Ms. Piazza, and Ms. Courtney, clearly establish that Defendants have records showing the amount of commissions paid to the call center workers prior to February 1, 2016, as well as records relating to deductions from those commissions for loan repayments, charge backs or occasional fines imposed on call center workers for violations of workplace rules. There is no indication that Defendants have made a reasonable effort to locate, collect and produce such records in response to Plaintiffs' requests for production.

Defendants state that they did not track or maintain records regarding the hours worked by call center workers prior to February 1, 2016. Based on Mr. Roach's testimony, there is no reason to believe that Defendants prepared log-in/log-out time sheets for any call center workers other than those who were the subject of the State Labor Commissioner's investigation. The data for these log-in/log-out time sheets was obtained from the Noble Dialer server. As stated above, a party generally has no obligation to prepare documents in response to a request for production. In any event, it is doubtful that data can now be retrieved from the Noble Dialer.

Ms. Muasau testified that she would occasionally obtain "talk time reports" if a call center worker requested it. It is not clear from her testimony whether Defendants retained copies of these "talk

time reports." There is no evidence, however, that Defendants have searched their electronic or hard copy files to determine if such reports exist. Likewise, Defendants produced a document entitled "Birch Communications Payroll" that listed the number of hours worked by call center workers assigned to that account for a single week in October 2012. It seems unusual that only one document of this nature would exist. Ms. Muasau testified that she routinely saw Birch Communications weekly payroll sheets similar to the October 2012 document. Ms. Courtney had apparently seen spreadsheets similar to this document for the accounts of other long distance service providers. Finally, Ms. Courtney testified that Defendants also created records regarding time off requests by call center employees. Although such records are not as probative as documents showing the hours worked by call center workers, they are relevant to that issue. They are also relevant to the degree of control that Defendants exercised over the call center workers. Defendants have not shown that they made any effort to locate and produce such records.

The court may limit or prohibit discovery of potentially relevant information if it determines that production would be unduly burdensome to the responding party. In determining whether an undue burden exists, the court must consider the needs of the case, the amount in controversy, the parties resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues. Rule 26(b)(1); *U.S. Ex Rel. Carter v. Bridgepoint Educ., Inc.*, 305 F.R.D. 225, 237 (S.D.Cal. 2015). The party claiming undue burden "must allege specific facts which indicate the nature and extent of the burden, usually by affidavit or other reliable evidence." *Jackson v. Montgomery Ward & Co., Inc.*, 173 F.R.D. 524, 528–29 (D.Nev. 1997). "The fact that production of documents would be burdensome and expensive and would hamper a party's business operation is not a reason for refusing to order production of relevant documents. . . . The standard is whether the burden and expense is 'undue' and whether the hardship is unreasonable in light of the benefits to be secured from the discovery. . . . A party claiming requests are unduly burdensome cannot make conclusory allegations, but must provide some evidence regarding the time or expense required." *Doe v. Nebraska*, 788 F.Supp.2d 975, 981 (D.Neb. 2011) (internal quotation marks and citations omitted). *See also Pellerin v. Wagner*, 2016 WL 950792, at \*5 (D.Ariz. Mar. 14, 2016) and *In re Application of Savin Magic Ltd.*, 2017 WL 6454240, at \*5 (D.Nev. Dec. 18, 2017).

1    Defendants have not complied with the foregoing requirements. It appears to be Defendants'
2  position that, having agreed to Plaintiff's demand that they treat the call center workers as employees,
3  they should not be burdened with having to produce records for the period prior to February 2016.
4  Plaintiff, however, is pursuing a claim for unpaid minimum wages and overtime on behalf of the call
5  center workers who were treated as independent contractors prior to February 1, 2016. Plaintiff is
6  reasonably entitled to obtain information and documents relating to the degree of control that the
7  Defendants exercised over the call center workers, the amounts paid to the call center workers for their
8  services and documents showing the hours worked by the call center workers. Defendants also argue
9  that Plaintiff did not engage in reasonable efforts to meet and confer and attempt to resolve the discovery
10 dispute prior to filing the motion to compel as required by Rule 37(a)(1). Based on the declaration of
11 Plaintiff's counsel, however, the Court is satisfied that Plaintiff made reasonable, good faith efforts to try
12 resolve the dispute prior to filing the motion to compel. Defendants' failure to comply with the basic
13 requirements for responding to requests for production of documents, even after deposition discovery
14 revealed the existence of responsive documents, further shows that Plaintiff was justified in filing the
15 motion to compel, instead of making further efforts to persuade Defendants to comply with their
16 discovery obligations.

17    It is not necessary for Defendants to produce the office and personal conduct guidelines or other
18 workplace rules or training materials contained in the personnel file of each call center worker so long as
19 Defendants produce representative samples of each and every such document applicable to call center
20 workers during the subject time period, and acknowledges that the same documents were provided to all
21 call center workers and governed their conduct during the subject time period. Likewise, it is not
22 necessary for Defendants to produce documents for each and every disciplinary action taken against each
23 call center worker so long as they produce representative samples of such records. Production of records
24 relating to the actual payments made to each call center worker and the hours he or she worked during
25 the subject time period, however, are reasonably necessary to establish the amount of back pay allegedly
26 owed to each worker. This includes paper records and records contained in Defendants' QuickBooks
27 program. Defendants should also produce their general ledger. Given that Defendants employed over
28 1,500 call center workers, the burden of reviewing the files and producing such records could be

significant.  Defendants, however, have failed to make any showing that searching for and producing such records would be unduly burdensome.

Based on the foregoing, Plaintiff's motion to compel is granted as follows:  Defendant shall produce documents in its possession, custody and control that are responsive to Plaintiff's Requests for Production of Documents Nos. 4, 5, 6, 7, 9, 10, 11, 12, 13, 20, 21, 22, 23, and 30.  If Defendants maintain that documents responsive to any of the foregoing requests for production do not exist, or that all such documents in their possession, custody or control relating to the subject matter of the request have already been produced, they shall so state under oath.  Because the circumstances indicate that Defendants have not previously made adequate efforts to search for and produce documents responsive to Plaintiff's requests, Defendants shall also describe, under oath and with specificity, the efforts they have made to locate and produce documents responsive to the requests.  In this regard, it is a proper response to state that documents responsive to a particular request do not exist because Defendants know and can truthfully state that no such documents were ever prepared or obtained by them.  Such a response may be proper, for example, in response to Request No. 13, if, as Plaintiff's counsel stated at the hearing, Defendants did not have any communications with the IRS or others regarding the status of the call center workers, as direct sellers, independent contractors or employees.  It is not proper to state that responsive documents do not exist, however, if Defendants simply have not made a diligent and good faith effort to locate and produce the documents.  Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Compel (ECF No. 85) is **granted** in accordance with the foregoing provisions of this order.  Defendants shall serve supplemental responses to the requests for production of documents within fourteen days of the date of this order, unless the time to comply is further extended by stipulation of the parties or court order.

DATED this 1st day of February, 2018.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge