1  MALANI L. KOTCHKA, NSB No. 238
   HEJMANOWSKI & McCREA LLC
2  520 South Fourth Street, Suite 3200190
   Las Vegas, Nevada 89101
3  Telephone: (702) 834-8777
   Facsimile: (702) 834-5262
4  mlk@hmlawlv.com
   *Attorneys for Defendants Wellfleet*
5  *Communications, LLC, and Allen Roach*

6
                    **UNITED STATES DISTRICT COURT**
7                        **DISTRICT OF NEVADA**

8  R. ALEXANDER ACOSTA, Secretary of      Case No. 2:16-CV-02353-GMN-GWF
9  Labor, United States Department of Labor,

10                          Plaintiff,
11      v.                                     **DEFENDANTS WELLFLEET**
    WELLFLEET COMMUNICATIONS, LLC, a          **COMMUNICATIONS, LLC, AND**
12  Nevada Limited Liability Company; NEW      **ALLEN ROACH'S MOTION FOR**
    CHOICE COMMUNICATIONS, INC., a            **SUMMARY JUDGMENT**
13  Nevada corporation; LIGHTHOUSE
    COMMUNICATIONS, LLC, a Nevada Limited     **(ORAL ARGUMENT REQUESTED)**
14  Liability Company; ALLEN ROACH, an
    individual; and RYAN ROACH, aka RYAN
15  LORE, an individual,

16                          Defendants.

17
       Pursuant to FRCP 56(a), Defendants Wellfleet Communications, LLC and Allen Roach
18
    move this Court to grant them judgment as a matter of law since there is no genuine dispute as to
19
    any material fact. This motion is based on the record and the exhibits attached hereto and
20
    incorporated herein.
21

22                                  Respectfully submitted,

23                                  HEJMANOWSKI & McCREA LLC

24
                                    By:   /s/ Malani L. Kotchka
25                                        Malani L. Kotchka
                                          Nevada Bar No. 283
26                                        520 South Fourth Street, Suite 320
                                          Las Vegas, NV 89101
27                                        *Attorneys for Defendants Wellfleet*
                                          *Communications, LLC, and Allen Roach*
28

HEJMANOWSKI &
McCREA LLC
ATTORNEYS AT LAW
520 SOUTH FOURTH ST.
SUITE 320
LAS VEGAS, NEVADA 89101
T: 702.834.8777 | F:

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   UNDISPUTED FACTS

Joseph Roach, Allen Roach's brother, owned a telecommunications business.  Exhibits 1 and 2.  Joseph Roach passed away on August 29, 2009, during a nation-wide recession.  His brother Allen took over the business as general manager on August 30, 2009, which was Al's first involvement in the telemarketing business.  Exhibit 3, pp. 14, 16-17.

Although Al did not seek any legal advice, he talked to the Certified Public Accountant, Gary Krape, who represented his brother's company, within the first few weeks of arriving.  Exhibit 3, p. 54; Exhibit 2, p. WC2856.  The business model for the sales representatives was already in place.  Exhibit 3, pp. 56-57; Exhibit 1.  Allen operated the business on the same basis as his brother had operated it and as other telemarketing rooms in the Las Vegas area.  *Id.*  Al brought in Dave Best to help him (Exhibit 3, p. 17) and Dave Best told Al that "Joe had gone out to an attorney and had worked with him over a couple of months to have [the Direct Seller Independent Contractor Agreement] drafted."  Exhibit 3, p. 65; Exhibit 8.

On February 24, 2011, the Employment Security Division of the Nevada Department of Employment, Training and Rehabilitation ("DETR") conducted an audit of Wellfleet Communications, LLC ("Wellfleet"), formerly known as Advanced Integrated Communications ("AIC").  Exhibit 2.  DETR reviewed the Direct Seller Independent Contractor Agreement and said it was a good agreement.  Wellfleet did not have any hours for the Direct Sellers and did not give DETR any hours.  Exhibit 3, pp. 107-08.  Gary Krape was present at the meeting with the auditor when the auditor said the independent contractor agreement was okay.  Exhibit 3, pp. 298, 106-08.  DETR found that Wellfleet provided direct sales for telecommunication services.  Exhibit 2, p. WC2823, WC2858.  DETR said, "195 1099 statements were issued with a 1096

HEJMANOWSKI &
McCREA LLC
ATTORNEYS AT LAW
520 SOUTH FOURTH ST.
SUITE 320
LAS VEGAS, NEVADA 89101
T: 702.634.8777 | F: 702.834.5262
WWW.HMLAWLV.COM

total of $1,681,932.09.   194 1099's were issued to individual[s] that met the criteria of being direct seller and to independently established businesses that had business licenses and invoiced for their services, for a total of $1,663,982.09.  **None of these were suspect**."  Exhibit 2, pp. WC2832-33 (emphasis added).  DETR found, "Member/Officers salary properly reported as wages to ESD.  The Member/Officer (Joseph Roach) passed away in 2009-3.  The LLC currently in probate with Allen Roach as the acting member and [as] management running the day to day operations of the business."  Exhibit 2, p. WC2842.  DETR said, "No non-taxable wage errors were found."  Exhibit 2, p. WC2843.  DETR concluded, "**Misclassified Indep. Contr. 0**."  Exhibit 2, p. WC2852 (emphasis added).  Wellfleet passed the audit with flying colors.  Exhibit 1.  DETR did not provide any closing letter to Al.  Exhibit 3, pp. 109, 103.

When Al took over his brother's telemarketing business, he was not aware of the Fair Labor Standards Act.  He felt he was under the guidelines of the State of Nevada and "because of my dealing with these departments, that I was in good standing."  He felt it was accepted in the State of Nevada that direct sellers agreements were not subject to minimum wage.  Exhibit 3, pp. 114-115, 79.  Whenever a direct seller would make a claim for unemployment compensation, Al would send the direct seller agreement to DETR and "they squashed the unemployment immediately."  Exhibit 3, p. 116.

Wage and Hour is the federal agency that investigates minimum wage and overtime violations.  Exhibit 5, p. 202.  After serving as an investigator for more than 10 years, Gene Ramos became the Assistant District Director of the Wage and Hour Division in Las Vegas in 2010.  He supervises six investigators and reviews their case files.  Exhibit 4, pp. 15-16.  Investigators are required to read the Field Operations Handbook.  Exhibit 4, p. 21.  The investigator determines whether a person or entity is an employer under the FLSA.  Exhibit 4, p. 35, 52.  It is also the investigator's job to determine whether someone has been properly

HEJMANOWSKI &
McCREA LLC
ATTORNEYS AT LAW
520 SOUTH FOURTH ST.
SUITE 320
LAS VEGAS, NEVADA 89101
T: 702.834.8777 | F: 702.834.5262
WWW.HMLAWLV.COM

3

classified as an employee.  Exhibit 4, p. 39.  Ramos said, "[W]e don't enforce independent contractors in and of itself."  Exhibit 4, p. 40.  The FLSA does not govern independent contractors.  Exhibit 4, p. 44-45.

On **July 8, 2015,** a minimum wage complaint was filed by a Direct Seller with Wage and Hour against Wellfleet and specifically against Sara Robinson.  Exhibit 4, pp. 88, 133-34, Exhibits 2 and 6; Exhibit 5, p. 68.  The investigator, Alisa Ann, was not assigned to the investigation of Wellfleet until **October 5, 2015,** approximately 3 months or 90 days later. Exhibit 4, Exhibits 2, 23 and 24.  A history search is performed on all investigations.  Exhibit 5, p. 62.  WHISARD is the DOL database in which all claims against an employer are maintained. Exhibit 4, pp. 80, 134, 140.  On October 6, 2015, Investigator Ann researched the company and conducted a MODO search and a case history search.  Exhibit 4, Exhibit 24.   She did not find that any previous wage and hour claim had been made against Wellfleet.  Exhibit 5, pp. 61, 201-02; Exhibit 7, DOL 036128.  Wage and Hour had never investigated Wellfleet before.  Exhibit 5, pp. 202-03.

