# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

R. ALEXANDER ACOSTA, Secretary of
Labor, United States Department of Labor,

           Plaintiff,

    vs.

WELLFLEET COMMUNICATIONS, LLC, *et al.*,

           Defendants.

)
)
)
)
)
)
)
)
)
)
)

Case No.: 2:16-cv-02353-GMN-GWF

**ORDER**

Pending before the Court is the Motion for Summary Judgment, (ECF No. 150), filed by Plaintiff Secretary of Labor, R. Alexander Acosta ("Plaintiff"). Defendants Wellfleet Communications, LLC ("Wellfleet") and Allen Roach filed a Response, (ECF No. 158). Defendants Lighthouse Communications, LLC ("Lighthouse"), New Choice Communications, Inc. ("New Choice"), and Ryan Roach also filed a Response, (ECF No. 160). To both of those Responses, Plaintiff filed one Reply, (ECF No. 163).

Also pending before the Court is the Motion to Dismiss or Alternatively for Summary Judgment, (ECF No. 64), filed by Defendants Allen Roach and Wellfleet. Plaintiff filed a Response, (ECF No. 74), and Allen Roach and Wellfleet filed a Reply, (ECF No. 80).

Also pending before the Court is Allen Roach and Wellfleet's Motion for Summary Judgment, (ECF No. 148). Plaintiff filed a Response, (ECF No. 159), and Allen Roach and Wellfleet filed a Reply, (ECF No. 162).

Also pending before the Court is the Motion to Dismiss, (ECF No. 71), filed by Lighthouse Communications, New Choice, and Ryan Roach. Plaintiff filed a Response, (ECF No. 81), and Lighthouse, New Choice, and Ryan Roach filed a Reply, (ECF No. 87).

Also pending before the Court is the Motion for Summary Judgment, (ECF No. 149), filed by Lighthouse, New Choice, and Ryan Roach. Plaintiff filed a Response, (ECF No. 159), and Lighthouse, New Choice, and Ryan Roach filed a Reply, (ECF No. 165).

For the reasons discussed below, the Court **GRANTS in part** and **DENIES in part** Plaintiff's Motion for Summary Judgment, (ECF No. 150); **DENIES** the Motion to Dismiss or Alternatively for Summary Judgment, (ECF No. 64), filed by Wellfleet and Allen Roach; **DENIES** the Motion to Dismiss, (ECF No. 71), filed by Lighthouse, New Choice, and Ryan Roach; **DENIES** the Motion for Summary Judgment, (ECF No. 148), filed by Wellfleet and Allen Roach; and **DENIES** the Motion for Summary Judgment, (ECF No. 149), filed by Lighthouse, New Choice, and Ryan Roach.

## I.    BACKGROUND

This case involves alleged violations of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq*. ("FLSA") by Wellfleet, New Choice, Lighthouse, Allen Roach, and Ryan Roach (collectively "Defendants"). Defendants either currently operate or operated call center businesses in Las Vegas, Nevada; and Plaintiff, as the Secretary of Labor, represents over one-thousand current and previous workers employed by Defendants. (Am. Compl. 2:3–15, ECF No. 44); (*see* Ex. A to Am. Compl., ECF No. 44-1) (listing the workers that Plaintiff currently represents in the lawsuit. Plaintiff alleges that Defendants violated several provisions of the FLSA by failing to keep employment records and failing to pay their employees minimum wage and overtime. (Am. Compl. ¶¶ 31–37).

Plaintiff's investigation into Defendants began in October 2015 with Wellfleet and its general manager, Allen Roach. (*Id.* ¶ 4); (*see* Decl. Allen Roach ¶ 1, Ex. N to Resp., ECF No. 74-8). Through this investigation, Plaintiff discovered that each worker employed by Wellfleet and Allen Roach "functioned solely as sellers and were paid solely for their sales." (Decl. Allen Roach ¶ 3, Ex. N to Resp., ECF No. 74-8) ("[Wellfleet] paid . . . for their sales, never for their

time."). Further, Wellfleet and Allen Roach "kept no time records" for its employees, and instead compensated the employees solely based on commission earned from sales. (*Id.*). Because of this scheme, Plaintiff filed its initial Complaint alleging violations of the FLSA by paying employees less than the federal minimum wage, making illegal deductions from employees' Social Security and Medicare contributions, failing to pay employees for hours worked over forty in a workweek, failing to maintain time records of employees, and interfering with Plaintiff's investigation. (Compl. ¶¶ 17–22, ECF No. 1). Plaintiff's Complaint sought relief from the Court in the form of: (1) permanently enjoining and restraining Wellfleet from "prospectively violating . . . the FLSA;" (2) finding Wellfleet and Allen Roach liable for "unpaid minimum wage and overtime compensation due under the FLSA to present and former employees;" (3) enjoining Wellfleet and Allen Roach from withholding payment of unpaid wages owed to employees; and (4) awarding costs to Plaintiff resulting from the lawsuit. (*Id.* at 8–9).

During Plaintiff's investigation, Plaintiff also learned of call center businesses that Allen Roach's nephew, Ryan Roach, operated alongside Wellfleet and Allen Roach. (*See* Dep. Tr. Allen Roach at 3, Ex. A to Am. Compl., ECF No. 74-5). Plaintiff discovered that Ryan Roach acted as the owner of New Choice, which sold telephone lines to residential customers from 2010 to March 2016 through the work of Wellfleet's call center workers. (*Id.* at 3, 8). In March 2016, New Choice took over the operations of Wellfleet. (Am. Compl. ¶¶ 6–8). Ryan Roach also established Lighthouse in 2010 to sell phone services, which served as another call center among New Choice and Wellfleet as well as a "depository for the funds" from Wellfleet. (Dep. Tr. Allen Roach at 20, Ex. A to Am. Compl.). Lighthouse's business ended in October 2015. (Am. Compl. ¶ 14).