Ann's first contact with Allen Roach as owner of Wellfleet was October 6, 2015.  Exhibit 4, Exhibit 1.  She told him that his firm had been scheduled for a Wage and Hour investigation on October 13, 2015 at 10:00 a.m.  *Id.*  She asked that time and payroll records be produced.  *Id.*

Ann first met with Al on October 14, 2015.  Exhibit 5, pp. 22-23.  At this initial conference, Allen produced the Direct Seller Independent Contractor Agreement and the tax earnings of Wellfleet from 2012, 2013 and 2014.  Exhibit 5, p. 24; Exhibit 8.  Al gave her "a lot of documents" at the first meeting.  Exhibit 5, pp. 24-25.  Al told her that the business was previously owned by Joseph Roach and that he took over after his brother passed.  Exhibit 5, p. 26. As a result of her research on Wellfleet, Ann acquired a document which became part of her investigative file and which said:

HEJMANOWSKI &
McCREA LLC
ATTORNEYS AT LAW
520 SOUTH FOURTH ST.
SUITE 320
LAS VEGAS, NEVADA 89101
T: 702.834.8777 | F: 702.834.5262
WWW.HMLAWLV.COM

> Originally, One Stop & Advanced Integrated Communications were founded in the mid-90's, by Joseph G. Roach.  Shortly after his passing in 2009, his family took over the business and started Wellfleet Communications. . . .  Joseph G. Roach & his Family have built an industry leading sales and marketing firm over the past 20+ years.

Exhibit 5, Exhibit B.  Ann assured Al on October 14, 2015, that there was no need to provide his family's contact information and that she "would not be conducting interviews on them." Exhibit 5, Exhibit C.

At the initial conference on October 14, 2015, Al told Ann that the Direct Seller Independent Contractors had received 1099's, no deductions were made, there were spiff contests and the payments for the spiff contests were included with the payments for the sales on the 1099's.  Exhibit 5, p. 34.  Al told Ann that he had not kept records of hours for the Direct Sellers.  Exhibit 5, pp. 35-36.  Ann told Al that she did not believe the Direct Seller Independent Contractors were "true" independent contractors.  Exhibit 5, p. 38.  Al agreed that because of what she had told him, he would change the Direct Sellers from independent contractors to employees.  Exhibit 5, pp. 38-39.  Ann told Al "that there would be no liability from October 2015 to the date of [his] reclassification to employees if [he] provided her with documents." Exhibit 3, p. 297.

Al told Ann that to come into compliance with the FLSA, he would have to renegotiate his leases and would be required to scale down considerably due to the sheer economics of the changes.  Exhibit 5, pp. 41-42, 161.  Ann was aware that Roach needed to reduce his staff and she **"did not state a compliance date for the employer to come into compliance."**  Exhibit 5, pp. 42-43 (emphasis added).  She was aware that they were attempting to come into compliance after the end of the year.  Exhibit 5, pp. 45-46.

On November 16, 2015, Al told a client, "We have been directed by the US dept. [sic] of

HEJMANOWSKI &
McCREA LLC
ATTORNEYS AT LAW
520 SOUTH FOURTH ST.
SUITE 320
LAS VEGAS, NEVADA 89101
T: 702.834.8777 | F: 702.834.5262
WWW.HKLAWLV.COM

Wages and Hour Division to comply with reclassification of our representatives as W-2 employees." Exhibit 5, Exhibit D. Al said, "According to the agent that has demanded WFC be in compliance, this is widespread investigation [throughout] the State of Nevada and other states. The programs that we currently are running for Long Distant Programs do not generate sufficient revenues base on the pay by unit commission." Exhibit 5, Exhibit D. Later, on January 27, 2016, Al told the client:

> We have exhausted all options in regards to the long distance programs continuing to operate as in the past and have not been able to find an alternatives to replace the 60 reps that we have had on the floor. We also have spent the extensions that we fought to get with WHD/fedlabor.
>
> Our last day with reps as 1099 classification will end on Jan 29th. As a company we will continue to operate with a W-2 platform for our reps which will become technically our employees.

Exhibit 5, Exhibit F.

On November 19, 2015, Wellfleet's then attorney Charles Kelly (Exhibit 10) called Ann and told her the employer would have to let 70% of his workforce go to come into compliance. Ann informed Kelly "WHD is understanding of the logistical issues with changing business [sic] practices and that compliance is the objective." Exhibit 4, Exhibits 25 and 27.

On November 25, 2015, Ann spoke with the Complainant who filed the initial complaint and who questioned how long the investigation would take. Ann told him she was unable to provide an estimate and if he wanted to take action outside of the WHD, he could contact the Nevada Labor Commission or file 16(b). The Complainant said he would stay with WHD. Exhibit 6, DOL037730.

On December 15, 2015, attorney Charles Kelly wrote to Ann and said:

> I am writing to confirm our meeting today in which Mr. Al Roach and I delivered to you at his offices a substantial number of documents that you had requested in order for you to perform your

HEJMANOWSKI & McCREA LLC
ATTORNEYS AT LAW
520 SOUTH FOURTH ST.
SUITE 320
LAS VEGAS, NEVADA 89101
T: 702.834.8777 | F: 702.834.5262
WWW.HMLAWLV.COM

Wage-Hour investigation. **The specific information and/or documents you initially requested no longer exist and/or we were unable to locate** . . . .

I wish to emphasize to you, as we did during the document delivery, we have made a good faith effort to research and create the information you requested. As we told you, we had to use some measure of speculation in order calculate the data.

You have advised that you would **begin** reviewing the materials and you have asked that we continue to gather additional data for your review. We will continue to cooperate, **which you noted that we have done so from the outset**.

I would also like you to ask that you permit us to "come into compliance" and begin to terminate the employees at the end of January as opposed to December. We are engaged in gathering your requested information which is tedious and time-consuming. We also believe that it may be less burdensome on the employees if they can get through the holiday season without the trauma of being released. It will certainly lessen the hardship on them, and their families. Thank you for your past consideration in this regard, and we hope you will permit this courtesy.

Exhibit 5, Exhibit G (emphasis added).[1]

Ann responded on December 23, 2015:

I did receive your e-mail last week. I am currently reviewing the 3 month sampling from Mr. Roach. Once a review of the sampling is complete I will review this with my manager and get back to you and Mr. Roach as to the next step in the investigation.

I thought we had previous conversations regarding coming into compliance and Mr. Roach said he would be able to by the end of January. **If he is not able to and needs extra time please have him provide an estimated time of when he would be able to come into compliance.**

Exhibit 5, Exhibit H (emphasis added).

---

[1] Time and earnings cards or sheets and work time schedules are only required to be kept for two years. 29 CFR 779.514.

HEJMANOWSKI &
McCREA LLC
ATTORNEYS AT LAW
520 SOUTH FOURTH ST.
SUITE 320
LAS VEGAS, NEVADA 89101
T: 702.834.8777 | F: 702.834.5262
WWW.HMLAWLV.COM

On December 24, 2015, Al told Ann:

> Just a follow up, you mentioned you would advise on the next steps this week. I also know we asked for an end of January extension to allow us more time on preparing everyone for their release and be better prepared on the cost cuts we are trying to negotiate.

Exhibit 5, Exhibit I.

Although Wage and Hour wants their investigators to complete the investigation within ninety days (Exhibit 4, p. 163), Ann requested a 90-day extension from Ramos on December 30, 2015. Exhibit 4, Exhibit 36. He granted the extension. Exhibit 4, p. 163. **The initial complaint had now been pending for approximately 6 months.**

Ann told Ramos that she was working with the Employer to have him transcribe his own back wages due to the employer not keeping any time records. Exhibit 4, p. 162. Ann agreed that she and Al were in fairly regular communication regarding the documents that Ann was requesting, and that Al was producing. Exhibit 5, p. 55.

Al provided Ann with the payroll, time card detail and paychecks for the W-2 office staff employees for whom he kept time records. Exhibit 5, pp. 107, 109-10; Exhibit 1. Ann told Al that **he was paying the W-2 employees (for whom he was keeping time records) correctly for both minimum wage and overtime.** Exhibit 5, p. 110.

Ann "verified Mr. Roach has come into compliance effective 02/01/2016 by tracking all hours worked and paying at least minimum wage for all hours worked to all employees." Exhibit 5, pp. 121, 203-04; Exhibit 7, DOL36130, DOL36131.

Al told Ann about the DETR audit and asked her to look into it "as part of her investigation." Exhibit 3, p. 109. **Wage and Hour has subpoena power which it can exercise during an investigation.** Exhibit 4, p. 55. On January 13, 2016, Dawn Piazza, the office manager of Wellfleet, asked Ann to communicate with Mr. John McBride, the DETR auditor.