On September 18, 2017, Plaintiff filed an Amended Complaint, (ECF No. 44), that added New Choice, Lighthouse, and Ryan Roach as Defendants. Plaintiff's theory is that all

the call centers ran by Allen and Ryan Roach consisted of one business. (MSJ 8:22–9:2, ECF No. 150) (stating that the "Roaches operated the call center through the Wellfleet, Lighthouse, and New Choice [] shell companies, and managed all the entities as one 'family-run business.'"). The Amended Complaint alleged the same violations of the FLSA by New Choice, Lighthouse, and Ryan Roach as those against Wellfleet and Allen Roach in Plaintiff's Initial Complaint.

## II.   LEGAL STANDARD

### A.  Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the Court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).

The Court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation is plausible, not just possible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

A court may also dismiss a complaint pursuant to Federal Rule of Civil Procedure 41(b) for failure to comply with Federal Rule of Civil Procedure 8(a). *Hearns v. San Bernardino*

*Police Dept.*, 530 F.3d 1124, 1129 (9th Cir.2008).  Rule 8(a)(2) requires that a plaintiff's complaint contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion . . . . However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citations omitted).  Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).  Under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986).  Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

If the court grants a motion to dismiss, it must then decide whether to grant leave to amend.  The court should "freely give" leave to amend when there is no "undue delay, bad faith[,] dilatory motive on the part of the movant . . . undue prejudice to the opposing party by virtue of . . . the amendment, [or] futility of the amendment . . . ." Fed. R. Civ. P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Generally, leave to amend is only denied when it is clear that the deficiencies of the complaint cannot be cured by amendment. *See DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

### B. Motion for Summary Judgment

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is a sufficient evidentiary basis on which a reasonable fact-finder could rely to find for the nonmoving party. *See id.* "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)). "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an

essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). However, the nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of America*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252. In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## III.   DISCUSSION

The parties in this case have filed either motions to dismiss or motions for summary judgment regarding Plaintiff's Amended Complaint, (ECF No. 44). Upon review, these motions largely overlap in issues discussed. The Court therefore analyzes the overlapping arguments in conjunction with one another. Any arguments unique to a motion are addressed separately. The Court first addresses the Motion to Dismiss, (ECF No. 71), filed by New Choice, Lighthouse, and Ryan Roach, followed by the issues raised in the motions for summary judgment.

### A.  Motion to Dismiss filed by New Choice, Lighthouse, and Ryan Roach

New Choice, Lighthouse, and Ryan Roach move to dismiss Plaintiff's Amended Complaint, (ECF No. 44), to the extent that Plaintiff seeks relief for damages that occurred more than two years before Plaintiff filed its Amended Complaint. Specifically, they argue that a two-year statute of limitations applies to Plaintiff's claims, rather than the three-year limitations period claimed by Plaintiff. (Mot. Dismiss ("MTD") 4:17–6:2, 7:3–8, ECF No. 71). Additionally, they argue that Plaintiff's Amended Complaint, (ECF No. 44), cannot relate back to the date that Plaintiff filed its initial Complaint. (*Id.* 7:11–23). As a result, they argue that the statute of limitations for claims against them should begin on September 18, 2015, when Plaintiff filed its Amended Complaint. (*Id.* 7:3–8, 7:11–23). The below sections address each argument in turn.

### i. *Statute of Limitations*

New Choice, Lighthouse, and Ryan Roach argue in their Motion to Dismiss that a two-year statute of limitations period applies to this case because Plaintiff's Amended Complaint fails to properly plead "willful" violations of the Fair Labor Standards Act, which, if properly pleaded, would extend the limitations period from two to three years. (MTD 6:13–23, ECF No. 71). In response, Plaintiff argues that the allegations throughout its Amended Complaint satisfy the pleading requirements because the applicable rules only require general allegations of intent, which Plaintiff provided. (Resp. 6:2–20, ECF No. 81).

A violation of the FLSA is willful if the employer "knew or showed reckless disregard for the truth of whether its conduct was prohibited by the FLSA." *Chao v. A-One Medical Services*, 346 F.3d 908, 918 (9th Cir. 2003). At the initial pleading stage, a plaintiff does not need to allege willfulness with specificity. *Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 903 (9th Cir. 2013). Instead, general allegations of intent suffice under the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.").

Here, Plaintiff's Amended Complaint satisfies the applicable pleading requirement to allege willful violations. First, in compliance with the requirement of general allegations of intent, Plaintiff alleges that "Defendants have repeatedly and willfully violated the provisions . . . of the FLSA." (Am. Compl. ¶¶ 32–37). Further, Plaintiff explains how New Choice, Lighthouse, and Ryan Roach deprived, impeded, and interfered with the ability of their employees to exercise their rights under the FLSA and the ability of the Secretary to detect and identify FLSA violations. (*See id.* ¶¶ 34–35). For example, throughout Plaintiff's Amended Complaint are allegations that New Choice, Lighthouse, and Ryan Roach forced employees to sign contracts that "waive[d] the . . . right to be paid at least the minimum wage under the FLSA" with an alleged focus on deterring employee complaints to the government. (*Id.* ¶ 18).

Together, these allegations demonstrate plausible violations of the FLSA, while also satisfying the liberal pleading requirement for willfulness. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555); *Pellegrini v. Huyssen, Inc.*, No. 3-17-cv-00135-CAB-JMA, 2017 WL 2908794, at *9 (S.D. Cal. July 7, 2017) (finding that broad allegations of "knowingly, willfully, and intentionally" violating the FLSA were enough to survive a motion to dismiss). Accordingly, Plaintiff's Amended Complaint properly pleads willful violations by New Choice, Lighthouse, and Ryan Roach. The Motion to Dismiss, (ECF No. 71), is therefore denied to the extent that it argues for a limitation of Plaintiff's claims to two years.