HEJMANOWSKI &
McCREA LLC
ATTORNEYS AT LAW
520 SOUTH FOURTH ST.
SUITE 320
LAS VEGAS, NEVADA 89101
T: 702.834.8777 | F: 702.834.5262
WWW.HMLAW.LV.COM

Exhibit 4, Exhibit 38, Exhibit 5, pp. 164-65.  Ramos agreed Al "provided [the audit] information when he told us about undergoing an audit by the State."  Exhibit 4, p. 135, Exhibit 19.  Ramos knew from Al the State found nothing wrong with Al classifying his Direct Sellers as independent contractors.  Exhibit 4, p. 135.  Neither Ann nor Ramos ever contacted the auditor John McBride or DETR.  Exhibit 4, p. 136; Exhibit 5, p. 145.

After Wellfleet had come into compliance with the FLSA on February 1, 2016, by reclassifying the Direct Sellers as W-2 employees, Al told Ann about a competitor who was paying straight commission and not minimum wage.  Exhibit 4, Exhibit 48.  Al told Ann, "The Vendor's payments to us were too low for us to continue with the 60 plus sales reps to allow us to pay minimum wage.  The vendor stated that they had approached a couple of call centers willing to take the risk to Pay commission only."  Exhibit 4, Exhibit 48.  Ann said, "The purpose of the investigation is that we get compliance, and it does affect the industry so other employers would have a fair competition in the marketplace."  Exhibit 5, p. 204.  Ramos admitted that it was important for WHD to treat all employers alike.  Exhibit 4, p. 173.  In response to Al's request for her to investigate the vendor, Ann said the information would be added to the case.  Exhibit 4, Exhibit 49.  However, she never investigated the other telemarketer.  Exhibit 5, p. 206.

On March 2, 2016, one month after Wellfleet came into compliance, Ann began mailing interview requests regarding Wellfleet.  She said:

> The fact that we are asking for this information does not imply that this firm has violated any law.
>
> While you are not required to respond, we ask that you assist us by answering the questions below.  Our investigation is limited to the past two years; for this reason your answers should refer only to the period or periods during which you worked for this firm within the past 2 years.

Exhibit 5, Exhibit O.  Ramos agreed the interview letter had a two-year statute of limitations and

HEJMANOWSKI &
McCREA LLC
ATTORNEYS AT LAW
520 SOUTH FOURTH ST.
SUITE 320
LAS VEGAS, NEVADA 89101
T: 702.834.8777 | F: 702.834.5262
WWW.HMLAWLV.COM

therefore the recipients were being asked to answer the questions from March 2, 2014 to March 2, 2016.  Exhibit 4, pp. 176-77, Exhibit 50.

On March 17, 2016, one and a-half months after Wellfleet had come into compliance with the FLSA, Ramos and Ann met with Al to discuss back wage computations and the average hours per day which Ann was going to use since she did not have records on hours or days worked.  Exhibit 4, p. 180, Exhibit 53; Exhibit 5, p. 212-13.  When Ramos and Ann had this meeting with Al, they did not inform his attorney Charles Kelly that they were going to meet with Al without him.  Ramos said it was fair to say on March 17, 2016, they discussed not computing for non-commission sales weeks, dropping de minimis comps and Al's good faith defense.  Exhibit 4, p. 186, Exhibit 61.  This was the meeting where Al told Ramos that he had undergone a state audit in which the State had approved the Independent Contractor Agreement. Exhibit 4, p. 186.  Ramos said if Al provided him with state and DETR documents, he would provide relief from liquidated damages.  Exhibit 3, pp. 245, 246-47.  Al gave him the documents he had.  Exhibit 3, p. 246.  Al was led on to believe that Ramos and Ann wanted to work with him and they were willing to work out a solution.  Exhibit 3, pp. 248, 128.

On that same day, March 17, 2016, while they excluded Al's attorney, Charles Kelly, from the meeting, Ramos communicated with the Solicitor's office.  Exhibit 4, Exhibits 59, 60. On March 22, 2016, Ann requested and was given another 90-day extension.  Exhibit 4, p. 187, Exhibit 61.  The complaint had now been pending for **over eight months** and Al had been in compliance with the FLSA for over one and a-half months.

On March 25, 2016, Ann reported that she was informing employees that no additional information was being accepted "and they will be contacted if they are due back wages at the end of the investigation."  Exhibit 4, p. 187, Exhibit 61.

During March 2016 when Ann started contacting people in regard to the investigation,

HEJMANOWSKI &
McCREA LLC
ATTORNEYS AT LAW
520 SOUTH FOURTH ST.
SUITE 320
LAS VEGAS, NEVADA 89101
T: 702.834.8777 I F: 702.834.5282
WWW.HMLAWLV.COM

10

sales representatives applying to work at Wellfleet dwindled significantly.  Exhibit 3, p. 299.  As a result, Wellfleet sold its assets to New Choice and commencing toward the end of March 2016, New Choice operated the telemarketing business in compliance with the FLSA.  Al wrote Ann on Wednesday, March 30, 2016, telling her this was a second notice for a sales representative and to communicate with the State on the fact that this person was part of the settlement they were working on.  Al signed the e-mail as General Manager of New Choice.  Exhibit 4, Exhibits 70, 81, 86.  Ann forwarded the e-mail to her supervisor, Ramos, and another assistant director, Gaspar Montanez.  Exhibit 4, Exhibit 71.

On April 1, 2016, Al sent another e-mail to Ann and signed it as General Manager of New Choice.  Exhibit 4, Exhibit 86.  Ann never asked Al who New Choice was, and she never investigated New Choice.  Exhibit 5, pp. 193, 221-22.

Al felt bad that they were being investigated and he tried to explain himself to his nephews.  Exhibit 3, p. 203.  On March 28, 2016, Al wrote his nephews Ryan and John telling them:

> We later in 2010 were audited and we met the state with Gary Krape, We were assured the State had no problem with our operating as we were 1099 classifications.  I always felt that later down the road that this would be the jurisdiction that would be knocking on our door.  Not the Federal WHD.  I wish I could have really foreseen the feds knocking on our door!

Exhibit 9, JM795.  Al continued:

> And know I did the most I could to create a decent place of business.  I think after seven years, its time to do something else....

> So I would like focus on the company end date for me.  I think you guys have been generous in ways and I deeply appreciate it....

> The fines we get from WHD will be a long arduous process but I'm sure some plan can be hammered out long term.  I would hope you guys would support paying these long term to keep me out of jail or them attacking my retirement.

HEJMANOWSKI &
McCREA LLC
ATTORNEYS AT LAW
520 SOUTH FOURTH ST.
SUITE 320
LAS VEGAS, NEVADA 89101
T: 702.834.8777 | F: 702.834.5262
WWW.JHMLAWLV.COM

> I will continue to help you guys until a plan is formulated. August
> or sooner being an end date.

Exhibit 9, JM796.

The practice in the Wage and Hour office was that the agency did not reveal back wages unless compliance was agreed to. Exhibit 4, p. 127.

As of the end of March 2016, Wellfleet and New Choice were in compliance with the FLSA and Wage and Hour had not informed Al of the amount of any alleged back wages due. On March 31, 2016, Ann told Al that she was almost finished with computing the back wages owed. Exhibit 4, p. 203, Exhibit 76. On April 1, 2016, Ann e-mailed Al to schedule the final conference, again bypassing his attorney Charles Kelly. Exhibit 4, p. 205, Exhibit 78.

Prior to the final conference on April 6, 2016, Ramos was communicating with the Solicitor's office. Exhibit 4, p. 213. On April 6, 2016, for the first time, Ann and Ramos told Al that he owed back wages of $803,387.24. Exhibit 6, DOL37736. Al said he could not pay that. Ramos then asked Al if he would be able to pay $300,000.00 and Al left the meeting. Exhibit 4, p. 262.