### ii. *Relation Back to the Date of Plaintiff's Initial Complaint*

In addition to the argument that Plaintiff failed to properly plead willful violations, New Choice, Lighthouse, and Ryan Roach also contend that the applicable statute of limitations for Plaintiff's claims should begin when Plaintiff added them to the case in the Amended Complaint, (ECF No. 44), rather than relating back to the date of Plaintiff's initial Complaint, (ECF No. 1). (MTD 8:13–25, ECF No. 71). Conversely, Plaintiff argues that its claims within the Amended Complaint warrant "relation back" to the time of the initial Complaint under Rule 15(c) for several reasons. (Resp. 9:1–10:6, ECF No. 81). First, New Choice, Lighthouse, and Ryan Roach allegedly had both notice of the initial Complaint when it was filed and notice at that same time of Plaintiff's investigation into FLSA violations that would implicate them. (Resp. 9:1–10:6, ECF No. 81). Second, Plaintiff asserts that Wellfleet and Allen Roach intentionally withheld information from Plaintiff about the existence of New Choice, Lighthouse, and Ryan Roach until after Plaintiff filed the initial Complaint; thereby preventing Plaintiff from timely adding all Defendants. (*Id.*).

Rule 15(c) of the Federal Rules of Civil Procedure governs whether an amendment to a pleading relates back to the date of the original pleading. *See* Fed. R. Civ. P. 15(c). When an amendment concerns the addition of a new defendant, Rule 15(c)(1)(C) permits the action if:

(1) the claim arose out of the same conduct, transaction, or occurrence set out in the original pleading, (2) the new defendant received "such notice of the action that it will not be prejudiced in defending on the merits," and (3) the new defendant "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C).

The issue here depends on the third prong of the Rule 15 analysis; and the focus is whether New Choice, Lighthouse, and Ryan Roach knew or should have known that Plaintiff mistakenly left them out of its initial Complaint—as opposed to deliberately leaving them out. *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 541 (2010). Therefore, if New Choice, Lighthouse, and Ryan Roach knew or should have known that Plaintiff would have added them to the initial Complaint but for a "mistake regarding [their] 'status or role in the events giving rise to the claim at issue," then all claims against them will relate back to the date of the initial Complaint. *See In re LLS Am. LLC*, 701 F. App'x 565, 567 (9th Cir. 2017) (citing *Krupski*, 560 U.S. at 549).

Here, Plaintiff's Amended Complaint pleaded sufficient facts to show that New Choice, Lighthouse, and Ryan Roach either knew or should have known that Plaintiff would have included them in the initial Complaint but for a mistake by Plaintiff. Plaintiff's Amended Complaint includes an explanation that Ryan Roach, and thus New Choice and Lighthouse, had full "notice of [Plaintiff's] investigation" into Wellfleet and its employment practices. (Am. Compl. ¶ 6). Ryan Roach, New Choice, and Lighthouse nonetheless appear to have initially concealed any relationship between Wellfleet and Allen Roach—even though Wellfleet "employed Lighthouse's and New Choice's call center employees during [Plaintiff's] investigation." (*Id.* ¶ 15). Further, according to Plaintiff, it was not until February 1, 2017, that Wellfleet and Allen Roach disclosed the relationship between New Choice, Lighthouse, and Ryan Roach, as well as a takeover of Wellfleet by New Choice and Ryan Roach that occurred

several months before Plaintiff filed its initial Complaint. (*See id.* ¶ 8) (showing that Defendants did not disclose New Choice's takeover until February 1, 2017, whereas Plaintiff filed its initial Complaint on October 7, 2016). These allegations within Plaintiff's Amended Complaint demonstrate how it would have appeared to Plaintiff when it filed the initial Complaint that Wellfleet, New Choice, and Lighthouse may have been one business. (*See id.* ¶¶ 5–7) (stating that New Choice operated "at the same call center where Wellfleet operated," and that the managers and employees of Wellfleet would have been nearly the same as those of New Choice).

Therefore, the Amended Complaint provides allegations that New Choice, Lighthouse, and Ryan Roach not only knew of Plaintiff's investigation, but also withheld their involvement in Wellfleet's employment practices to avoid being a target of Plaintiff's investigation and ultimate lawsuit. Thus, when Plaintiff filed its initial Complaint, Defendants should have known that Plaintiff mistakenly sued Wellfleet and Allen Roach in the initial Complaint without knowledge of New Choice, Lighthouse, and Ryan Roach's separate and pivotal role in Wellfleet's business and employment practices. Accordingly, because Defendants should have known of Plaintiff's mistake, the claims against New Choice, Lighthouse, and Ryan Roach relate back to the date of the initial Complaint under Federal Rule of Civil Procedure 15(c). *See In re LLS Am. LLC*, 701 F. App'x at 567.

### B. Motions for Summary Judgment filed by Defendants

Turning now to the motions for summary judgment, the first issue is whether Defendants' call center workers are "employees" under the FLSA. (*See* MSJ 6:27–11:27, ECF No. 64); (MSJ 17:20–20:9 , ECF No. 150). If the workers were employees, the next issue is whether Defendants willfully violated the FLSA by misclassifying their workers and failing to conform to the FLSA's regulations. (MSJ 14:15–18, ECF No. 64); (MSJ 26:, ECF No. 150). The third issue concerns whether the statute of limitations for Plaintiff's claims should be

extended under the doctrine of equitable tolling to include claims arising on and after August 2009. (MSJ 24:14–26:22, ECF No. 150). The last issue concerns the extent of damages owed by Defendants, if any. (*Id.* 22:16–28:24:10); (MSJ 19:8–23, ECF No. 148).[1] The below discussion addresses each issue in turn.