On April 14, 2016, Al told Ramos that he had changed counsel. Exhibit 4, Exhibit 98. That same day in response, Ramos told Al he would allow until next Friday for him to provide a response regarding the recent investigation. He said Al could provide documentation from the State which supported his determination to classify these employees as independent contractors. He said, "**Again this would allow us to consider that documentation as a good faith defense as to how/why these employees were misclassified which could then be used to reduce or potentially eliminate the liquidated damages.**" Exhibit 4, p. 225, Exhibit 98 (emphasis added). Although Ramos had all of the information he needed to contact or issue a subpoena to DETR, he never did. Exhibit 4, Exhibit 19, p. 224. Nor did he ever ask to speak to Gary Krape. Exhibit

HEJMANOWSKI &
McCREA LLC
ATTORNEYS AT LAW
520 SOUTH FOURTH ST.
SUITE 320
LAS VEGAS, NEVADA 89101
T: 702.834.8777 | F: 702.834.5262
WWW.HMLAWLV.COM

12

3, p. 298.  Al felt he was led on to believe they wanted to work with him but they reneged on their agreement to eliminate the liquidated damages.  Exhibit 3, pp. 214, 244, 246, 248.

On June 24, 2016, Ann attempted to contact the Complainant.  Exhibit 6, DOL37737. When the employer "raised the position of the IRS on independent contractor," Wage and Hour sent the employer a proposed tolling agreement in September 2016.  Exhibit 6, DOL37738.  The tolling agreement would have applied to managers Mij Courtney, Sara Robinson, Stephanie Sulusi and Dawn Piazza.  Exhibit 4, Exhibit 125.  Al refused to sign the tolling agreement.

Then, the Solicitor's office sent a second "Waiver of and Agreement To Toll The Statute of Limitations and other Timeliness Defenses" for Wellfleet and Al.  Exhibit 4, Exhibit 135.  Al refused to sign the agreement.  **Fifteen months** after the Complainant filed his complaint for minimum wage, the Secretary filed this lawsuit.

## I.   ARGUMENT

### A.   Statute of Limitations

The FLSA is an 80-year old statute which was enacted long before telemarketers existed. When Congress enacted the Portal-To-Portal Pay Act, it said:

> (a)     The Congress finds that the Fair Labor Standards Act of 1938, as amended [29 U.S.C.A. § 201 et seq.], has been interpreted judicially in disregard of **long-established customs, practices, and contracts between employers and employees, thereby creating wholly unexpected liabilities, immense in amount and retroactive in operation, upon employers** with the results that, if said Act as so interpreted or claims arising under such interpretations were permitted to stand, (1) the payment of such liabilities would bring about financial ruin of many employers and seriously impair the capital resources of many others, thereby resulting in the reduction of industrial operations, halting of expansion and development, **curtailing employment,** and **the earning power of employees**; (2) the credit of many employers would be seriously impaired; (3) there would be created both an extended and continuous uncertainty on the part of industry, both employer and employee, as to the financial condition of productive establishments and a gross inequality of competitive conditions

HEJMANOWSKI &
McCREA LLC
ATTORNEYS AT LAW
520 SOUTH FOURTH ST.
SUITE 320
LAS VEGAS, NEVADA 89101
T: 702.834.8777 | F: 702.834.5262
WWW.HMLAWLV.COM

13

between employers and between industries; (4) employees would receive windfall payments, including liquidated damages, of sums for activities performed by them without any expectation of reward beyond that included in their agreed rates of pay; (5) there would occur the promotion of increasing demands for payment to employees for engaging in activities no compensation for which had been contemplated by either the employer or employee at the time they were engaged in; (6) voluntary collective bargaining would be interfered with and industrial disputes between employees and employers and between employees and employees would be created; (7) the courts of the country would be burdened with excessive and needless litigation and champertous practices would be encouraged; (8) the Public Treasury would be deprived of large sums of revenues and public finances would be seriously deranged by claims against the Public Treasury for refunds of taxes already paid; (9) the cost to the Government of goods and services heretofore and hereafter purchased by its various departments and agencies would be unreasonably increased and the Public Treasury would be seriously affected by consequent increased cost of war contracts; and (10) serious and adverse effects upon the revenues of Federal, State, and local governments would occur.

29 U.S.C. §251(a) (emphasis added).  After stating this, Congress said:

Any action commenced on or after May 14, 1947, to enforce any cause of action for unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938, as amended [29 U.S.C.A. §201 et seq.], the Walsh-Healey Act, or the Bacon-Davis Act—

(a)   if the cause of action accrues on or after May 14, 1947— may be commenced within two years after the cause of action accrued, and every such action shall be **forever barred** unless commenced within two years after the cause of action accrued, . . . .

29 U.S.C. §255(a) (emphasis added).  Here, the Secretary's cause of action is **forever barred** prior to October 7, 2014.  In *China Agritech, Inc. v. Resh*, ____ S.Ct. ____, 2018 WL 2767565, *8 (June 11, 2018), the United States Supreme Court held that plaintiffs have no substantive right to bring claims outside the statute of limitations.  Slip Op. at 12.  Like all plaintiffs, the Secretary has no substantive right to bring claims outside the two-year statute of limitations.

In *McLaughlin v. Richland Shoe Company*, 486 U.S. 128, 131 (1988), the Secretary of

HEJMANOWSKI &
McCREA LLC
ATTORNEYS AT LAW
520 SOUTH FOURTH ST.
SUITE 320
LAS VEGAS, NEVADA 89101
T: 702.834.8777 | F: 702.834.5262
WWW.HMLAWLV.COM

Labor asked the United States Supreme Court to define the meaning of the word "willful" in the statute. The Court began by stating that Congress enacted the two-year statute to place a limit on employers' exposure to unanticipated contingent liabilities. *Id.* at 132. In 1966, Congress enacted the three-year exception for willful violations. *Id.* The Court found that because Congress had adopted a two-tiered statute of limitations, it was obvious that Congress intended to draw a significant distinction between ordinary violations and willful violations. *Id.* The Court concluded that willfulness does not refer to conduct that is merely negligent. *Id.* at 133. In order to meet the willfulness standard, the Court held that the Secretary of Labor must show that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute. *Id.* at 133-34.

Here, in 2011, Wellfleet had been audited by the State of Nevada which found the independent contractor agreement to be sufficient for the Direct Sellers **not** to be classified as employees. Exhibit 2. The State found 0 misclassified independent contractors. Exhibit 2.

Moreover, the Complainant who filed his minimum wage complaint with Wage and Hour **15 months** before the Secretary filed his lawsuit was not prevented from filing his claim by any wrongful conduct on the part of Al or Wellfleet. There were no extraordinary circumstances beyond the Secretary's control which made it impossible for the Secretary to file the claims on time. The Secretary did not exercise diligence in preserving his legal rights.

In *Chao v. Virginia Dept. of Transp.*, 291 F.3d 276, 283-84 (4th Cir. 2002), the Fourth Circuit held:

> '[A]ny invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes.' [Citation omitted.] ....
> The Secretary of Labor filed no pleading in this case, defective or otherwise, during the limitations period. Nor did VDOT contribute in any way to her delay in filing. Consequently,

HEJMANOWSKI &
McCREA LLC
ATTORNEYS AT LAW
520 SOUTH FOURTH ST.
SUITE 320
LAS VEGAS, NEVADA 89101
T: 702.834.8777 | F: 702.834.5262
WWW.HMLAWLV.COM

> the Secretary is entitled to equitable tolling only if she acted diligently to protect her rights, but was prevented from filing a timely claim due to extraordinary circumstances beyond her control.
>
>         \* \* \*
>
>     '[I]n the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.' *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 152, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984).   Accordingly, we find that the Secretary is not entitled to equitable tolling of the statute of limitations.   The claims subject to the statute of limitations are therefore time-barred.

Here, there were no extraordinary circumstances beyond the Secretary's control.  The Secretary waited **15 months** after the minimum wage complaint was filed with Wage and Hour to file this lawsuit.  At the time of filing, Al had been **in compliance with the FLSA for 8 months**.  The Secretary is not entitled to equitable tolling.  Al refused to sign either of the requested tolling agreements.

In *Chao v. Self Pride, Inc.*, 2006 WL 469954, \*6 (D. Md. Jan. 17, 2006), the court held that "a good faith disagreement with the government regarding the FLSA cannot alone support a later finding by a court that a defendant acted willfully."  Here, Al "raised the position of the IRS on independent contractor" with Wage and Hour.  Exhibit 6, DOL37738.  The United States Congress specifically authorized the Agreements to be entered into with the Direct Sellers and authorized the Direct Sellers to be treated as independent contractors.  26 U.S.C. §3508.  *See* Internal Revenue Serv., Pub. 15-A (2014); section 1122 of the Small Business Job Protection Act of 1996.  As a matter of law, Al and Wellfleet did not willfully violate the FLSA.  The two-year statute of limitations is applicable.