### i. *Classification of Employees under the FLSA*

Defendants collectively argue that their call center workers were not "employees" for purposes of the FLSA, and thus were not entitled to the protections of the FLSA. (MSJ 11:23–28, ECF No. 64); (MSJ 29:1–6, ECF No. 148); (MSJ 6:5–10, ECF No. 149). Specifically, Defendants allege that their call center workers were "direct sellers" as defined in the Internal Revenue Code ("IRC"), 26 U.S.C. § 3508, which then creates an exception to the FLSA's definition of "employee." (MSJ 11:23–28, ECF No. 64); (MSJ 29:1–6, ECF No. 148); (MSJ 6:5–10, ECF No. 149). Plaintiff argues that Defendants did not prove their workers were "direct sellers" under the IRC; and even if they were, the IRC does not supersede or modify the FLSA's definition of "employee." (Resp. 15:1–16, 15:22, ECF No. 159). Plaintiff further argues that summary judgment should be granted in their favor because Defendants' call center workers are in fact "employees" under the FLSA. (MSJ 19:8–20:9, ECF No. 150).

The FLSA defines an "employee" broadly: as "any individual employed by an employer;" and it defines "employ" as "to suffer or permit to work." 29 U.S.C. § 203(e)(1), (g). Courts apply that broad definition to specific cases by using an "economic realities test" to determine whether someone falls under the FLSA's definition of an "employee." *Benjamin v. B & H Educ., Inc.*, 877 F.3d 1139, 1145 (9th Cir. 2017).

---

[1] New Choice, Lighthouse, and Ryan Roach make nearly the same arguments as Wellfleet and Allen Roach on the same issues in their separate Motion for Summary Judgment, (ECF No. 149). Further, New Choice, Lighthouse, and Ryan Roach "join and incorporate" the arguments raised by Wellfleet and Allen Roach. (*See* MSJ 3:5–8, 6:8–15, ECF No. 149). Because of the overlap in Motions, the Court will address each of Defendants' arguments together insofar as they join and incorporate each other. The Court's discussion will separately address any arguments that are unique to a motion.

Besides the economic realities test, rarely has the FLSA's definition of "employee" been modified by anything other than the FLSA itself. *See Walling v. Portland Terminal Co.*, 330 U.S. 148, 150–51 (1947) ("[I]n determining who are 'employees' under the, common law employee categories or employer-employee classifications under other statutes are not of controlling significance."). The rationale for a limited ability to modify the FLSA is that the FLSA "contains its own definitions, comprehensive enough to require its application to many persons and working relationships." *Id.*

With this history concerning the FLSA's definition of "employee," the few courts that have addressed the IRC's interaction with the FLSA have found that § 3508 does not supersede or modify the FLSA's "employee" definition. For example, in *Esquivel v. Hillcoat Props*., 484 F. Supp. 2d 582, 584 (W.D. Tex. 2007), defendants argued that because their employees fell within a category of "statutory non-employees" under § 3508 of the IRC, it must follow that those employees would be "independent contractors and outside the protections of the FLSA." *Id.* at 584. The court denied that argument, however, on the ground that § 3508, by its terms, applies only to Title 26 of the IRC.[2] *Id.* Consequently, whether the workers fell under the FLSA depended on the economic realities test. *Id.*

The decision in *Esquivel* is not alone. Other courts agree that the IRC generally does not modify provisions of the FLSA. *See Serino v. Payday Cal., Inc.*, No. 08-56940, 2010 WL 1678302, at *1 (9th Cir. Apr. 27, 2010) (unpublished) ("The plaintiffs cite to the Internal Revenue Code, the Code of Federal Regulations, and court opinions interpreting these provisions; however, these sources do not bear on the definition of "employer" under either the

---

[2] The exact language of § 3508 states:

> For purposes of this title, in the case of services performed as a qualified real estate agent or as a direct seller-- (1) the individual performing such services shall not be treated as an employee, and (2) the person for whom such services are performed shall not be treated as an employer.

26 U.S.C. § 3508.

FLSA or California law."); *see also Heidingfelder v. Burk Brokerage, LLC*, 2010 WL 4364599, at *4 (E.D. La. Oct. 25, 2010) (relying on *Esquivel* to reject application of § 3508 to determine employee status under the FLSA). Defendants' cited authorities do not show otherwise. (*See* MSJ 29:7–30:2, ECF No. 148) (citing decisions that discuss § 3508 in terms of IRC applicability, but not its interaction with the FLSA); (MSJ 6:5–10, ECF No. 149) (stating that New Choice, Lighthouse, and Ryan Roach "join and incorporate" Wellfleet and Allen Roach's argument).

Altogether, based on the FLSA's history and court interpretations of it, the Court finds that § 3508 of the IRC does not provide an exception to the FLSA's definition of "employee." Because IRC § 3508 does not provide an exception, the next issue is whether Defendants' call center workers are "employees" under the FLSA.

There are six relevant factors that courts consider when determining if an individual is an "employee" under the FLSA:

> 1) The degree of the alleged employer's right to control the manner in which the work is to be performed; 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; 3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; 4) whether the service rendered requires a special skill; 5) the degree of permanence of the working relationship; 6) whether the service rendered is an integral part of the alleged employer's business.

*Donovan v. Sureway Cleaners*, 656 F.2d 1368, 1370 (9th Cir. 1981) (citation omitted). Neither factor is dispositive; and the overall focus is to determine if the individuals are "dependent upon the business to which they render service." *Id.*

In this case, there is no dispute of material fact that Defendants' call center workers are "employees" under the FLSA. The first factor pushes toward an employee designation based on the strict schedule and work content assigned to each call center worker—attributing little discretion to the worker, if at all, on how to complete their tasks. Specifically, each worker had