In *Zannikos v. Oil Inspections (USA) Inc.*, 605 Fed.Appx. 349, 360 (5th Cir. 2015), the Fifth Circuit held it was the plaintiff's burden to prove willfulness.  The plaintiffs argued that Oil Inspections knew of the FLSA's potential applicability as demonstrated by its employee

HEJMANOWSKI &
McCREA LLC
ATTORNEYS AT LAW
520 SOUTH FOURTH ST.
SUITE 320
LAS VEGAS, NEVADA 89101
T: 702.834.8777 | F: 702.834.5262
WWW.HMLAWLV.COM

16

handbook, failed adequately to research the statute's applicability and failed to consult with attorneys or the DOL on the matter. The court found that these allegations did **not** suffice to demonstrate willfulness. The court found that an employer who acted "without a reasonable basis for believing that it was complying with the FLSA" was merely negligent and so too was an employer who failed to seek legal advice regarding its payment practices. *Id.* The Fifth Circuit held that willfulness had been found only when evidence demonstrated that an employer actually knew its pay structure violated the FLSA. *Id.* Al did not know that his pay structure for the 1099 Direct Seller Independent Contractors violated the FLSA. Wage and Hour acknowledged that the W-2 office employees were being paid correctly under the FLSA.

The District Court in *Hantz v. Prospect Mortgage, LLC*, 11 F.Supp. 3d 612 (E.D. Va. 2014) found:

> Plaintiff's efforts to create a dispute of fact on the issue of willfulness by noting that Prospect did not track his working hours are insufficient. . . . The fact that neither Defendant nor Plaintiff kept contemporaneous records of his work activities does nothing to suggest that Prospect operated with an awareness or reckless disregard as to Plaintiff's professed non-exempt status. Indeed, it is undisputed that Prospect at all times classified Plaintiff and its other loan officers as exempt outside sales personnel. **It is only natural that an employer operating with this belief would decline to keep records that would only represent a pointless administrative burden**.

*Id.* at 618 (emphasis added). The fact that Al did not keep time records for the Direct Sellers was because to comply with §3508, the Direct Sellers had to be paid on the basis of commissions for sales and not on the basis of hours. Keeping records of hours would have been a pointless administrative burden.

Prior to Wage and Hour's investigation, Wellfleet entered into an "Independent Contractor Agreement for Direct Sellers" with all of its Direct Sellers. It classified **all** of its Direct Sellers the same way. Like Prospect Mortgage, it did not keep time records because it

HEJMANOWSKI &
McCREA LLC
ATTORNEYS AT LAW
520 SOUTH FOURTH ST.
SUITE 320
LAS VEGAS, NEVADA 89101
T: 702.834.8777 | F: 702.834.5262
WWW.HMLAWLV.COM

17

paid the Direct Sellers by commission only.   Section 3508 required Wellfleet to pay by commission only.  Even a mistake in classification of an employee does not establish willfulness sufficient to extend the two-year statute of limitations to three years.

In *SEIU, Local 102 v. County of San Diego*, 60 F.3d 1346, 1355-56 (9th Cir. 1994), the district court had imposed a three-year statute of limitations for a willful violation of the FLSA and awarded liquidated damages pursuant to 29 U.S.C. §216(b).  The Ninth Circuit held that both determinations were mistaken.  The Ninth Circuit found that the DOL's position on the white-collar exemption was a **lack** of an interpretation of the relevant statutes rather than an informed position to which the court must defer.  *Id.* at 1356-57, 1359.

In *Chapman v. BOK Financial Corp.*, 2014 WL 3700870, *3 (N.D. Okla. July 25, 2014), the court held that plaintiffs bore the burden of proving that BOK acted willfully.  As in this case, plaintiffs had no evidence that DOL had audited or investigated BOK for prior alleged FLSA violations.  *Id.* at *4.  The court held that in creating the two-tiered statute of limitations, Congress intended to draw a significant distinction between ordinary and willful violations.  The court concluded that, "The evidence the plaintiffs have presented – that BOK may have misclassified the plaintiffs – could support an ordinary FLSA violation only, not a willful violation."  *Id.*  Here, like BOK, Wellfleet came into compliance with Wage and Hours' interpretation of the law.  Thus, it demonstrated a good faith effort to ensure its classification of the Direct Sellers complied with the FLSA.  Like BOK, Wellfleet and Al are entitled to summary judgment on the two-year statute of limitations on the Secretary's misclassification claim.  *See Tyus v. Wendy's of Las Vegas, Inc.*, 2015 WL 1137734, *3 (D. Nev. Mar. 13, 2015).

In *McLean v. Garage Management Corp.*, 2012 WL 1358739, *7-8 (S.D.N.Y. Apr. 19, 2012), the court held that the plaintiffs had failed to demonstrate that GMC officers were subjectively aware of a substantial danger that their compensation system violated the FLSA but

HEJMANOWSKI &
McCREA LLC
ATTORNEYS AT LAW
520 SOUTH FOURTH ST.
SUITE 320
LAS VEGAS, NEVADA 89101
T: 702.834.8777 | F: 702.834.5262
WWW.HMLAWLV.COM

18

chose to stick with it nonetheless.  The court found that none of the four prior government investigations put GMC on notice that its compensation system violated federal or state labor laws.  *Id.*  Here, the State had affirmatively approved the use of the Direct Seller Independent Contractor Agreement and found it was legal.  Exhibits 1 and 2.  The two-year statute of limitations applies to the Secretary's suit.

### B.   Liquidated Damages

Since Al has produced documentation from the State which supports "his determination to classify these employees as independent contractors," liquidated damages should be eliminated pursuant to Ramos' agreement.  Exhibit 4, p. 225, Exhibit 98.  Al acted in good faith in relying on DETR's audit and conclusion that the Direct Sellers were correctly categorized as 1099 independent contractors.  In *Steele v. Leasing Enterprises, Limited.*, 826 F.3d 237, 242 (5th Cir. 2016), the district court had held that Perry's did not willfully violate the FLSA and declined to extend the statute of limitations from two to three years.  The court also declined to award liquidated damages, finding that Perry's had implemented the offset practice reasonably and with a good faith belief that the offset complied with the FLSA.  *Id.*  The Fifth Circuit affirmed and found the plaintiffs did not present any evidence showing that Perry's ever suspected that the offset violated the FLSA or that any employee questioned the practice.  *Id.* at 247.  The same is true here.  Al did not suspect that the classification violated the FLSA, he relied on the State's audit and prior to the Complainant's complaint to Wage and Hour, no employee had questioned the practice.

In *Bratt v. County of Los Angeles*, 912 F.2d 1066, 1071 (9th Cir. 1990), the Ninth Circuit said:

> If the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was

HEJMANOWSKI &
McCREA LLC
ATTORNEYS AT LAW
520 SOUTH FOURTH ST.
SUITE 320
LAS VEGAS, NEVADA 89101
T: 702.834.8777 | F: 702.834.5262
WWW.HMLAWLV.COM

19

1
2

> not a violation of the [FLSA] the court may, in its sound discretion
> award no liquidated damages or award any amount thereof not to
> exceed the amount specified in section 216 . . .

3
4

*Id.* at 1071.  Al believed the Independent Contractor Agreement exempted the Direct Sellers

5

from minimum wage and that they were correctly designated as 1099's.  He had reasonable

6

grounds for believing that because of the DETR audit.

7

In *Acosta v. KDE Equine, LLC*, 2018 WL 1573230, at *11-12 (W.D. Ky. Mar. 30, 2018),

8

the federal district court found that whether the defendants acted willfully or in good faith were

9

fact issues.  There, the court found that the defendants' violations of the FLSA were not willful

10

and that the Secretary was not entitled to liquidated damages.

11

Ann was required to read the Field Operations Handbook.  The Handbook provides:

12
13

> 53c02  BW period.

14
15

> (a) Except as otherwise provided by specific instructions, payment
> of BW's due under the FLSA or PCA **shall be requested for
> the period extending back 2 years from the date payment is
> first requested**.  (See FOH 51a05.)  With respect to SCA, see
> FOH 52i03; with respect to DBRA/CWHSSA, see 52t07.

16
17
18

> (b) If a specific policy provides that enforcement action in a
> certain case be taken for a shorter period, BW's shall be
> requested for the shorter period.