a daily shift that would extend five-days a week (and potentially Saturday). (Dep. Stephanie Muasau at 29, Ex. 1 to MSJ, ECF No. 150-2) (showing "Monday through Friday 7:30 to 2:30"). Similarly, each of those days involved a strict schedule with designated break and lunch times, reduced pay for late arrival, and routine scripts to accomplish all sales. (*Id.* at 44); (Birch Program Schedule, Ex. 11 to MSJ, ECF No. 150-12); (Direct Seller Agreement of Ballew, Patricia at 5, Ex. 9. to MSJ, ECF No. 150-10). As for the next factor of opportunity for profit with managerial skills, Defendants alone controlled a worker's ability to earn a commission, the scope of a worker's interaction with a client, and how much an employee earned with each sale. (*See* Contract between New Choice and Birch Communications at 9, Ex. 44 to MSJ, ECF No. 150-45); (Direct Seller Agreement of Legaspi, Reginald at 3, Ex. 16 to MSJ, ECF No. 150-17) (stating that "the commission . . . shall be the sole and absolute compensation provided . . . ."). Alongside this profit control, each call worker operated solely off Defendants' equipment and in Defendants' office space. (Dep. Stephanie Muasau at 7, 55, Ex. 1 to MSJ, ECF No. 150-2); (New Hire Packet at 6–7, Ex. 12 to MSJ, ECF No. 150-13). Next, for the fourth factor, undisputed evidence in this case shows the call center works did not need to possess any specialized skills; all that Defendants required was the ability to communicate well and read a script. (Dep. Allen Roach at32–33, Ex. 2 to MSJ, ECF No. 150-3) ("[W]e didn't have a high bar for hiring people . . . we didn't get their education . . . if they could read a script and they sounded good, we . . . gave them an opportunity"). Lastly, the workers who operated the phones at the call center and made all sales serve as an integral part of Defendants' call center businesses.

After analyzing these factors collectively, the Court concludes that Defendants' call center workers operated as "employees" under the FLSA. *See Donovan*, 656 F.2d at 1370. As employees, they were thus entitled to the FLSA's protections.

### ii. *Willful Violations of the FLSA*

In addition to Plaintiff's argument that the call center workers are employees under the FLSA, Plaintiff moves for summary judgment claiming Defendants' willfully violated the FLSA's regulations thereby extending the statute of limitations in this case to three years. (MSJ 11:4–12:25, ECF No. 150). Defendants, in contrast, contend that they simply misclassified their workers under the belief that the workers fell under an exception to the FLSA through IRC § 3508. (MSJ 13:18–20, ECF No. 64); (MSJ 15:12–15, ECF No. 148). According to Defendants, this simple misclassification was not a willful violation; and therefore, Plaintiff's lawsuit should be restricted to a two-year statute of limitations. (MSJ 20:26–27, ECF No. 64); (MSJ 15:12–15, ECF No. 148); (MSJ 5:11–12, ECF No. 149).

"Willfulness" under the FLSA means that the defendant "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]." *Chao v. A-One Med. Servs.*, 346 F.3d 908, 918 (9th Cir. 2003) (citing *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, (1988). Further, "an employer's conduct shall be deemed to be in reckless disregard of the requirements of the [FLSA], among other situations, if the employer should have inquired further into whether its conduct was in compliance with the [FLSA], and failed to make adequate further inquiry." 29 C.F.R. § 578.3.

Here, the Court finds that Plaintiff has established there is no genuine dispute of material fact that Defendants "willfully" violated the FLSA. Specifically, Plaintiff provides evidence that Wellfleet and Allen Roach received roughly ten to twelve notices of violations every year from 2010 until 2017 by the Nevada State Labor Commissioner on paying minimum wage to its call center workers. (*See* Dep. Allen Roach at 79–80, Ex. A to Resp., ECF No. 74-5). Yet, even with these notices, Allen Roach stated that he did not talk to anyone before 2012 about "the requirements for minimum wage under . . . the Fair Labor Standards Act"—believing instead that if he were mistaken, state agencies would "come and see us and advise us." (*Id.* at

40, 44).  Ryan Roach, and thereby Lighthouse and New Choice, also failed to take any affirmative actions based on their past practices that matched those of Wellfleet's. (Dep. Ryan Roach at 58–60, Ex. 2 to Resp., ECF No. 159-5).

Defendants do provide declarations and contentions that they did not ignore warnings that it was out of compliance and cooperated with Plaintiff's investigation. (*See* Decl. Ryan Roach 125:7–129:4, Ex. A to MSJ, ECF No. 149); (Decl. Gary Krape at 2, Ex. 1 to MSJ, ECF No. 148-1).  That support does not, however, counter the evidence by Plaintiff showing that Wellfleet and Allen Roach received many complaints for regulatory violations yet failed to take any action to determine compliance.  Further, neither Allen Roach nor Ryan Roach ever attempted to determine their call centers' compliance with the FLSA—even though they had their workers sign agreements that expressly waived any rights under the FLSA and classified them as independent contractors. (Dep. Allen Roach at 21–28, Ex. 2 to MSJ, ECF No. 150-3); (Dep. Ryan Roach at 48–51, Ex. 7, ECF No. 150-8).

Accordingly, Plaintiff's evidence shows that Defendants failed to inquire into FLSA compliance as it should have. *See* 29 C.F.R. § 578.3; *Alvarez v. IBP, Inc.*, 339 F.3d 894, 908–09 (9th Cir. 2003), aff'd, 546 U.S. 21 (2005) ("[T]he three-year term can apply where an employer disregarded the very 'possibility' that it was violating the statute.") (citations omitted); *see Flores v. Velocity Express, LLC*, 250 F. Supp. 3d 468, 494 (N.D. Cal. 2017) (finding that investigations by state labor agencies can put a defendant on notice to inquire into its compliance with the FLSA).  Plaintiff's motion for summary judgment is therefore granted on the issue of willful violations of the FLSA, and the statute of limitations began on October 7, 2013, which is three years before Plaintiff filed its initial Complaint.

### iii.  *Equitable Tolling*

The next issue before the Court is whether Plaintiff can include claims that arose on and after August 2009 under the doctrine of equitable tolling.  Defendants argue that equitable

tolling should not apply because Plaintiff did not exercise diligence in bringing this case, and because there were no extraordinary circumstances beyond Plaintiff's control that prevented the filing of an earlier lawsuit. (MSJ 15:19–20, 16:9–14, ECF No. 148); (MSJ 4:13–5:10, ECF No. 149). In contrast, Plaintiff contends that Defendants concealed any claims of Defendants' workers by having them sign FLSA opt-out forms beginning in 2009, and also lied to state officials about their compliance efforts for labor regulations. (MSJ 24:14–27, ECF No. 150). Plaintiff thus seeks an extension of the statute of limitations on equitable tolling grounds that would begin the limitations period on August 2009. (*Id.* 18:10–12).