19
20
21
22
23
24
25

> (c) Where a substantial period of time (more than 90 days) has
> elapsed since the initial request for BW's with no acceptable
> arrangements for payment, and in the absence of a waiver of
> the statute of limitations (see FOH 53c16) the employer claims
> entitlement to a reduction based on the running of the statute,
> BW amounts may be reduced to the extent necessary to bring
> them within the applicable recovery period.   If the BW
> amounts are reduced in this manner, the amount entered as
> "Findings" or Form WH-51-MIS shall be reduced accordingly.
> **The reason for such action should be clearly stated in the
> "Disposition" section of the narrative report.**

26
27
28

> (d) The procedures contained in this section do not preclude a DD
> from instructing an Inv to conduct additional fact-finding in an
> investigation (i.e., "update") and to recalculate the BW's

HEJMANOWSKI &
McCREA LLC
ATTORNEYS AT LAW
520 SOUTH FOURTH ST.
SUITE 320
LAS VEGAS, NEVADA 89101
T: 702.834.8777 | F: 702.834.5262
WWW.HMLAWLV.COM

1    accordingly.

2    . . . .

3    53c04    FLSA liquidated damages.

4
     An employer who requests information regarding liability for
5    liquidated damages under the FLSA if BW's are paid shall be
     advised that the employer may be protected against claims for
6    liquidated damages by paying BW's under WH supervision in
     accordance with Sec 16(c).
7

8    Exhibit 5, Exhibit A (emphasis added).   Ann did not tell Al that he may be protected against

9    claims for liquidated damages by paying back wages under Wage and Hours' supervision.

10       In *Advanced Sports Information, Inc. v. Novotnak*, 114 Nev. 336, 956 P.2d 806 (1998),

11   the Court held Advanced Sports was a registered telemarketing service that sold advice,

12   information and opinions regarding the probable outcome of sporting events.   Advanced Sports

13   Information was exempt from paying unemployment contributions for its sales people under

14
15   NRS 612.144 because they were direct sellers of products.   The Court held:

16       The legislative history indicates that NRS 612.144 was enacted in
         order to conform Nevada's unemployment compensation law with
17       existing federal law.   In its purpose and policy, NRS 612.144 is
         derived from 26 U.S.C. §3508, which exempts direct sellers of
18       consumer products from the status of employee.

19
20   114 Nev. at 340, 956.   *Id.* at 809.   The Court cited with approval *Cleveland Institute of*

21   *Electronics v. U.S.*, 787 F.Supp. 741 (N.D. Ohio 1992) and *R Corporation v. U.S.*, 1994 WL

22   465819 (M.D. Fla. July 15, 1994) and concluded that consumer products included intangible

23   consumer services.   *Id.*   The Court held, "NRS 612.144(2) provides that employment does not

24   include services performed by a person who 'receives compensation or remuneration based on

25   his sales or the services he performs for the customers rather than for the number of hours

26   worked.'"   *Id.*   The Direct Sellers who received compensation based on their sales rather than for

27   the number of hours worked were not employees under both federal and state law.   This Court

28

HEJMANOWSKI &
McCREA LLC
ATTORNEYS AT LAW
520 SOUTH FOURTH ST.
SUITE 320
LAS VEGAS, NEVADA 89101
T: 702.834.8777 | F: 702.834.5282
WWW.HMLAWLV.COM

21

should decline to award the Secretary liquidated damages.

29 USCA §216 ("Penalties") addresses the relief available to the Secretary under the FLSA. Subsection (b) defines an employer's potential liability, stating in pertinent part:

> **(b)    Damages; right of action; attorney's fees and costs; termination of right of action**
>     *Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.* Any employer who violates the provisions of section 216(a)(3) of this title shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages.…   The right provided by this subsection to bring an action by or on behalf of any employee and the right of any employee to become a party plaintiff to any such action, shall terminate upon the filing of a complaint by the Secretary of Labor in an action under section 217 of this title in which (1) restraint is sought of any further delay in the payment of unpaid minimum wages, or the amount of unpaid overtime compensation, as the case may be, owing to such employee… or (2) legal or equitable relief is sought as a result of alleged violations of section 215(a)(3) of this title. [Emphasis added.]

Next, 29 USC §216(c) authorizes the Secretary to supervise the collection of unpaid minimum wages and overtime either through settlement or lawsuit, but plainly leaves the assessment and imposition of any liquidated damages to the courts:

> **(c)    Payment of wages and compensation; waiver of claims; actions by the Secretary; limitation of actions**
>     *The Secretary is authorized to supervise the payment of unpaid minimum wages and unpaid overtime compensation* to any employee under section 206 or section 207 of this title, and the agreement of any employee to accept such payment shall upon payment in full constitute a waiver by such employee of any right he may have under subsection (b) of this section to such unpaid minimum wages or unpaid overtime compensation and additional equal amount as liquidated damages. *The Secretary may bring an action in any court of competent jurisdiction to recover the amount of unpaid minimum wages or overtime compensation*

HEJMANOWSKI &
McCREA LLC
ATTORNEYS AT LAW
520 SOUTH FOURTH ST.
SUITE 320
LAS VEGAS, NEVADA 89101
T: 702.834.8777 | F: 702.834.5262
WWW.HMLAWLV.COM

1    ***and an equal amount as liquidated damages....***    [Emphasis
2    added.]

3    As explained by the Fifth Circuit in *Reich v. Tiller Helicopter Services, Inc.*, 8 F.3d 1018,

4    1030 (5th Cir. 1993), *quoting Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1060-61 (2nd Cir.

5    1988), the FLSA uses the term "liquidated damages" not in the usual sense of a contractually-

6    agreed amount of damages, but in an unusual sense of a penalty to encourage employers to settle:

7                'As used in the FLSA "liquidated damages" is something
8        of a misnomer.  It is not a sum certain, determined in advance as a
         means of liquidating damages that might be incurred in the future.
9        It is an award of special or exemplary damages added to the
         normal damages.'  *Superior Care*, 840 F.2d at 1063, n. 3.  As
10       originally enacted, §216(c) did not allow the Secretary to recover
         liquidated damages although §216(b) always allowed injured
11       employees to recover them.  In 1974 Congress amended §216(c) to
12       authorize the Secretary to recover liquidated damages.  Because
         §217 authorizes injunctive relief, but not liquidated damages, the
13       Secretary can only recover liquidated damages in an action brought
         under §216(c).  *Donovan v. Brown Equipment & Service Tools,*
14       *Inc.*, 666 F.2d 148, 156 (5th Cir. 1982).

15    Then, 29 U.S.C. §260 ("Liquidated Damages"), part of the Portal-to-Portal Pay Act,

16    explains that the court may exercise its discretion to decline an award of liquidated damages or

17    reduce them if the employer proves to the satisfaction of the court that the employer acted in

18

19    good faith and had reasonable grounds for believing its actions did not violate the FLSA:

20                In any action... to recover unpaid minimum wages, unpaid
         overtime compensation, or liquidated damages, under the [FLSA],
21       ***if the employer shows to the satisfaction of the court that the act***
         ***or omission giving rise to such action was in good faith and that***
22       ***he had reasonable grounds for believing that his act or omission***
         ***was not a violation of the Fair Labor Standards Act*** of 1938, as
23       amended, ***the court may, in its sound discretion, award no***
24       ***liquidated damages*** or award any amount thereof not to exceed the
         amount specified in section 216 of this title.  [Emphasis added.]

25    In this case, not only did Wellfleet and Al believe the Direct Sellers were correctly

26

27    classified as independent contractors, but the Secretary's demand for liquidated damages as part

28

HEJMANOWSKI &
McCREA LLC
ATTORNEYS AT LAW
520 SOUTH FOURTH ST.
SUITE 320
LAS VEGAS, NEVADA 89101
T: 702.834.8777 | F: 702.834.5262
WWW.HMLAWLV.COM

of a potential settlement with defendants Wellfleet and Al violated the FLSA's specific

reservation to the court of the imposition of liquidated damages and the determination of their

amount.  In fact, the Secretary acted in contravention of the FLSA and in bad faith in making that

settlement demand.