"Equitable tolling applies when the plaintiff is prevented from asserting a claim by wrongful conduct on the part of the defendant, or when extraordinary circumstances beyond the plaintiff's control ma[ke] it impossible to file a claim on time." *Stoll v. Runyon*, 165 F.3d 1238, 1242 (9th Cir. 1999). The party seeking equitable tolling bears the burden of establishing either circumstance. *Kwai Fun Wong v. Beebe*, 732 F.3d 1030, 1052 (9th Cir. 2013).

Here, in regard to the claims arising between 2009 and the applicable three-year statute of limitations period beginning in 2013, Plaintiff fails to provide binding authority to persuade the Court that equitable tolling is appropriate for this time period. Plaintiff's focus in seeking claims back to August 2009 is that this is when Defendants allegedly began their practice of having employees sign agreements that purported to waive their right to minimum wage. (MSJ 25:10–18). In support, Plaintiff cites to *Guifu Li v. A Perfect Franchise, Inc.*, No. 5:10-cv-01189-LHK, 2011 WL 4635198 (N.D. Cal. Oct. 5, 2011), which found that equitable tolling was appropriate in the context of waiver forms used on employees. However, *Guifu Li* only applied equitable tolling when a defendant forced its current employees to sign class-action opt-out forms after litigation began. *See id.* at \*16. Unlike in *Guifu Li*, no evidence here shows that Defendants knew of impending litigation and forced their workers to sign a waiver that excluded them from such lawsuit.

Further, equitable tolling only applies in "rare and exceptional circumstances." *Orduna v. Champion Drywall, Inc.*, No. 2:12-cv-1144-LDG-VCF, 2013 WL 1249586, at *2 (D. Nev. Mar. 26, 2013) (citing *Teemac v. Henderson*, 298 F.3d 452, 457 (5th Cir. 2002), and *Steed v. Head*, 219 F.3d 1298, 1300 (11th Cir. 2000). Plaintiff therefore has not carried its burden to justify equitable tolling based solely on the "independent contractor" agreements. *See Stitt v. San Francisco Mun. Transportation Agency*, No. 12-cv-3704-YGR, 2014 WL 1760623, at *12 (N.D. Cal. May 2, 2014) (rejecting equitable tolling because "Plaintiffs have offered neither evidence nor argument to show that there were circumstances beyond potential plaintiffs' control that made it impossible for them to file FLSA claims in a timely manner.").

### iv. *Damages*

Plaintiff moves for summary judgment as to damages in this case claiming Defendants violated the FLSA by failing to keep hours of the call center workers and failing to pay overtime or minimum wage. (MSJ 22:10–13, ECF No. 150). Plaintiff argues that because of these violations, Defendants are liable for back wages and an equal amount of liquidated damages. (*Id.*) The first issue to address, then, is Defendants' alleged violations of the FLSA.

The FLSA requires that employers pay employees a minimum wage of at least $7.25 per hour during any work week. 29 U.S.C. § 206(a). An employer violates this section only when an employee's total weekly wage "averaged across their total time worked" falls below the required minimum wage. *Adair v. City of Kirkland*, 185 F.3d 1055, 1063 (9th Cir. 1999); Nye v. Ltd., No. 2-16-cv-00702-RFB-CWH, 2017 WL 1228408, at *2 (D. Nev. Apr. 2, 2017). Additionally, every employer subject to the FLSA has a duty to keep and preserve records of their employees in terms of wages and hours, among other requirements. 29 U.S.C. § 211; *see* 29 C.F.R. § 516.2.

Here, Defendants have admitted that they did not pay their call center workers minimum wage and did not keep any records of hours worked by those call center employees until 2016.

(Decl. Allen Roach ¶¶ 3,6). Accordingly, there is no dispute of material fact that Defendants violated the FLSA. The below discussion addresses the extent to which Defendants may be held liable.

### 1. *Entitlement to Back Wages*

An employee can recover unpaid wages under the FLSA by showing that: (1) the employer's records were inadequate; and (2) the employee performed work for which they were not compensated. *Brock v. Seto*, 790 F.2d 1446, 1447-48 (9th Cir. 1986) (citation omitted). When proving the amount of work performed, however, the burden is "not on the employees to prove the precise extent of uncompensated work." *McLaughlin v. Seto*, 850 F.2d 586, 589 (9th Cir. 1988). Rather, the employee need only produce sufficient evidence to show the amount and extent of said work "as a matter of a just and reasonable inference." *Brock*, 790 F.2d at 1447–48. After which, the burden shifts to the employer to come forward with "evidence of the precise amount of work performed or evidence to negate the reasonableness of the inference to be drawn from the employees' evidence." *McLaughlin*, 850 F.2d at 589.

Here, Plaintiff has satisfied its initial burden to provide a reasonable inference of the hours worked by Defendants' call center workers. Plaintiff calculates that each worker worked at least thirty hours per week, and evidence by Defendants shows that this is a valid inference. (Decl. Michael Eastwood ¶¶ 4–28, ECF No. 150-71). Defendants do not dispute this calculation in their Responses. (*See* ECF Nos. 158, 160). The problem with Plaintiff's calculation, however, is that it provides a total amount of back wages dating back to August 30, 2009. (MSJ 23:17–23, ECF No. 150). As the Court has found that equitable tolling beyond 2013 is improper, the amount of wages must be recalculated to reflect the wages lost between 2013 and 2016. Accordingly, Plaintiff must provide a sufficient calculation of damages within the statute of limitations applicable to this case.