Congress enacted the provisions quoted above with the goal of inducing employers to

settle so as to avoid litigation and the possible imposition of liquidated damages.  It explained:

> One of the principal effects of the committee proposal will
> be to assure employers who pay back wages in full under the
> supervision of the Wage and Hour Division that they need not
> worry about the possibility of suits for liquidated damages and
> attorney's fees... [The proposal] ... 'is essential to the equitable
> enforcement of the provisions of the act and that it should be
> welcomed by fair-minded employers who wish to make restitution
> for perhaps unwitting violations of the act by encouraging them to
> do so in such a manner to ensure that their liability will be limited
> to the amount of wages due.'

*See* S. Rep. No. 640, 81st Congress, 1st Sess. Reprinted in (1949) U.S. Code Cong. Serv. 2249

(quoting report of the House Committee on Education and Labor).

*Centeno v. Facilities Consulting Group, Inc.*, 2015 WL 247735, *5-6 (N.D. Tex. Jan. 20,

2015), explains the history and purpose of 29 U.S.C.A. §§216(b) and (c) in its decision granting

the defendant employer's motion to dismiss plaintiff employees' claims for overtime and travel

compensation:

> While 29 U.S.C. §216(b) provides employees with a
> private cause of action to remedy FLSA violations, employees
> waive their judicial remedies when they accept payment from their
> employer after a DOL-supervised settlement....
>
> * * *
>
> This approach is consistent with the legislative history
> behind Section 216(c).  The Fifth Circuit discussed the primary
> purpose behind Congress' insertion of the waiver provision.
> The waiver provision found in Section
> 216(c) was added to the [FLSA] in 1949.  Prior to
> that time employers had been reluctant to reach
> voluntary settlements with employees over claims

HEJMANOWSKI &
McCREA LLC
ATTORNEYS AT LAW
520 SOUTH FOURTH ST.
SUITE 320
LAS VEGAS, NEVADA 89101
T: 702.834.8777 | F: 702.834.5262
WWW.HMLAWLV.COM

for back wages because courts had held that any purported waiver or release of rights to unpaid compensation was null and void as against public policy and lacking in consideration.    Thus an employer who settled a claim for back wages could never be sure that the employee with whom he settled would not later sue to collect liquidated damages and attorneys' fees.  ***The addition of the waiver provision was intended to change this situation and create an incentive for employers voluntarily to accept settlement supervised by the Wage and Hour Division.***

*Sneed v. Sneed's Shipbuilding, Inc.*, 545 F.2d 537, 539 (5th Cir. 1977) (citing S. REP. No. 81-640, at 2241, 2249 (1949)).  ***By shielding employers from 'liquidated damages and attorneys' fees,' the waiver provision is an incentive to employers to enter into DOL-supervised settlements, and enforcing waivers at the pleading stage of litigation maximizes this incentive.*** *Id.*  Waiting until the summary judgment phase would force employers to devote additional time and money to an FLSA dispute already settled.  Faced with the prospect of lengthy litigation, including discovery, even after a DOL-supervised settlement, many employers may avoid cooperation with the DOL altogether, leaving the entire dispute to the courts. [Emphasis added.]

*See also Nutting v. Unilever Manufacturing (U.S.) Inc.*, 2014 WL 2959481, *5 (W.D. Tenn. June 13, 2014) ("Congress intended to encourage FLSA settlements not through confidentiality provisions, but rather through 'the waiver provision found in 29 U.S.C. §216(c), which grants an enforceable release to employers from any right an employee may have to … unpaid overtime compensation, and liquidated damages, when an FLSA settlement agreement is approved.'");

and *Bouzzi v. F & J Pine Restaurant, LLC*, 841 F.Supp.2d 635, 640-41 (E.D. N.Y. 2012), explaining that Congress chose a monetary release to encourage FLSA settlements:

Defendants are correct in that part of the legislative intent of the FLSA is to encourage employers to enter into wage settlements; however, confidentiality is not the means by which the FLSA encourages settlements.    To the contrary, confidentiality *contravenes* the legislative intent of the FLSA….

Rather than rely on confidentiality, Congress' intent was to encourage FLSA settlements with the waiver provision found in 29 U.S.C. §216(c), which grants an enforceable release to employers

HEJMANOWSKI &
McCREA LLC
ATTORNEYS AT LAW
520 SOUTH FOURTH ST.
SUITE 320
LAS VEGAS, NEVADA 89101
T: 702.834.8777 | F: 702.834.5262
WWW.HMLAWLV.COM

from any right an employee may have to unpaid minimum wages, unpaid overtime compensation, and liquidated damages, when an FLSA settlement agreement is approved. *See Manning v. New York University*, 2001 WL 963982, at *11 (S.D.N.Y. Aug. 22, 2001) (citing *Sneed v. Sneed's Shipbuilding, Inc.*, 545 F.2d 537, 539 (5th Cir. 1977) ("[S]ection 216(c)] was intended to create an incentive for employers to accept voluntarily settlements supervised by the Secretary of Labor.')....

Thus, after the 1949 amendments, when an employer pays in full the amount of back wages agreed upon, the employer should feel assured it will not be later sued for liquidated damages and fees. It is contrary to Congress' stated intent for the Secretary to rewrite the FLSA to eliminate that inducement.

The Supreme Court's recent decision in *Encino Motorcars, LLC v. Navarro*, 138 S.Ct. 1134, 200 L.Ed.2d 433, 86 USLW 4167 (April 2, 2018) (concluding that car dealership services advisors are exempt from the FLSA's overtime-pay requirement), explains that the FLSA is to be interpreted fairly (which in this case means its enforcing Congress's decision to incentivize settlement by reserving liquidated damages to the court at trial):

> The Ninth Circuit … invoked the principle that exemptions to the FLSA should be narrowly construed. [Citation omitted.] We reject this principle as a useful guidepost for interpreting the FLSA. *Because the FLSA gives no 'textual indication' that its exemptions should be construed narrowly, 'there is no reason to give [them] anything other than a fair (rather than a 'narrow') interpretation.'* Scalia, Reading Law, at 363. The narrow-construction principle relies on the flawed premise that the FLSA '"pursues"' its remedial purpose '"at all costs."' *American Express Co. v. Italian Colors Restaurant*, 570 U.S. 228, 234, 133 S.Ct. 2304, 186 L.Ed2d 417 (2013) (quoting *Rodriguez v. United States*, 480 U.S. 522, 525-526, 107 S.Ct. 1391, 94 L.Ed2d 533 (1987) (*per curiam*); see also *Henson v. Santander Consumer USA Inc.*, 582 U.S. __, ___, 137 S.Ct. 1718, 1725, 198 L.Ed.2d 177 (2017) ('[I]t is quite mistaken to assume… that whatever might appear to further the statute's primary objective must be the law' (internal quotation marks and alterations omitted)). But the FLSA has over two dozen exemptions in §213(b) alone, including the one at issue here. *Those exemptions are as much a part of the FLSA's purpose as the overtime-pay requirement*. See *id.*, at __,

HEJMANOWSKI &
McCREA LLC
ATTORNEYS AT LAW
520 SOUTH FOURTH ST.
SUITE 320
LAS VEGAS, NEVADA 89101
T: 702.834.8777 | F: 702.834.5262
WWW.HMLAWLV.COM

137 S.Ct. at 1725 ('Legislation is, after all, the art of compromise, the limitations expressed in statutory terms often the price of passage'). ***We thus have no license to give the exemption anything but a fair reading.***

\* \* \*

If the text is clear, it needs no repetition in the legislative history; and if the text is ambiguous, silence in the legislative history cannot lend any clarity. [Citation omitted.] ***Even if Congress did not foresee all of the applications of the statute, that is no reason not to give the statutory text a fair reading***. [Citation omitted.]

In sum, we conclude that service advisors are exempt from the overtime-pay requirement of the FLSA because they are 'salesm[e]n… primarily engaged in… servicing automobiles.' §213(b)(10(A)…. [Emphasis added.]

138 S.Ct. at 1142-43.[2]

A fair interpretation of the FLSA precludes the Secretary's demand for liquidated damages as part of a settlement.  Since FLSA settlements are generally public, there is no inducement in lack of public knowledge of the arrangement to settle before trial.  The sole inducement to settle is the avoidance of trial altogether, which is why it is up to the Court and not the Secretary to determine whether or not there has been bad faith warranting liquidated damages.  Here, there was none and Wage and Hour violated the law by refusing to settle back wages for two years without liquidated damages.