### 2. *Entitlement to Liquidated Damages*

Similar to Defendants' argument that they did not willfully violate the FLSA, Defendants assert that there is no dispute of material fact that they acted in good faith to comply with the FLSA, thereby preventing Plaintiff from recovering liquidated damages. (MSJ 6:11–15, ECF No. 149); (MSJ 19:8–10, ECF No. 148). However, a lack of good faith is correlated to the Court's finding of willfulness. That is, one part of the test to determine whether a defendant made a good faith attempt to comply with the FLSA is if the defendant can show it had "an honest intention to ascertain what [the FLSA] requires and to act in accordance with it." *Bratt v. Cty. of Los Angeles*, 912 F.2d 1066, 1072 (9th Cir. 1990) (citations omitted). As stated previously, Plaintiff provides evidence that Defendants failed to take any action at all to determine their compliance with the FLSA even after repeated notices of violations under state employment regulations. Though the Court recognizes that Defendants passed an audit by a Nevada state agency regarding its classification of employees, that audit related only to Nevada's employment laws. The audit did not, however, provide reason for Defendants to believe they complied with the FLSA. (*See* Dep. Higinio Ramos at 28, Ex. 4 to MSJ, ECF No. 148-7) (stating that the audit notes reflect a finding "under state law").

Accordingly, because Defendants failed to take any action to determine their FLSA compliance in the face of repeated notices of potential violations of employment regulations, the Court finds that there is a no dispute of material fact that Defendants did not act in good faith to conform with the FLSA. Plaintiff's Motion for Summary Judgment is thus granted to the extent that Defendants are liable for liquidated damages, which would be equal to the amount of back wages in this case. 29 U.S.C. § 216(b) ("Any employer who violates the provisions of section 206 . . . shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.").

### 3. *Individual Liability*

Alongside the determination of damages, Plaintiff moves for summary judgment claiming that Allen Roach and Ryan Roach are individually liable for any damages. (MSJ 20:11–23, ECF No. 150). To determine whether an individual is an employer under the FLSA, and thus subject to individual liability, the Ninth Circuit applies a four-factor "economic reality" test that considers: "[w]hether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Lambert v. Ackerley*, 180 F.3d 997, 1011-12 (9th Cir. 1999). These factors are a useful framework, but the ultimate determination must be based "upon the circumstances of the whole activity." *Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983) (quoting *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947)).

Here, the totality of the circumstances leads the Court to conclude that Allen Roach and Ryan Roach are individually liable under the FLSA. First, Allen Roach was in control of managing the work force in terms of reducing staff and disciplining employees, while Ryan Roach would participate at times. (Dep. Mij Courtney at 26, Ex. 3 to MSJ, ECF No. 150-4) (discussing hiring); (Dep. Stephanie Muasau at 8, 26 Ex. 1 to MSJ, ECF No. 150-2) (discussing discipline); (Dep. Allen Roach at 42, Ex. 2 to MSJ, ECF No. 150-3) (discussing Ryan Roach's involvement). Next, Allen Roach and Ryan Roach managed each payment made to the workers. That is, they regulated both the commissions available to call center workers within the contracts between the call center clients and Defendants; and they also reviewed the weekly payroll for workers. (Dep. Ryan Roach at 13–15, 17, 22 Ex. 7 to MSJ, ECF No. 150-8) (stating a weekly review of payroll); (Email from Tamara Harris to Allen Roach, Ex. 26 to MSJ, ECF No. 150-27); (Emails between Tamara Harris and Ryan Roach, Ex. 27 to MSJ, ECF No. 150-28); (Dep. Tamara Harris at 5–7, 8, 10–12, Ex. 5 to MSJ, ECF No. 150-6). Additionally, Allen

Roach and Ryan Roach discussed their detailed control over the call centers in emails. (Email Exchange between Allen and Ryan at 2–3, Ex. 38 to MSJ, ECF No. 150-39) (discussing the actions of "running a [sic] 100 plus animals around each week" in terms of involvement in checking bank accounts.).

Overall, the evidence shows that Ryan Roach and Allen Roach closely oversaw the call centers in terms of wages, discipline, hiring and firing, and daily tasks associated with managing and operating the call center businesses. Though they were not directly responsible for day-to-day activities, that does not take away from the constant control that they had. *Chao v. Pac. Stucco, Inc.*, No. 2:04-cv-0891-RCJ-GWF, 2006 WL 2432862, at *5 (D. Nev. Aug. 21, 2006). Accordingly, Ryan Roach and Allen Roach are individually liable.

### 4. *Successor in Interest Liability*

The next issue before the Court concerns the extent to which Wellfleet's alleged liability for violating the FLSA may attach to New Choice. That is, Plaintiff alleges in its Amended Complaint that New Choice is the "successor-in-interest" to Wellfleet. (Am. Compl. ¶ 10, ECF No. 44). As a successor in interest, Plaintiff contends that New Choice is therefore "jointly and severally liable for all FLSA violations" by Wellfleet. (Resp. 25:1–4, ECF No. 159). Conversely, New Choice seeks summary judgment on this issue, claiming that successorship liability cannot attach to New Choice based on the degree of continuity between itself and Wellfleet as well as New Choice's lack of notice that it could inherit liability when it purchased Wellfleet's assets in April 2016. (MSJ 5:15–6:2, ECF No. 149).

In the context of the FLSA, successor liability depends on three factors: (1) whether the subsequent employer was a bona fide successor; (2) whether the subsequent employer had notice of the potential liability; (3) the extent to which the subsequent employer can provide adequate relief directly. *Steinbach v. Hubbard*, 51 F.3d 843, 846 (9th Cir. 1995); *Nissenbaum v. NNH Cal Neva Servs. Co., LLC*, 983 F. Supp. 2d 1234, 1243 (D. Nev. 2013). The first factor

breaks down further into several non-exhaustive factors: (1) the degree of substantial continuity of the same business operations; (2) whether the new employer uses the same plant; whether the same or substantially the same work force is employed; (3) whether the same jobs exist under the same working conditions; (4) whether the same supervisors are employed; (5) whether the same machinery, equipment, and methods of production are used; and (6) whether the same product is manufactured or the same service is offered. *Resilient Floor Covering Pension Tr. Fund Bd. of Trustees v. Michael's Floor Covering, Inc.*, 801 F.3d 1079, 1091 (9th Cir. 2015). Courts evaluate those non-exhaustive factors based on the "totality of the circumstances" to determine whether there is a "substantial continuity" between the old and new business. *Id.*

Looking to the first factor, New Choice provides evidence against "substantial continuity" by showing that only some of its employees and managers moved to New Choice after it purchased Wellfleet in 2016. (Dep. Ryan Roach at 18, Ex. A to MSJ, ECF No. 149). Nonetheless, Plaintiff provides evidence to contradict that fact. Specifically, Plaintiff's Response includes evidence that almost all of New Choice's personnel were the same as Wellfleet after the apparent sale in 2016. (*See* WFC Staff Payroll, Ex. 12 to MSJ, ECF No. 159-15); (*see also* NCC Staff Payroll, Ex. 13 to MSJ, ECF No. 159-16); (*see also* Decl. Alisa Ann ¶ 14, ECF No. 159-2) (showing that "nearly 80% of the individuals on the last week of Wellfleet payroll were on the New Choice payroll the following week"). Additionally, Plaintiff provides evidence to show that New Choice continued to operate in the same building as Wellfleet and appears to have sold the same telecommunications products as Wellfleet. (Dep. Ryan Roach at 69–70, Ex. 2 to Resp., 159-5); (Dep. Allen Roach at 95, Ex. 2 to MSJ, ECF No. 150-3).

Further, Plaintiff provides evidence to show that the second and third factors weigh in favor of finding successor liability. Regarding the second factor of notice of potential liability, Plaintiff demonstrates that Allen Roach and Ryan Roach were aware that Wellfleet would need

to pay back wages prior to New Choice's purchase. (Dep. Ryan Roach at 66, Ex. 2 to Resp., ECF No. 159-5) (stating that Ryan Roach was "aware" in "early 2016" of the Department of Labor's investigation of Wellfleet and that back wages had been computed). As for the third factor, Wellfleet appears to have transferred all cash and assets to New Choice. (*See* Dep. Allen Roach at 91, Ex. 2 to MSJ, ECF No. 150-3) (showing Allen Roach discussing the transfer of assets and all funds from Wellfleet to New Choice). Such an extensive transfer raises a dispute of Wellfleet's ability to satisfy its prior expectation to cover back wages. Altogether, Plaintiff provided enough evidence to show that New Choice is subject to successor in interest liability.

### 5. *Prospective Injunction*

Finally, Plaintiff requests a prospective injunction based on Defendants' consistent past violations, continued attempts to obstruct Plaintiff's investigation, and active efforts to conceal the extent of their businesses to avoid liability. (MSJ 29:5–20, ECF No. 150). Defendants counter by arguing that they have been compliant with the FLSA beginning in February 2016. (Resp. 8:8–15, ECF No. 160). Through this compliance, Defendants argue that there is "no basis for a prospective injunction." (*Id.*).

In this case, Defendants' argument against the injunction focuses on alleged current FLSA compliance, which is only one aspect of the Court's analysis. Moreover, a court's focus is on the "reasonable likelihood that the [previous FLSA] violations will not recur"; and it is not reliant on present compliance alone. *Brock v. Big Bear Mkt. No. 3*, 825 F.2d 1381, 1383 (9th Cir. 1987). Additionally, "an employer's pattern of repetitive violations or a finding of bad faith are factors weighing heavily in favor of granting a prospective injunction." *Id.*

Here, Defendants engaged in not only willful violations as explained in this order, but also actions to thwart Plaintiff's investigation. Specifically, Plaintiff contends that Defendants obstructed Plaintiff's investigation by concealing employment records, destroying evidence, and hiding the connection between Wellfleet, New Choice, and Lighthouse until months into

Plaintiff's investigation. (MSJ 26:8–22, ECF No. 150).  Plaintiff also provides evidence that Defendants "purged" documents related to payroll records that Defendants previously withheld from Plaintiff. (Dep. Dawn Piazza at 19–20, Ex. 4 to Resp., ECF No. 159-7).  Similarly, Plaintiff provides evidence that Defendants are continuing to withhold paychecks from employees after Defendants claimed compliance with the FLSA. (*See* Nevada Labor Commission Compl. at 2–4, Ex. 66 to MSJ, ECF No. 150-67) (showing a prior employee's complaint received on September 7, 2016, concerning a failure to provide a check and rejection of calls).  Accordingly, the Court finds that a prospective injunction is appropriate under these circumstances.

///

## IV.    CONCLUSION

**IT IS HEREBY ORDERED** that the Motion for Summary Judgment, (ECF No. 150), filed by Plaintiff is **GRANTED in part** and **DENIED in part**.

**IT IS FURTHER ORDERED** that the Motion to Dismiss or Alternatively for Summary Judgment, (ECF No. 64), filed by Wellfleet and Allen Roach is **DENIED**.

**IT IS FURTHER ORDERED** that the Motion to Dismiss, (ECF No. 71), filed by New Choice, Lighthouse, and Ryan Roach is **DENIED**.

**IT IS FURTHER ORDERED** that the Motion for Summary Judgment, (ECF No. 148), filed by Wellfleet and Allen Roach is **DENIED**.

**IT IS FURTHER ORDERED** that the Motion for Summary Judgment, (ECF No. 149), filed by New Choice, Lighthouse, and Ryan Roach is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff shall file a supplemental brief with a calculation of damages consistent with this Order as well as a proposed prospective injunction using specific and enforceable terms.  Plaintiff's supplemental brief is due no later than October 15, 2018.

**DATED** this __29__ day of September, 2018.


_____
Gloria M. Navarro, Chief Judge
United States District Judge