### D.    <ins>Direct Sellers</ins>

---

[2] *Encino Motorcars* is not the Supreme Court's first or only instance of rejecting the proposition that the FLSA is to be construed narrowly and not fairly. *See also, Christopher v. SmithKline Beecham Corp.*, 132 S.Ct. 2156, 2170 n. 21 (2012), in which the Court concluded that the narrow construction canon did not apply where the Court was interpreting a general definition that applied throughout the FLSA; and *Sandifer v. U.S. Steel Corp.*, 134 S.Ct. 870, 879 n. 7 (2014), in which the Court again refused to apply the canon.

The Supreme Court's 2018 holding in *Encino Motorcars* is applicable to this dispute. *See Perry v. Randstad General Partyer (US) LLC*, 2018 WL 2363979, \*3 (E.D. Mich. 2018) ("although cases have recited the principle that exemptions [under the FLSA] are to be 'narrowly construed against the employer,' the Supreme Court has recently rejected this standard.'   Because the FLSA gives no 'textual indication' that its exemptions should be construed narrowly, 'there is no reason to give [them] anything other than a fair (rather than a 'narrow') interpretation.'"); *Buford v. Superior Energy services, LLC*, 2018 WL 2465469, \*6 (E.D. Ark. 2018) ("The Supreme Court recently rejected the principle that exemptions should be construed narrowly when interpreting the FLSA.")

HEJMANOWSKI & McCREA LLC
ATTORNEYS AT LAW
520 SOUTH FOURTH ST.
SUITE 320
LAS VEGAS, NEVADA 89101
T: 702.834.8777 | F: 702.834.5262
WWW.HMLAWLV.COM

Eighty years ago, Congress created the FLSA in 1938 with the goal of "protect[ing] all *covered workers* from substandard wages and oppressive working hours." [Emphasis added.] *Christopher v. Smithkline Beecham Corp.*, 132 S.Ct. 2156, 2162, (2012), *quoting Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 739 (1981). The FLSA does not "cover" every person who works for another. Independent contractors are not covered as "employees" under the FLSA.

26 U.S.C. §3508, added in July 1982, nearly half a century after enactment of the FLSA, acknowledges the continuing existence of independent contractors, specifically excluding direct sellers (and real estate agents) from treatment as employees, stating in pertinent part:

> (a) **General Rule**: For purposes of this title, in the case of services performed...
> as a direct seller—
> > (1)  the individual performing such services shall not be treated as an employee, and
> > (2)  the person for whom such services are performed shall not be treated as an employer.

Thus, the Director Sellers shall not be treated as employees and Wellfleet and Al shall not be treated as employers. 26 U.S.C. §3508 defines Direct Sellers as follows:

> \* \* \*
>
> (2) **Direct Seller**. The term "direct seller" means any person if –
> > (A) such person –
> > > \* \* \*
> > >
> > > (ii)  is engaged in the trade or business of selling (or soliciting the sale of) consumer products in the home or otherwise than in a permanent retail establishment or....
> > >
> > > (B)  substantially all the remuneration (whether or not paid in cash) for the performance of the services described in subparagraph (A) is directly related to sales or other output (including the performance of services) **rather than to the number of hours worked,** and
> > >
> > > (C)  the services performed by the person are performed pursuant to a **written contract** between such person and the person for whom the services are performed and such contract provides that the person will not be treated as an employee with respect to such services for Federal tax purposes.

HEJMANOWSKI &
McCREA LLC
ATTORNEYS AT LAW
520 SOUTH FOURTH ST.
SUITE 320
LAS VEGAS, NEVADA 89101
T: 702.834.8777 | F: 702.834.5262
WWW.HMLAWLV.COM

(Emphasis added.) Here, the Direct Sellers meet all of the criteria of 26 U.S.C. § 3508.

The Agreement provides that the treatment of the Direct Seller is "an industry wide treatment in the direct sales marketing for telecommunication services." Exhibit 8. The Agreement therefore entitles Wellfleet and Al to the benefits under Section 530 of the Internal Revenue Code, otherwise known as the Safe Harbor Provision.

In *Smoky Mountain Secrets, Inc. v. U.S.*, 910 F. Supp. 1316, 1317-18 (E.D. Tenn. 1995), SMS solicited sales orders for gourmet foods through telephone calls to consumers made by its telemarketers. The product sales were delivered to the customers' homes by delivery persons. The telemarketers and delivery persons were characterized by SMS as direct sellers and independent contractors. SMS also employed workers who included home office staff, warehouse workers, office managers, regional managers and the officers of the corporation as employees. *Id.* at 1318. Before going to work for SMS, each telemarketer and delivery person was required to sign a written contract. *Id.* at 1319.

The federal district court found that the contracts clearly set forth that each telemarketer or delivery person would be paid on a commission basis, would not be treated as an employee for federal tax purposes and that no federal, state or local income or payroll taxes would be withheld. *Id.* The court concluded that SMS's telemarketers and delivery persons met the term "direct seller" as defined in 26 U.S.C. § 3508. *Id.* at 1321-22.

The *Smoky Mountain* court found that **Congress intended that Section 530 would serve as a shelter for taxpayers who have acted in good faith from the potentially harsh retroactive tax liabilities resulting from IRS reclassification of independent contractors to employees**. *Id.* at 1323. The court concluded that SMS had demonstrated that it was entitled to

HEJMANOWSKI & McCREA LLC
ATTORNEYS AT LAW
520 SOUTH FOURTH ST.
SUITE 320
LAS VEGAS, NEVADA 89101
T: 702.834.8777 | F: 702.834.5262
WWW.HMLAWLV.COM

29

relief under Section 530.  *Id.*  Here too, Wellfleet and Al acted in good faith and are entitled to relief under Section 530.

### III.   CONCLUSION

Agencies such as DOL exercise whatever powers they possess because and only because such powers have been delegated to them by Congress.  It is the declared policy of the FLSA to **not** substantially curtail "earning power."  29 U.S.C. §202(b).  Neither Direct Sellers nor independent contractors are defined in the FLSA.  29 U.S.C. § 203.  The statutory requirements for minimum wage and overtime apply only to "employees".  29 U.S.C. §§ 206, 207.  The Agreement states, and the Direct Sellers agreed, that the Direct Sellers were not employees.

The FLSA is silent on the issue of whether Direct Sellers are subject to the FLSA.  DOL has never enacted a regulation which addresses Direct Sellers.  The only existing federal law which does so is 26 U.S.C. § 3508, with which WFC complied.  There is nothing contrary to 26 U.S.C. § 3508 in the FLSA.  Wellfleet and Allen Roach respectfully request this Court to grant them summary judgment as a matter of law since there is no genuine dispute of material fact.

Respectfully submitted,

HEJMANOWSKI & McCREA LLC

By:  /s/  Malani L. Kotchka
      Malani L. Kotchka
      Nevada Bar No. 283
      520 South Fourth Street, Suite 320
      Las Vegas, NV 89101

*Attorneys for Defendants Wellfleet
Communications, LLC, and Allen Roach*

HEJMANOWSKI &
McCREA LLC
ATTORNEYS AT LAW
520 SOUTH FOURTH ST.
SUITE 320
LAS VEGAS, NEVADA 89101
T: 702.834.8777 | F: 702.834.5262
WWW.HMLAW.LV.COM

**EXHIBITS TO DEFENDANTS WELLFLEET COMMUNICATIONS, LLC, AND
ALLEN ROACH'S MOTION FOR SUMMARY JUDGMENT
(ORAL ARGUMENT REQUESTED)
Case No. 2:16-CV-02353-GMN-GWF**

Exhibit 1     Declaration of Gary Krape

Exhibit 2     Employment Security Division of the Nevada Department of Employment, Training and Rehabilitation ("DETR") Audit of Wellfleet Communications, LLC

Exhibit 3     Deposition Transcript of Allen Roach

Exhibit 4     Deposition Transcript of Higinio Ramos

Exhibit 5     Deposition Transcript of Alisa Ann

Exhibit 6     DOL Case Diary Entries

Exhibit 7     Narrative Report

Exhibit 8     Direct Seller Independent Contractor Agreement

Exhibit 9     Allen Roach Communication with Ryan and John

Exhibit 10    November 19, 2015 Charles Kelly Communication with Alisa Ann

HEJMANOWSKI &
McCREA LLC
ATTORNEYS AT LAW
520 SOUTH FOURTH ST.
SUITE 320
LAS VEGAS, NEVADA 89101
T: 702.834.8777 | F: